# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **KATHLEEN MOLLER** | * | **CIVIL ACTION NO.** |
| | * | |
| | * | |
| **VERSUS** | * | **JUDGE** |
| | * | |
| **MARTIAN SALES, INC; JOPEN, LLC,** | * | **MAGISTRATE** |
| **a Texas limited liability company;** | * | |
| **JOHNSON FOODS, LLC, a Wyoming** | * | |
| **limited liability company; LP IND., LLC,** | * | |
| **a Wyoming limited liability company;** | * | |
| **CAG HOLDINGS, LLC, a Wyoming** | * | |
| **limited liability company; RMH** | * | |
| **HOLDINGS, LLC, a Wyoming limited** | * | |
| **liability company; OLISTICA, an** | * | |
| **unincorporated association; ABC** | * | |
| **INSURANCE COMPANY and John Does** | * | |
| **1-4.** | * | |
| * * * * * * * * * * * * * * * * * * * * * * | * | |

## <u>COMPLAINT</u>

**NOW INTO COURT,** through undersigned counsel, come the Plaintiff, Kathleen Moller, a person of the full age of majority, domiciled in the Parish of St. Tammany, State of Louisiana, who respectfully avers as follows:

1.

Made Defendant herein is Martian Sales, Inc. d/b/a O.P.M.S. ("Martian Sales"), a foreign corporation which, upon information and belief, is incorporated in the State of Wyoming with its principal place of business in Cheyenne, Wyoming.

2.

Made Defendant herein is JOPEN, LLC (doing business as A1 Wholesale; Party Nuts; Party Nuts Distributions; Uziel; Innovo Activas; and Evolutionary Organics) ("JOPEN") was and is a Texas-based Limited Liability Company, that also conducts business in Colorado and

Georgia. On information and belief, Plaintiff alleges that affiliates, members, and managers for JOPEN's "OPMS" branded kratom activities include Aether, LLC; Aghosh Corp.; Eyal Gabbey; Peyton Palaio; Mark Jennings; Mark Reilly; and Jacob Fletcher. On further information and belief, Plaintiff alleges that JOPEN conducts its kratom activities as a single business enterprise with and as part of the larger Olistica-OPMS kratom enterprise, which operates through a secretive web of affiliates, individuals, shell companies, alter egos, business names, assumed names, and/or trade names, including but not limited to: LP; CAG; RMH HOLDINGS, INC.; Lunar Labs LLC; Martian Sales, Inc.; Shaman Supplies, LLC; Kono Labs; Beeman Inc.; Uziel LLC; 1199 Industrial LLC; 1100 Alpha LLC; Engaged Investments LLC; Eyal Gabbay; Petyon Shea Palaio; Mark Jennings; Mark Reilly; and Jacob Fletcher.

3.

Defendant, JOPEN, LLC is a limited liability company with citizenship in Texas. The only known member of JOPEN, LLC is Eyal Gabbay. Eyal Gabbay is domiciled in Heath, Texas. Upon information or belief, both Peyton Shea Palaio and Mark Jennings own, manage, control, or are otherwise members of JOPEN, LLC. Both Peyton Palaio and Mark Jennings are citizens and residents of Georgia. Plaintiff is domiciled in St. Tammany Parish, Louisiana.

4.

Made Defendant herein is JOHNSON FOODS, LLC (doing business as Olistica Life Sciences Group; Olistica Group; Olistica; OPMS; Companion Agriculture; Companion AG; Jordan Process; Cascade Naturals; Della Terra Pharmaceuticals; Cannopy Corp.; and Canopy Corp.) ("LP"), was and is a Wyoming Limited Liability Company. On information and belief, JOHNSON FOODS conducts its kratom activities as a single business enterprise with and as part of the larger Olistica-OPMS kratom enterprise, which operates through a secretive web of

affiliates, individuals, shell companies, alter egos, business names, assumed names, and/or trade names, including but not limited to: CAG; JOPEN; RMH HOLDINGS, INC.; LP; Lunar Labs LLC; Martian Sales, Inc.; Shaman Supplies, LLC; Kono Labs; Eyal Gabbey; Peyton Shea Palaio; Mark Jennings; Mark Reilly; and Jacob Fletcher.

5.

Defendant, JOHNSON FOODS, LLC is a limited liability company with citizenship in Wyoming. Upon information or belief, both Peyton Shea Palaio and Mark Jennings own, manage, control, or are otherwise members of JOHNSON FOODS, LLC. Both Peyton Palaio and Mark Jennings are citizens and residents of Georgia. Plaintiff is domiciled in St. Tammany Parish, Louisiana.

6.

Made Defendant herein is LP IND., LLC (doing business as Olistica Life Sciences Group; Olistica Group; Olistica; OPMS; Companion Agriculture; Companion AG; Jordan Process; Cascade Naturals; Della Terra Pharmaceuticals; Cannopy Corp.; and Canopy Corp.) ("LP"), was and is a Wyoming Limited Liability Company with kratom operations in Colorado and Georgia. On information and belief, LP conducts its kratom activities as a single business enterprise with and as part of the larger Olistica-OPMS kratom enterprise, which operates through a secretive web of affiliates, individuals, shell companies, alter egos, business names, assumed names, and/or trade names, including but not limited to: CAG; JOPEN; RMH HOLDINGS, INC.; Lunar Labs LLC; Martian Sales, Inc.; Shaman Supplies, LLC; Kono Labs; Eyal Gabbay; Peyton Shea Palaio; Mark Jennings; Mark Reilly; and Jacob Fletcher.

7.

Defendant, LP IND., LLC is a limited liability company with citizenship in Wyoming. Upon information or belief, both Peyton Shea Palaio and Mark Jennings own, manage, control, or are otherwise members of LP IND., LLC. Both Peyton Palaio and Mark Jennings are citizens and residents of Georgia. Plaintiff is domiciled in St. Tammany Parish, Louisiana.

8.

Made Defendant herein is CAG Holdings, LLC (doing business as CAG Holdings CO, LLC; Olistica Life Sciences Group; Olistica Group; Olistica; OPMS; Companion Agriculture; Companion AG; Jordan Process; Cascade Naturals; Della Terra Pharmaceuticals; and Canopy Corp. ("CAG"), was and is a Wyoming Limited Liability Company, that is both registered and conducting kratom business operations in Colorado. On information and belief, CAG conducts its kratom activities as a single business enterprise with and as part of the larger Olistica-OPMS kratom enterprise, which operates through a secretive web of affiliates, individuals, shell companies, alter egos, business names, assumed names, and/or trade names, including but not limited to: LP; JOPEN; RMH HOLDINGS, INC.; Lunar Labs LLC; Martian Sales, Inc.; Shaman Supplies, LLC; Kono Labs; Eyal Gabbey; Petyon Shea Palaio; Mark Jennings; Mark Reilly; and Jacob Fletcher.

9.

Defendant, CAG HOLDINGS, LLC is a limited liability company with citizenship in Wyoming. Upon information or belief, both Peyton Shea Palaio and Mark Jennings own, manage, control, or are otherwise members of CAG HOLDINGS, LLC. Both Peyton Palaio and Mark Jennings are citizens and residents of Georgia. Plaintiff is domiciled in St. Tammany Parish, Louisiana.

10.

Made Defendant herein RMH Holdings, LLC (doing business as Olistica Life Sciences Group; Olistica Group; Olistica; OPMS; Companion Agriculture; Companion AG; Jordan Process; Cascade Naturals; Della Terra Pharmaceuticals; and Canopy Corp. ("RMH"), was and is a Wyoming Limited Liability Company, that is both registered and conducting kratom business operations in Colorado. On information and belief, CAG conducts its kratom activities as a single business enterprise with and as part of the larger Olistica-OPMS kratom enterprise, which operates through a secretive web of affiliates, individuals, shell companies, alter egos, business names, assumed names, and/or trade names, including but not limited to: LP; JOPEN; CAG HOLDINGS, INC.; Lunar Labs LLC; Martian Sales, Inc.; Shaman Supplies, LLC; Kono Labs; Eyal Gabbey; Petyon Shea Palaio; Mark Jennings; Mark Reilly; and Jacob Fletcher.

11.

Defendant, RMH HOLDINGS, LLC is a limited liability company with citizenship in Wyoming. Upon information or belief, both Peyton Shea Palaio and Mark Jennings own, manage, control, or are otherwise members of RMH HOLDINGS, LLC. Both Peyton Palaio and Mark Jennings are citizens and residents of Georgia. Plaintiff is domiciled in St. Tammany Parish, Louisiana.

12.

Made Defendant here is OLISTICA LIFE SCIENCES GROUP (also doing business as Centralized Services; Olistica; Olistica Group; Interactive Earth Sciences Corp.; Liv Group Inc.; Cascade Naturals; Johnson Foods, LLC; Della Terra Pharmaceuticals ("Della Terra"); NP Pharma Holdings, LLC; OPMS; Choice Organics; LP IND., LLC; Jordan Process ("Jordan"); Precision Biologics; CAG HOLDINGS, LLC; RMH HOLDINGS, INC.; Cannopy Corporation;

JOPEN; A1 Wholesale; Party Nuts; Party Nuts Distributions; Innovo Activas; and Evolutionary Organics) ("OLISTICA") is an unincorporated association of kratom business interests that operates as a single business enterprise through a secretive web of affiliates, individuals, shell companies, alter egos, business names, assumed names, and/or trade names, including but not limited to: LP; CAG; RMH HOLDINGS, INC.; Lunar Labs LLC; Martian Sales, Inc.; Shaman Supplies, LLC; Kono Labs; Highway 160 Way LLC; PFI LLC; Nuza LLC; Nuza; Nuza Logistics; Calibre Manufacturing LLC; Advanced Nutrition; 1099 Industrial LLC; 1100 Alpha LLC; Hush Worldwide LLC; Eyal Gabbey; Petyon Shea Palaio; Mark Jennings; Mark Reilly; Dina Hemminger; and Jacob Fletcher.

13.

All Defendants named herein make up and are hereinafter referred to as the "OPMS defendants," or simply "defendants."

14.

The OPMS defendants are liable to Plaintiff for the wrongful death of Harmony Moller on February 6, 2023.

15.

This Court has jurisdiction over the Plaintiff's claims on the basis of diversity of citizenship of Plaintiff to all Defendants pursuant to 29 USC 1332.

16.

Venue is proper in this Court inasmuch as the tortious acts and damages were sustained in St. Tammany Parish, Louisiana, which is within this district.

17.

On February 6, 2023, Harmony Moller, a 36-year-old female, died as the result of the ingestion of OPMS brand Kratom which she purchased in Mandeville, Louisiana.

18.

Harmony Moller was not married at the time of her death, nor did she have any children. As such, pursuant to Louisiana law, her parents, Kathleen and Ivan Moller, had the exclusive right to bring this survival and wrongful death action pursuant to La. C.C. art. 2315.2 (2).

19.

Since the death of Harmony Moller, her father, Ivan Moller, died on March 24, 2023, and thus his right of action passed to his wife, Katherine Moller as a matter of law.

20.

A postmortem examination of Harmony Moller determined that the cause of death was "Abnormally high left coronary ostia takeoff exacerbated by Mitragynine use" secondary to the ingestion of Kratom.

21.

Kratom is the name given to botanical products derived from the leaves of the *Mitragyna Speciosa* tree, which grows in Southeast Asia.

22.

While the nature and extent of Kratom's impact upon human physiology remains largely unknown, medical and scientific research confirms that the powdered Kratom sold in the United States is far more dangerous than other natural products that are sold over the counter.

23.

Kratom contains dozens of psychoactive compounds or alkaloids, many of which are not understood. The two most-studied alkaloids are mitragynine and 7-hydroxymitragynine. These two alkaloids bind to the same opioid brain receptors as morphine. Like opiates, these compounds can lead to analgesia (release of pain), euphoria, and sedation. Both of these alkaloids were found in the whole blood extracted from the decedent on February 7, 2023, and reported in the decedent's autopsy report.

24.

Kratom was not marketed as a dietary ingredient in the United States before October 15, 1994, and is therefore a "new dietary ingredient" under industry standards.

25.

As a new dietary ingredient, Kratom must not be marketed or sold for human consumption without premarket verification that it is safe for that purpose.

26.

None of the Defendants have ever satisfied the basic industry standard for establishing that Kratom is safe for human consumption before marketing it.

27.

The most recent attempt by the kratom industry to legitimize its illegal kratom products occurred on October 21, 2022. On that date, JOHNSON FOODS, LLC (an OPMS defendant), submitted its "New Dietary Ingredient Notification for NPI-001, a Dried Leaf Powder."

28.

When this Notification was submitted, JOHNSON FOODS, LLC and the OPMS defendants knew that no such Notification had ever satisfied the premarket safety standards required to lawfully distribute and sell kratom under federal law.

29.

Like premarket notifications before it, the JOHNSON FOODS, LLC New Dietary Ingredient Notification for the kratom powder was inadequate, incomplete, and incompetent to satisfy the important standards of premarket safety necessary for the safe marketing, distribution and sale of over-the-counter kratom.

30.

The JOHNSON FOODS, LLC New Dietary Ingredient Notification was insufficient under the industry standards for the safe marketing, distribution or sale of botanical ingredients and supplements.

31.

A growing body of independent scientific and medical research and literature confirms that no form of psychoactive kratom will ever satisfy the basic standard of premarket safety when it comes to over-the-counter sale of kratom for human consumption.

32.

Rather than safe, Kratom is known to cause a wide range of adverse events, including nervousness, agitation, aggression, sleeplessness, hallucinations, delusions, tremors, loss of libido, constipation, skin hyperpigmentation, nausea, vomiting, addiction, severe withdrawal, heart arrhythmias, respiratory depression, seizures, drug-drug interactions, overdose, and death.[1]

---

[1]   *See, e.g.,* Xiaotong Li, et al., *An evaluation of adverse drug reactions and outcomes attributed to kratom in the US Food and Drug Administration Adverse Event Reporting System from January 2004 through September 2021*

33.

According to recent research, Kratom is 63 times more deadly than other natural products that are sold to American consumers.[2]

34.

Thus, it is not scientifically possible for Kratom sellers to verify that their products are safe for human consumption when sold over the counter like coffee, tea, or other natural products.

35.

Unable to verify kratom's safety, the Kratom industry has instead been built upon clandestine and fraudulent business activities, including the unlawful importation of Kratom as "plant food," "incense," "cosmetic" powders, and other legal items.[3]

36.

For years, Federal agencies (and courts) have attempted to protect the public by seizing Kratom and taking other civil and criminal actions against Kratom importers, distributors, and those who illegally sell Kratom as an unapproved treatment for significant medical conditions such as chronic pain, anxiety, addiction, or withdrawal.[4]

---

(Clinical and Translational Science, 00:1-10; 2023); Mori J. Krantz, et al, *Ventricular Arrhythmias Associated With Over-the-Counter and Recreational Opioids* (Journal of American College of Cardiology, Vol. 81, No. 23, 2023); Donna Papsun, *Forensic Implications of Kratom: Kratom Toxicity, Correlation with Mitragynine Concentrations, and Polypharmacy* (Current Addiction Reports; published online May 19, 2023).

[2]    Xiaotong Li, et al., *An evaluation of adverse drug reactions and outcomes attributed to kratom in the US Food and Drug Administration Adverse Event Reporting System from January 2004 through September 2021* (Clinical and Translational Science, 00:1-10; 2023).

[3]    *See* FDA Import Alert # 54-15 (https://www.accessdata.fda.gov/cms_ia/importalert_1137.html) (last accessed October 23, 2023).

[4]    *See* Seizures and Injunctions – Health Fraud ( https://www.fda.gov/consumers/health-fraud-scams/seizures-and-injunctions-health-fraud ) (last accessed October 23, 2023); FDA Statement, Advisory about deadly risks associated with kratom (https://www.fda.gov/news-events/press-announcements/statement-fda-commissioner-scott-gottlieb-md-fda-advisory-about-deadly-risks-associated-kratom ) (last accessed October 23, 2023).

37.

In addition to enforcement actions at the national level, an increasing number of states and cities have passed laws making Kratom illegal at the local level.

38.

Despite these efforts, the industry is successfully smuggling billions of dollars' worth of Kratom across the border. Once it gets past customs and border officials, the Kratom is quickly channeled into chains of distribution managed by individuals and entities generating huge profits from millions of consumers. Despite the serious risks of kratom use, profit-seeking companies continue to market kratom products with unproven and deceptive claims about its safety and ability to cure, treat or prevent medical conditions and diseases. The FDA's examples of illegal claims include statements such as: "many people use kratom to overcome opiate addiction," and kratom is frequently used "as a natural alternative" to treat various health conditions, replacing opiate prescriptions.[5]

39.

Because kratom is adulterated, many of the leading kratom businesses conceal their identities and activities behind mysterious and evolving shell companies, and misleading labels.

40.

The OPMS defendants have profited from unfair and deceptive business practices by promoting, distributing and/or selling dangerous Kratom products to Louisiana residents, including Harmony Moller.

---

[5]   *See* FDA News Release, FDA issues warnings to companies selling illegal, unapproved kratom drug products (https://www.fda.gov/news-events/press-announcements/fda-issues-warnings-companies-selling-illegal-unapproved-kratom-drug-products-marketed-opioid) (last accessed October 23, 2023).

41.

OPMS kratom is imported, packaged, distributed, and sold through a complex web of companies that includes Defendants MARTIAN SALES, JOPEN, JOHNSON FOODS, LPI, CAG and RHI. This web is referred to herein as the OLISTICA enterprise.

42.

The OLISTICA enterprise is one of the largest kratom distributors in the United States, including Louisiana.

43.

Despite its prominence in the kratom industry, the OLISTICA enterprises' evasive tactics and abuse of corporate forms has been highlighted by recent investigative reports, as well as public filings in multiple lawsuits and claims brought by those harmed by its misconduct.[6]

44.

Through its various alter egos and agents, the OLISTICA enterprise has supported the import, distribution, and sale of three of the most popular kratom brand names on the market: Whole Herbs, Remarkable Herbs, and the OPMS product at issue in this case.

45.

OPMS Kratom is manufactured, packaged, distributed, and sold by the OPMS defendants via the stream of commerce throughout the United States to herbal stores, gas stations, corner stores, and smoke shops where it is primarily marketed as an herbal medicine or supplement to

---

[6]   *See, e.g.,* Hannah Critchfield, *A major US kratom brand relies on a maze of companies. Here's the list*, TAMPA BAY TIMES (Dec. 19, 2023) (https://www.tampabay.com/investigations/2023/12/19/major-us-kratom-brand-relies-maze-companies-heres-list/ ); Hannah Critchfield, Helen Freund and Langston Taylor, *DEADLY DOSE PART 3: Kratom's path across the US is marked by deception and secrets,* TAMPA BAY TIMES (December 17, 2023   (https://project.tampabay.com/investigations/deadly-dose/kratom-industry-opms-supply-chain-indonesia-florida/ ).

treat a variety of ailments such as pain, mental health, opioid withdrawal and constitutes as "product" as defined by La. R.S. 9:2800.53 (3).

46.

The OPMS defendants are a "manufacturer" as defined by La. R.S. 9:2800.53 (1).

47.

At the time of her death, the ingestion of Kratom by Harmony Moller was a reasonably anticipated use of the product manufactured by Defendants as defined by La. R.S. 9:2800.53 (7) and an intended use of the product by Martian Sales, Inc.

48.

Kratom is unreasonably dangerous as a matter of law, as defined by Louisiana's Products Liability Act, La. R.S. 9:2800.51 *et seq*., due to its failure to adequately warn users of the risk of sudden death by heart failure and/or great vessel failure, congenital heart or blood vessel conditions, its failure to warn of the opioid like effects of kratom and the pathological consequences of use of an atypical opiate like kratom, the failure to specify a maximum single dose warning, the failure to warn that any undefined overdose could cause injury or sudden death, what the symptoms of overdose would be to alert the victim or nearby persons, family or responders, nor any instructions regarding first aid or medical intervention at any stage of a user's symptoms as defined and required by La. R.S. 9:2800.53 (9).

49.

As a direct and proximate result of the manufacture and distribution of its unreasonably dangerous and defective product to Harmony Moller, as aforesaid, Defendants are strictly liable to Plaintiff in damages for Harmony Moller's conscious pain, suffering, fear, and grief in anticipation of death.

50.

The kratom product consumed by the decedent was also unreasonably dangerous and defective in design as defined by and in violation of La. R.S. 2800.56 in that there existed alternative products with the same or similar alleged benefits capable of preventing injury and death to users and the likelihood of injury or death with the use of kratom outweighed the burden of adopting such alternative design or use of different products.

51.

As a direct and proximate result of the manufacture and distribution of its unreasonably dangerous and defective product to Harmony Moller, as aforesaid, Defendants are strictly liable to Plaintiff in damages for her parents' grief, loss of companionship and consortium, love, affection, and support due to her wrongful death pursuant to La. C.C. art. 2315.2.

**WHEREFORE**, Plaintiff prays that her Complaint be deemed good and sufficient, that Defendants be duly cited, served and summoned to Answer it, that they receive a trial by jury on all issues herein, and that after due proceedings are held that there be judgment in their favor and against Defendants for the maximum reasonable amount of compensatory damages allowed by law, all taxable costs and judicial interest, and for all other general and equitable relief to which Plaintiff may be entitled by law.

Respectfully submitted,

**WAGAR HICKMAN, LLC**

*s/ Nelson W. Wagar, III*
**NELSON W. WAGAR, III (No. 13136)**
**SARAH WAGAR HICKMAN (No. 35823)**
1401 West Causeway Approach
Mandeville, Louisiana 70471
Telephone (985) 888-8740
shickman@wagarhickman.com
cwagar@wagarhickman.com

-and-

Michael J. Cowgill, Esq. (FL Bar # 1010945)
*To be admitted pro hac vice*
Tamara J. Williams, Esq.  (FL Bar # 127625)
*To be admitted pro hac vice*
**Mctlaw**
1605 Main Street, Suite 710
Sarasota, Florida 34236
Telephone 888.952.5242
mcowgill@mctlaw.com
twilliams@mctlaw.com

***Attorneys for Plaintiff, Kathleen Moller***

**Service via Waiver of the Service of Summons**