UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| KATHLEEN MOLLER, | * |
|     Plaintiff, | * |
| | * |
| v. | *  CIVIL ACTION NO. 2:24-cv-228-WBV-DPC |
| | * |
| MARTIAN SALES, INC.; JOPEN, | *  THE HONORABLE WENDY B. VITTER |
| LLC; JOHNSON FOODS, LLC; LP | * |
| IND., LLC; CAG HOLDINGS, LLC; | *  MAGISTRATE DONNA PHILLIPS |
| RMH HOLDINGS, INC.; ABC | *  CURRAULT |
| INSURANCE COMPANY and John | * |
| Does 1-4, | * |
|     Defendants. | * |

### DEFENDANTS' MOTION TO DISMISS

Defendants LP IND., LLC; CAG Holdings, LLC; RMH Holdings, Inc.; Martian Sales, Inc.; and Jopen, LLC (collectively "Defendants") move to dismiss Plaintiff Kathleen Moller's Second Amended Complaint ("SAC").

### I.  INTRODUCTION

The Court should dismiss the SAC for lack of personal jurisdiction because Plaintiff has not alleged any "minimum contacts" between any Defendant and the state of Louisiana required to establish personal jurisdiction.

Alternatively, the Court should dismiss each of Plaintiff's causes of action pursuant to Federal Rule of Civil Procedure 12(b)(6).  Plaintiff only alleges two causes of action—defective design and failure to warn under the Louisiana Products Liability Act (LPLA)—yet fails to state a claim for either.

Plaintiff's products liability claims fail because they fail to allege any connection between the decedent Harmony Moller's death and any product any Defendant may have manufactured. Plaintiff claims Harmony Moller died as a result of an alleged kratom overdose, but the SAC does

not plausibly allege that Harmony Moller consumed any Defendant's product, nor the circumstances of the alleged overdose as required by the Supreme Court's 12(b)(6) standards.

In addition to Plaintiff's failure to allege that any Defendant's product contributed to Harmony Moller's death, Plaintiff does not, nor could she allege that the design of any Defendant's kratom product was defective, and she cannot state a failure to warn claim under the LPLA. First, Plaintiff does not allege that Defendants could have designed or manufactured safer kratom products or that any of their kratom products were defectively manufactured. Instead, Plaintiff contends kratom can never be safely designed or manufactured: "Thus, it is not scientifically possible for Kratom sellers to verify that their products are safe for human consumption when sold over the counter like coffee, tea, or other natural products." SAC, ¶ 34.

This allegation fails to state a claim under the LPLA. The LPLA requires that Plaintiff allege and establish another design could have produced a safer product. But Plaintiff nowhere alleges how Defendants could have designed a safer product. As alleged by Plaintiff, it is simply impossible to design a safer product. This allegation does not state a design or manufacturing defect claim.

Plaintiff asserts that kratom should not be manufactured or sold at all. But kratom is legal under Louisiana state law and federal law and federal agencies encourage its production because of apparent benefits to consumers and little or no evidence of harm to human health.

Likewise, Plaintiff cannot state a failure to warn claim where the alleged risks are unknown and unknowable to any Defendant and therefore contrary to the state of the art.

**II.    SUMMARY OF ALLEGATIONS IN THE SECOND AMENDED COMPLAINT**

Because this Court must accept the Second Amended Complaint's factual (but not legal or conclusory) allegations as true for purposes of resolving this motion, Defendants summarize the

allegations relating to the alleged personal jurisdiction, to the decedent in this wrongful death action, and to the industry, below.[1]

**A.     Facts alleged by Plaintiff related to personal jurisdiction.**

The Second Amended Complaint's allegations related to where the Defendants allegedly conduct business are limited to the following: "Defendant, LP IND., LLC is a limited liability company with citizenship in Wyoming. [*sic*] and Georgia." SAC ¶ 7. Defendants CAG Holdings, LLC and RMH Holdings, LLC is each "a limited liability company with citizenship in Wyoming and Georgia." *Id.* ¶¶ 9, 11. Defendant Jopen, LLC is a "Texas-based" limited liability company with citizenship in Texas. *Id.* ¶¶ 2-3. Johnson Foods, LLC was and is a Wyoming Limited Liability Company and a citizen of Wyoming and Georgia. *Id.* ¶¶ 4-5.

Plaintiff alleges that Defendants have "supported the import, distribution, and sale of three of the most popular kratom brand names on the market: Whole Herbs, Remarkable Herbs, and the OPMS product at issue in this case." *Id.* ¶ 44. These are the only products that Plaintiff asserts are connected to Defendants (identified in the SAC as "OMPS defendants"), and only one of them is allegedly relevant to this case. *See id.* Plaintiff alleges: "On February 6, 2023, Harmony Moller, a 36-year-old female, died as the result of the ingestion of OPMS brand Kratom which she purchased in Mandeville, Louisiana." *Id.* ¶ 17.

For facts supporting personal jurisdiction against Defendants, who Plaintiff admits are neither citizens nor residents of Louisiana, Plaintiff alleges only as follows:

> OPMS Kratom is manufactured, packaged, distributed, and sold by the OPMS defendants via the stream of commerce throughout the United States to herbal stores, gas stations, corner stores, and smoke shops where it is primarily marketed as an herbal medicine or supplement to treat a variety of ailments such as pain,

---
[1] For the record, Defendants dispute many of these allegations, and only assume them to be true for this motion.

3

mental health, opioid withdrawal and constitutes as "product" as defined by La. R.S. 9:2800.53 (3).

SAC ¶ 45.

**B.     Harmony Moller.**

The decedent in this wrongful death action, Harmony Moller, died on February 6, 2023. SAC ¶ 17. Regarding the circumstances or causes of her death, the SAC alleges only as follows: "Harmony Moller, a 36-year-old female, died as the result of the ingestion of OPMS brand Kratom which she purchased in Mandeville, Louisiana. . . A postmortem examination of Harmony Moller determined that the cause of death was 'Abnormally high left coronary ostia takeoff exacerbated by Mitragynine use' secondary to the ingestion of Kratom." SAC ¶¶ 17, 20.

**C.     Facts regarding the state of the art related to kratom.**

"Kratom is the name given to botanical products derived from the leaves of the Mitragyna Speciosa tree, which grows in Southeast Asia." SAC ¶ 21. "[T]he nature and extent of Kratom's impact upon human physiology remains largely unknown." *Id.* ¶ 22. "Thus," according to the SAC, "it is not scientifically possible for Kratom sellers to verify that their products are safe for human consumption when sold over the counter like coffee, tea, or other natural products." *Id.* ¶ 34.

> Kratom contains dozens of psychoactive compounds or alkaloids, many of which are not understood. The two most-studied alkaloids are mitragynine and 7-hydroxymitragynine. These two alkaloids bind to the same opioid brain receptors as morphine. Like opiates, these compounds can lead to analgesia (release of pain), euphoria, and sedation.

*Id.* ¶ 23.

It is undisputed that kratom products are legal and widely available for purchase in Louisiana, both in physical stores and through the Internet. Ex. 1. The National Institute on Drug Abuse, NIDA, is studying and funding studies investigating beneficial uses of kratom, including

4

to help treat opioid addiction, and potential adverse effects. *Id.*[2]  NIDA is one of 27 Institutes and Centers that comprise the National Institutes of Health, which is part of the U.S. Department of Health and Human Services. *Id.*  NIDA confirms and adds detail to allegations in Plaintiff's complaint that (1) "the nature and extent of Kratom's impact upon human physiology remains largely unknown," SAC ¶ 22, *see* Ex. 1, and (2) alkaloids in kratom "bind to the same opioid brain receptors as morphine.  Like opiates, these compounds can lead to analgesia (release of pain), euphoria, and sedation."  SAC ¶ 23; *see* Ex. 1.[3]

### III.    PLAINTIFF'S CLAIMS

Plaintiff alleges two causes of action, both products liability claims, against Defendants: failure to warn, SAC ¶ 48-49, and defective design, *id.* ¶ 50-51.

---

[2] Exhibit 1 is an excerpt from NIDA's website.  NIDA, founded in 1974, is a federal scientific research institute and the world's largest funder of biomedical research. Exhibit 1. NIDA supports and conducts a wide range of preclinical, clinical, and population-level research regarding drug use and health.  *Id.*  NIDA then disseminates important results of the research it undertakes and supports to the public, health professionals, researchers, and policymakers. *Id.*  Courts can take judicial notice of content located on a webpage from a government-ran website. *See Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014) (ruling that on a "Rule 12(b)(6) motion" district courts may "consider documents attached to either a motion to dismiss or an opposition to that motion when the documents are referred to in the pleadings and are central to a plaintiff's claims"); *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) ("[T]he district court took appropriate judicial notice of publicly-available documents and transcripts produced by the FDA, which were matters of public record directly relevant to the issue at hand."); *Swindol v. Aurora Flight Scis. Corp.*, 805 F.3d 516, 519 (5th Cir. 2015) (taking judicial notice of "public records" on Government websites because their accuracy could not reasonably be questioned); *Norris v. Hearst Tr.*, 500 F.3d 454, 461 n.9 (5th Cir. 2007) ("[I]t is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record.").

[3]  Statements on the NIDA website are not subject to the hearsay rule where, as here, Defendants are offering them not for the truth of the matter asserted therein but to establish what was known to or knowable by Defendants. *See Mealey v. Gautreaux*, No. CV 16-716-JWD-RLB, 2020 WL 7043329, at *5 (M.D. La. Dec. 1, 2020) ("The HMA report was commissioned by Defendant and presented to Defendant. It clearly provided notice to Defendant of its contents and these included alleged deficiencies in EBRPP's healthcare which bear on Plaintiff's claims. If being offered solely for the purpose of establishing notice and not for the truth of its contents, then the HMA report is not hearsay under Fed. R. Evid. 801(c)(2).").

Plaintiff's defective design claim alleges as follows: "The kratom product consumed by the decedent was also unreasonably dangerous and defective in design as defined by and in violation of La. R.S. 2800.56 in that there existed alternative products with the same or similar alleged benefits capable of preventing injury and death to users and the likelihood of injury or death with the use of kratom outweighed the burden of adopting such alternative design or use of different products." SAC ¶ 50.

Plaintiff's failure to warn claim alleges as follows: "Kratom is unreasonably dangerous as a matter of law, as defined by Louisiana's Products Liability Act, La. R.S. 9:2800.51 et seq., due to its failure to adequately warn users of the risk of sudden death by heart failure and/or great vessel failure, congenital heart or blood vessel conditions, its failure to warn of the opioid like effects of kratom and the pathological consequences of use of an atypical opiate like kratom, the failure to specify a maximum single dose warning, the failure to warn that any undefined overdose could cause injury or sudden death, what the symptoms of overdose would be to alert the victim or nearby persons, family or responders, nor any instructions regarding first aid or medical intervention at any stage of a user's symptoms as defined and required by La. R.S. 9:2800.53 (9)." SAC ¶ 48.

## IV.   ARGUMENT

**A.   This Court lacks personal jurisdiction over Defendants.**

This Court lacks personal jurisdiction over any of the Defendants and therefore must dismiss the claims against Defendants pursuant to Rule 12(b)(2). The Court lacks both general and specific personal jurisdiction here.

"Where, as here, jurisdiction is grounded on diversity jurisdiction under 28 U.S.C. § 1332, a federal court may exercise personal jurisdiction over a non-resident defendant if the forum state's

long-arm statute confers personal jurisdiction over that non-resident defendant and if the exercise of personal jurisdiction satisfies the requirements of due process under the United States Constitution." *Agape Broadcasters Inc. v. Est. of Sampson through Matix*, 489 F. Supp. 3d 550, 554 (W.D. La. 2020) (citing *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009)). Under Louisiana's long arm jurisdiction statute, LSA-R.S. 13:3201(b), personal jurisdiction exists in Louisiana over nonresident defendants and foreign corporations as long as it complies with federal due process. *Id.* (citing *Petroleum Helicopters, Inc. v. Avco Corp. et al.*, 513 So. 2d 1188, 1192 (La. 1987)). "Thus, the jurisdictional analysis under the Louisiana Long-Arm Statute collapses into a single inquiry of whether the exercise of personal jurisdiction comports with due process." *Id.*

Plaintiff's identification of Defendants as non-resident parties "who manufactured, packaged, distributed, and sold" kratom "via the stream of commerce throughout the United States to herbal stores, gas stations, corner stores, and smoke shops" attempts to allege specific personal jurisdiction exists in this case, and asserts a stream of commerce theory of personal jurisdiction.[4] *See* SAC ¶ 23.

To establish specific jurisdiction, a plaintiff must show that the defendant has purposeful minimum contacts with the forum state. To establish purposeful minimum contacts, the defendant

---

[4] There could not be general jurisdiction over Defendants. General jurisdiction exists "only when the corporation's affiliations with the State in which suit is brought are so constant and pervasive as to render it essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014) (internal quotations omitted). "The 'paradigm' forums in which a corporate defendant is 'at home,' ... are the corporation's place of incorporation and its principal place of business." *Id.* Plaintiff does not and cannot allege that any Defendant has ever been licensed to do business in Louisiana; that any Defendant's officers, directors, or employees reside or are domiciled in Louisiana; that any Defendant has ever had offices in Louisiana; that any Defendant has any bank accounts or property in Louisiana; that any Defendant pays any taxes in Louisiana; or that any Defendant has any employees or other agents in Louisiana. There is no general jurisdiction over any Defendant, and Plaintiff has not even attempted to so allege.

must do some act that "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985).  With respect to the stream of commerce theory for personal jurisdiction asserted by Plaintiff, in the Fifth Circuit, a plaintiff must "show that the defendant delivered the product that injured him into the stream of commerce with the expectation that it would be used by consumers in the forum state, in order to establish specific personal jurisdiction." *Trosclair v. Int'l Lab'ys, Inc.*, No. 6:19-CV-00318, 2020 WL 4498952, at *3 (W.D. La. July 20, 2020), *report and recommendation adopted sub nom. Trosclair v. Int'l Lab'ys, L.L.C.*, No. CV 6:19-0318, 2020 WL 4498911 (W.D. La. Aug. 4, 2020) (citing *In re DePuy Orthopaedics, Inc., Pinnacle Hip Implant Product Liability Litigation*, 888 F.3d 753, 778 (5th Cir. 2018)).

Plaintiff's allegation that Defendants "manufactured, packaged, distributed, and sold" kratom "via the stream of commerce throughout the United States to herbal stores, gas stations, corner stores, and smoke shops" is too general and insufficient to establish personal jurisdiction over any Defendant.  The allegations contain no facts, only assertions.  Plaintiff must allege specific "acts" by each Defendant to purposefully avail itself of the privilege of doing business in Louisiana.  "As a rule in these cases," the Fifth Circuit "has inquired whether there was 'some act by which the defendant purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Pervasive Software Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 221 (5th Cir. 2012) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)) (citing *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980) (Oklahoma court may not exercise personal jurisdiction "over a nonresident automobile retailer and its wholesale distributor in a products-liability action, when the defendants' only connection

with Oklahoma is the fact that an automobile sold in New York to New York residents became involved in an accident in Oklahoma")).

The allegation that Harmony Moller purchased a single product from an unidentified retailer in Louisiana does not satisfy this standard. Plaintiff does not allege any acts by any Defendant. Plaintiff alleges only: "On February 6, 2023, Harmony Moller, a 36-year-old female, died as the result of the ingestion of OPMS brand Kratom which she purchased in Mandeville, Louisiana." SAC ¶ 17.

This bare assertion does not sufficiently allege that any Defendant's action purposely led to that product appearing for purchase at that unknown retailer. The "unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction." *Helicopteros Nacionales de Colombia, SA v. Hall*, 466 U.S. 408, 417 (1984); *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009) (The "unilateral activity of another party or third person" other than the defendant cannot be a basis for personal jurisdiction.).

There is no general or specific jurisdiction over any Defendant and therefore this Court must dismiss this case for this reason alone.

**B.     Plaintiff fails to allege products liability claims against any Defendant.**

This Court should dismiss the Second Amended Complaint under Rule 12(b)(6) for failure to state a claim against any Defendant.

**1.     Legal standards for a 12(b)(6) motion to dismiss.**

"To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin v. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). The United States Supreme Court set forth the basic criteria

9

necessary for a complaint to survive a Rule 12(b)(6) motion to dismiss in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (internal citations and brackets omitted).

A complaint is insufficient if it merely "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In order to satisfy the plausibility standard, the plaintiff must show "more than a sheer possibility that the defendant has acted unlawfully." *Id.* While the court must accept well-pleaded facts as true, it will not "strain to find inferences favorable to the plaintiff." *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004). Finally, in deciding a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 556.

**2. The Court should dismiss the SAC against all Defendants because Plaintiff fails to allege that any product they may have manufactured caused Harmony Moller's death.**

The threshold issue here is whether any of the Defendants is a manufacturer as defined by the LPLA. This is because the first element of a claim under LPLA is that "the defendant is a manufacturer of the product." *Jefferson v. Lead Indus. Ass'n, Inc.*, 106 F.3d 1245, 1251 (5th Cir. 1997) (quoting La. R.S. § 9:2800.54). And Plaintiff has only alleged two claims, both products liability claims—failure to warn and manufacturing defect—against Defendants. SAC ¶¶ 48-51. Plaintiff asserts that each of the Defendants is a manufacturer. *Id.* ¶ 46. Defendants therefore assume this to be true for the purposes of this motion.

Plaintiff's products liability claims fail because they fail to allege sufficient facts to establish a connection between Harmony Moller's death and any product that may have been

10

manufactured by a Defendant. "The LPLA provides that a manufacturer of a product is liable to a claimant for damage 'proximately caused' by a characteristic of the product that rendered it 'unreasonably dangerous' when the damage arose from a reasonably anticipated use of the product by the "claimant or another person or entity." *Jefferson*, 106 F.3d at 1251 (citing La. R.S. § 9:2800.54A).

The only allegations connecting any Defendant to Harmony Moller's death are as follows: "On February 6, 2023, Harmony Moller, a 36-year-old female, died as the result of the ingestion of OPMS brand Kratom which she purchased in Mandeville, Louisiana." SAC ¶ 17. Plaintiff also alleges that Defendants "manufactured, packaged, distributed, and sold" "OPMS Kratom." *See* SAC ¶ 23.

These conclusory assertions do not satisfy the Rule 12(b)(6) standard. Plaintiff makes only bald assertions that a Defendant's product that was manufactured by one or more of the Defendants was purchased by Harmony Moller at an unnamed retailer in Louisiana. There is no allegation regarding when or where Harmony Moller consumed any product manufactured by any Defendant. This is insufficient. *See Dendinger* v. *Covidien LP*, No. CV 18-4168, 2018 WL 4462579, at *2 (E.D. La. Sept. 18, 2018) ("Absent factual allegations addressing how the unidentified products deviated from normal production standards or caused his injury, Dendinger fails to meet the plausibility standard."); *McManus v. Bard*, No. CV 17-11836, 2018 WL 10798554, at *2 (E.D. La. Mar. 19, 2018) ("Plaintiff has provided limited facts regarding his injury, has provided insufficient facts about the nature of the defect in the alleged product, and it is unclear which of Defendants' products allegedly caused the injury."). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to

11

provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. 555.

The Court should dismiss this case because Plaintiff's complaint fails to connect any Defendant to a product that allegedly caused Harmony Moller's death.

**3.     Plaintiff fails to allege a design defect claim.**

Plaintiff does not allege that the design of any Defendant's kratom product was defective, nor could she. Instead, she claims that a safe design for kratom products is impossible, which does not give rise to a design defect claim under the LPLA.

Under the LPLA, Plaintiff must allege and prove the product is "unreasonably dangerous in design" as well as specifically allege an alternative design that was feasible given the state of the art. La. R.S. § 9:2800.56, .59. The LPLA defines the elements of a design defect cause of action in part as follows:

> § 2800.56. Unreasonably dangerous in design
>
> A product is unreasonably dangerous in design if, at the time the product left its manufacturer's control:
>
> (1) *There existed an alternative design for the product that was capable of preventing the claimant's damage*; and
> (2) The likelihood that the product's design would cause the claimant's damage and the gravity of that damage outweighed the burden on the manufacturer of adopting such alternative design and the adverse effect, if any, of such alternative design on the utility of the product. An adequate warning about a product shall be considered in evaluating the likelihood of damage when the manufacturer has used reasonable care to provide the adequate warning to users and handlers of the product.

(Emphasis added.)

The second part pertaining to defective design, section 2800.59(A), requires that a claimant show that the alternative design (which is also feasible and would avert the injury) withstands a

risk/utility analysis. *See* John Kennedy, *A Primer on the Louisiana Products Liability Act*, 49 La. L. Rev. 565, 599–600 (1989). It provides:

> A. Notwithstanding R.S. 9:2800.56, a manufacturer of a product shall not be liable for damage proximately caused by a characteristic of the product's design if the manufacturer proves that, at the time the product left his control:
>
> (1) He did not know and, in light of then-existing reasonably available scientific and technological knowledge, could not have known of the design characteristic that caused the damage or the danger of such characteristic; or
>
> (2) He did not know and, in light of then-existing reasonably available scientific and technological knowledge, could not have known of the alternative design identified by the claimant under R.S. 9:2800.56(1); or
>
> (3) The alternative design identified by the claimant under R.S. 9:2800.56(1) was not feasible, in light of then-existing reasonably available scientific and technological knowledge or then-existing economic practicality.

La. R.S. 9:3800.59(A); *see also*, John Kennedy, *A Primer*, 49 La. L. Rev. at 602 ("Notwithstanding section 2800.56, a manufacturer is not liable according to section 2800.56(A) if he proves that at the time of distribution (1) he did not know and, in light of then-existing reasonably available scientific and technological knowledge, could not have known of the damage-causing design characteristic or (2) its danger, (3) he did not know and, in light of then-existing reasonably available scientific and technological knowledge, could not have known of the alternative design identified by the claimant in his case-in-chief, or (4) the alternative design was not feasible, based on then-existing reasonably available scientific and technological knowledge or then-existing economic practicality.").

While the statute speaks in terms of a defendant's burden to prove such "state of the art defenses," *see id.*, it is the plaintiff's burden to first identify—to allege—an alternative design that was feasible and would have prevented the injury or death at issue. *See id.* at 627, fn. 159, 144 ("The manufacturer does not have to prove that all possible alternative designs were unknowable

13

or not feasible *but only the alternative design or designs identified by the claimant pursuant to section 2800.56*. To require otherwise would unfairly force the manufacturer to prove a negative.") (emphasis added) (citing Schwartz, *Foreword: Understanding Products Liability*, 67 Calif. L. Rev. 435, 468 (1979) ("'[O]ne simply cannot talk meaningfully about a risk-benefit defect in a product design until and unless one has identified some design alternative (including any design omission) that can serve as the basis for a risk-benefit analysis.'")); *Williams v. United Parcel Servs., Inc.*, No. CV 17-483-SDD-RLB, 2018 WL 1189687, at *3 (M.D. La. Mar. 7, 2018) ("If Plaintiff is asserting a design defect claim against Southern Tire, she has failed to allege 'that an alternative design existed' at the time the product was manufactured and 'that the risk avoided by using the alternative design (magnitude of damage discounted by the likelihood of its occurrence) would have exceeded the burden of switching to the alternative design (added construction costs and loss of product utility).'").

Plaintiff makes the conclusory assertion that there was an alternative design, but fails to identify one. She alleges that "[t]he kratom product consumed by the decedent was also unreasonably dangerous and defective in design as defined by and in violation of La. R.S. 2800.56 in that there existed alternative products with the same or similar alleged benefits capable of preventing injury and death to users and the likelihood of injury or death with the use of kratom outweighed the burden of adopting such alternative design or use of different products." SAC ¶ 50.

Plaintiff fails to allege an alternative design because none is known to science, as she herself admits. Plaintiff alleges that "the nature and extent of Kratom's impact upon human physiology remains largely unknown." *Id.* ¶ 22. Thus, according to the Second Amended Complaint, "it is not scientifically possible for Kratom sellers to verify that their products are safe

14

for human consumption when sold over the counter like coffee, tea, or other natural products." *Id.* ¶ 34.

An assertion that it is not scientifically possible to design a safer product is fatal to a design defect claim. Plaintiff must allege that a safer design was feasible. Plaintiff's allegations fail to state a claim because Plaintiff does not allege that any safer alternative exists or what that design is and fails to allege how the design is defective. She pleads the legal elements of a design defect claim in conclusory fashion. This is insufficient to state a claim. In *Jenkins v. Bristol-Myers Squibb*, No. 14-2499, 2015 WL 5012130 (E.D. La. Aug. 21, 2015), the court held that the bald allegation that Bristol-Myers "failed to consider an alternative design" of its medication was insufficient because "Plaintiff fails to plead that an alternative design existed that could have prevented Plaintiff's injuries. It is not sufficient under the LPLA to allege that Defendants failed to consider an alternative design." *Id.* at *4. Likewise, in *Watson v. Bayer Healthcare Pharmaceuticals, Inc*., No. 13-212, 2013 WL 1558328 (E.D. La. Apr. 11, 2013), the plaintiff alleged that "[t]here are contraceptives on the market with safer alternative designs," but the court granted the motion to dismiss, finding that the plaintiff "has failed to allege how Mirena®'s design is defective, what aspect of Mirena®'s design caused her injuries, or how the defective design relates to her specific injuries." *Id.* at *5.

Here, as Plaintiff herself alleges, and/or may be inferred from the SAC, the undisputed consensus among medical science, state and federal legislators, and government regulators is that kratom is legal and benefits consumers. At the same time, "the nature and extent of Kratom's impact upon human physiology remains largely unknown." *Id.* ¶ 22. This means that any material risk to human health remains unknown. Ex. 1.

But to state a cause of action, Plaintiff had to allege that Defendants could have designed a safer product but failed to do so—such as, for example, a guard on a power lawn mower. Plaintiff cannot make any such allegation, and so resorts to baldly asserting that the product should be illegal. While kratom is being intensively studied, the sale and consumption of kratom is legal in Louisiana and throughout the United States because of kratom's apparent benefits, and material risk associated with kratom, if any, remains unknown, notwithstanding continuous ongoing tests by federal agencies and institutions funded by federal agencies. *See* Ex. 1.

Plaintiff's claim that no one should manufacture or sell kratom fails as a matter of law under the LPLA's state of the art test. Plaintiff's assertion that there was a safer alternative design without alleging that design does not state a design defect claim. The Court should dismiss the claim.

### 4. Plaintiff fails to allege a failure to warn claim.

Plaintiff has failed to allege a failure to warn claim because the risks she alleges that Defendants should have warned about are undisputedly not known or knowable to any Defendant. Nor could she state a failure to warn claim for this reason.

The same legal framework as for design defect applies to Plaintiff's failure to warn claim. "[T]he LPLA recognizes that the manufacturer has a duty to use reasonable care to provide an adequate warning to users and handlers of the [product] if it knows or should have known that the [product] presents a serious risk of harm even after the [product] has left the manufacturers control." *Gavin v. Medtronic, Inc.*, No. CIV.A. 12-0851, 2013 WL 3791612, at *14 (E.D. La. July 19, 2013) (citing La. R.S. § 9:2800.57(C)). Under Louisiana Revised Statute 9:2800.59(B), there is no failure to warn claim if, "at the time the product left his control, he did not know and, in light of then-existing reasonably available scientific and technological knowledge, could not have

16

known of the characteristic that caused the damage or the danger of such characteristic." *In re Taxotere (Docetaxel) Prod. Liab. Litig.*, No. MDL 16-2740, 2020 WL 3577397, at *1 (E.D. La. July 1, 2020) (citing La. R.S. § 9:2800.59(B)).

The only allegations in the SAC regarding warnings that Defendants should have provided are as follows: "Kratom is unreasonably dangerous as a matter of law, as defined by Louisiana's Products Liability Act, La. R.S. 9:2800.51 et seq., due to its failure to adequately warn users of the risk of sudden death by heart failure and/or great vessel failure, congenital heart or blood vessel conditions, its failure to warn of the opioid like effects of kratom and the pathological consequences of use of an atypical opiate like kratom, the failure to specify a maximum single dose warning, the failure to warn that any undefined overdose could cause injury or sudden death, what the symptoms of overdose would be to alert the victim or nearby persons, family or responders, nor any instructions regarding first aid or medical intervention at any stage of a user's symptoms as defined and required by La. R.S. 9:2800.53 (9)." *Id.* ¶ 48.

This does not state a plausible claim, given Plaintiff's own admission that "the nature and extent of Kratom's impact upon human physiology remains largely unknown," *id.* ¶ 22, and "it is not scientifically possible for Kratom sellers to verify that their products are safe for human consumption when sold over the counter like coffee, tea, or other natural products." *Id.* ¶ 34. "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Katrina Canal Breaches*, 495 F.3d at 205 (quoting *Martin*, 369 F.3d at 467). To satisfy the plausibility standard, the plaintiff must show "more than a sheer possibility that the defendant has acted unlawfully." *Ashcroft*, 556 U.S. at 678.

Plaintiff's failure to warn claim does not pass the plausibility test. Plaintiff alleges that kratom should not be manufactured or distributed by anyone based on danger to human health that

17

is unknown to science, and so the warning should have said do not buy this product. That does not align with the LPLA standards or what Plaintiff admits is known medical science. It is undisputed that "at the time the product left [Defendants'] control, [they] did not know and, in light of then-existing reasonably available scientific and technological knowledge, could not have known of the characteristic that [allegedly] caused the damage or the danger of such characteristic." *Taxotere*, 2020 WL 3577397, at *1 (citing La. R.S. § 9:2800.59(B)).

The Court should dismiss the failure to warn claim.

## V.   CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiff's Second Amended Complaint.

Dated this 8th day of May, 2024.

                Respectfully Submitted

By: */s/ Gwendolyn C. Payton*
**Gwendolyn C. Payton** *(pro hac vice)*
**Hayley R. Ambler**
Louisiana State Bar No. 25848

**KILPATRICK TOWNSEND & STOCKTON LLP**
1420 Fifth Ave., Suite 3700
Seattle, Washington 98101
Telephone:     (206) 497-9600
Facsimile:     (206) 299-0414
Email:  hambler@ktslaw.com
Email:  gpayton@ktslaw.com

**COUNSEL FOR DEFENDANTS LP IND., LLC; CAG HOLDINGS, LLC; RMH HOLDINGS, INC.; MARTIAN SALES, INC.; AND JOPEN, LLC.**

## CERTIFICATE OF SERVICE

    This is to certify that on the 8th day of May 2024, a copy of the foregoing document was filed with the Clerk of Court and served on all counsel of record via the Court's ECF System.

                                              */s/ Gwendolyn C. Payton*
                                              Gwendolyn C. Payton