## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| KATHLEEN MOLLER | * | CIVIL ACTION NO. 24-0228-WBV-DPC |
| | * | |
| VERSUS | * | JUDGE WENDY B. VITTER |
| | * | |
| MARTIAN SALES, INC; JOPEN, LLC, | * | MAGISTRATE DONNA PHILLIPS |
| a Texas limited liability company; | * | CURRAULT |
| JOHNSON FOODS, LLC, a Wyoming | * | |
| limited liability company; LP IND., LLC, | * | |
| a Wyoming limited liability company; | * | |
| CAG HOLDINGS, LLC, a Wyoming | * | |
| limited liability company; RMH | * | |
| HOLDINGS, INC., a Wyoming | * | |
| corporation; ABC INSURANCE | * | |
| COMPANY and John Does 1-4. | * | |
| | * | |
| | * | |
| * * * * * * * * * * * * * * * * * * * * * | * | |

**PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS BY L.P. IND., LLC; CAG HOLDINGS, LLC; RMH HOLDINGS, INC.; MARTIAN SALES, INC.; JOHNSON FOODS, LLC and JOPEN, LLC**

COMES NOW the Plaintiff, Kathleen Moller ("Plaintiff"), by and through her attorneys, and presents this memorandum opposing the Motion to Dismiss filed by LP IND., LLC; CAG HOLDINGS, LLC; RMH HOLDINGS, INC.; MARTIAN SALES, INC; JOHNSON FOODS, LLC; and JOPEN, LLC (collectively, "OPMS Defendants" or "Defendants").

### I.    INTRODUCTION

This wrongful death action presents claims arising from the preventable death of Harmony Moller.  On February 6, 2023, Harmony Moller died suddenly and unexpectedly at the age of 36. A postmortem exam determined the cause of death was "Abnormally high left coronary ostia takeoff exacerbated by mitragynine use."  Mitragynine is the most abundant active alkaloid in the

1

Southeast Asian plant *Mitragyna Speciosa*, commonly known as kratom.[1] See Second Amended

Complaint ("SAC" or "Complaint" hereafter), Doc. 7, ¶ 17 & 20.  The product leading to Harmony

Moller's death was "OPMS kratom."  *Id.* at ¶ 17.



        The kratom ingested by Harmony Moller before her death was OPMS Kratom. The product

was purchased and packaged as depicted in the image above which is the actual package found

with the decedent, in her bedroom, where she was found dead by Plaintiff. The "OPMS kratom

powder" is a known trademark for Martian Sales, Inc ("Martian Sales" hereafter).  Martian Sales

is one of the named defendants and part of a network of companies, as alleged in Plaintiff's

Complaint.

---

[1] https://www.merriam-webster.com/dictionary/mitragynine

Plaintiff has plainly alleged that Defendants are alter egos of one another and operate a single business enterprise. *Id.* at ¶ 12. She has alleged that Defendants have imported, marketed, distributed, sold, and promoted OPMS kratom products in Louisiana, for consumption by Louisiana consumers, such that they have minimum contacts with Louisiana. *Id.* at ¶ 40. OPMS kratom, the product that caused Harmony Moller's untimely death, is imported, packaged, distributed, and sold through a web of companies consisting of the named Defendants, who make up the OPMS enterprise that distributes OPMS kratom to Louisiana. *Id.* at ¶ 41-42 & 45.

Defendants have complained that Plaintiff's allegations are "conclusory" or "inadequately pleaded," are "plainly insufficient" or "raw legal conclusions unsupported by any factual allegations whatsoever." See generally, Motion to Dismiss, Doc .32-1. These fallacious complaints lack merit and will be exposed and debunked, *infra*.  In so many words, Defendants assert the Plaintiff's Complaint runs afoul of *Twombly* by failing to adequately plead sufficient facts to be facially plausible to enable this Court to draw the reasonable inference that the Defendants are liable for the misconduct alleged.[2]

In the first place, the Plaintiff's allegations clearly and specifically allege the legal framework to establish personal jurisdiction over these Defendants, and to plainly state Plaintiff's legal causes of action against them. Such allegations include:

- All Defendants named herein are alter egos of one another and operate as a single business enterprise through a secretive web of affiliates, individuals, shell companies, alter egos, business named, assumed named, and/or trade names… SAC at ¶ 12.
- All Defendants named herein make up and are hereinafter referred to as the "OPMS Defendants…" *Id.* at 13.
- On February 6, 2023, Harmony Moller, a 36-year-old female, died as the result of the ingestion of OPMS brand kratom which she purchased in Mandeville, Louisiana. *Id.* at ¶ 17.
- The OPMS Defendants have profited from unfair and deceptive business practices by promotion, distributing, and/or selling dangerous kratom products to Louisiana residents, including Harmony Moller. *Id.* at ¶ 40.

---

[2] *Bell Atlantic Corporation v. Twombly.,* No. 05-1126 (2006), 550 U.S. 544; 127 S. Ct. 1955, at 570

- OPMS kratom is imported, packaged, distributed, and sold through a complex web of companies that includes Defendants. This web is referred to herein as the OPMS enterprise. *Id.* at ¶ 41.
- The OPMS enterprise is one of the largest kratom distributors in the United States, including Louisiana. *Id.* at ¶ 42.
- OPMS kratom is manufactured, packaged, distributed, and sold by the OPMS Defendants via the stream of commerce throughout the United States to herbal stores, gas stations, corner stores, and smoke shops where it is primarily marketed as an herbal medicine or supplement to treat a variety of ailments such as pain, mental health, opioid withdrawal, and constitutes a "product" as defined by LA. R.S. 9:2800.53(3). *Id.* at ¶45.
- As a direct and proximate result of the manufacturing and distribution of its unreasonably dangerous and defective product to Harmony Moller, as aforesaid, Defendants are strictly liable to Plaintiff in damages…. *Id.* at ¶ 49 & 51.

As to the detailed *factual* basis for these claims, Plaintiff incorporated by reference in her Complaint at Paragraphs 35 and 36, an FDA Import Alert, an FDA Health Fraud Seizure and Injunction Alert, and an FDA alert about the deadly risks associated with kratom. The content of these FDA warnings and alerts regarding kratom could have been spelled out in the Complaint *verbatim* but, obviously, for the sake of brevity they were not.

Likewise, at paragraph 38, Plaintiff incorporated by reference another FDA news release and warning to companies selling illegal, unapproved kratom drug products. At paragraph 43, Plaintiff incorporated by reference a comprehensive article from the Tampa Bay Times entitled "A major US kratom brand relies on a maze of companies. Here's the list …"

These references contain details of both the single business enterprise in which the Defendants are engaged with respect to the sale of kratom, but also factually underpin the dangers of the product to consumers such as the decedent in this case which is the "misconduct" or cause of action upon which this lawsuit is based.

Again, these details were and are included in the Complaint, but *Defendants make no mention of them* in their memoranda. Perhaps they did not read them. Or perhaps they would prefer that they be ignored altogether. They will be discussed further, *infra*.

## II.      STANDARD OF REVIEW FOR RULE 12(b) MOTION TO DISMISS

The purpose of a motion to dismiss under Rule 12(b)(6) is to assess the legal feasibility of the complaint, not to weigh the evidence which the plaintiff offers or intends to offer; motion should not be granted on ground that possibility of ultimate recovery is remote. *Schieffelin & Co. v. Jack Co. of Boca*, 725 F. Supp. 1314, 1322 (S.D.N.Y. 1989). Defendants seek to do the opposite here: to put the Plaintiff to the proof of her pleadings in exquisite detail, at the outset of the litigation, before they Answer, before they are required to provide disclosures under Rule 26, and without discovery to which she is entitled.

The only requirement of Rule 12 is that of stating a claim on which relief can be granted and that there is no requirement that a plaintiff provide a bill of particulars. *Michael v. Clark Equip. Co.*, 380 F.2d 351, 352 (2d Cir. 1967).

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atlantic Corporation v. Twombly.*, No. 05-1126 (2006), 550 U.S. 544; 127 S. Ct. 1955, at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*, at 556, 127 S. Ct. 1955. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009)

Defendants' Motion basically seeks dismissal for lack of personal jurisdiction and for failure to state a claim upon which relief could be granted.  Both grounds are meritless.

Plaintiff must only establish a *prima facie* showing of jurisdiction. *Luv N' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006). The court must accept the plaintiff's

uncontroverted allegations as true and resolve any conflicts of fact in favor of finding jurisdiction. *Id.* Doing so here, results in a finding of jurisdiction over the OPMS Defendants.

A federal court sitting in diversity considering personal jurisdiction over a defendant, looks first to the long-arm statute of the forum state to determine whether the forum may exert personal jurisdiction. *Pervasive Software Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 220 (5th Cir. 2012). Next, the court must ensure that exercising jurisdiction would not violate the Due Process Clause of the Fourteenth Amendment. *Id.* Because Louisiana's long-arm statute confers jurisdiction up to the limits of the U.S. Constitution, "the two inquiries fold into one." *Luv N' care*, 438 F.3d at 469.

Plaintiff has no quarrel with familiar citations to *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) and its progeny that require minimum contacts with the forum state but the unique facts and circumstances of this case require the Court to consider these contacts for the single business enterprise as a whole, rather than each individual entity, since the very reason for the existence of these myriad corporations is to evade jurisdiction and adjudication of the claims against them, as Plaintiff's Complaint makes clear.

Furthermore, even when a plaintiff's allegations are insufficient to establish jurisdiction, the remedy would not be dismissal, but would be an order recognizing the plaintiff's right to conduct *jurisdictional discovery* after which defendant may renew its jurisdictional challenge. Plaintiff asserts that if this Court does not find Plaintiff has a made a *prima facie* showing of jurisdiction, the factual allegations at least suggest that jurisdiction likely exists and the Plaintiff should be permitted to conduct jurisdictional discovery. See, *Meunier v. Home Depot U.S.A., Inc.*, No. CV 19-12141, 2020 WL 6708379, at *4 (E.D. La. Nov. 16, 2020).

Similarly, a motion for failure to state a claim under Rule 12(b)(6) requires the court to determine whether, construing the allegations "in the light most favorable to the plaintiff, the complaint states a valid claim for relief." *Brinston v. Walmart, Inc.*, 411 F. Supp. 3d 381, 387 (E.D. La. 2019) (Citing, *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010). To avoid dismissal, a plaintiff must plead sufficient facts to "state a claim for relief that is plausible on its face." *Id.* (quoting *Iqbal*, 129 S. Ct. at 1949). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Court accepts the allegations as true, other than "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Id.* (quoting *Plotkin v. IP Axess, Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)). Likewise, as mentioned above, to the extent this Court finds Plaintiff fails to state a claim, Plaintiff, in the alternative, seeks leave to amend to address any concerns this Court may have. Such amendments should be freely given when justice so requires. See, FRCP 15(a)(2).

### III.    QUESTIONS PRESENTED

A.    Has the Plaintiff adequately *pled* the existence of a single business enterprise by and among the various Defendants and entities such that she has stated a plausible cause of action and a basis for personal jurisdiction over the enterprise?

B.    Does the court have personal jurisdiction over the single business enterprise and therefore the component Defendants by alleging established contacts with Louisiana through their distribution of kratom nationally in the stream of commerce, as well as falsely marketing and promoting, and deceptively selling kratom into Louisiana as a safe product lawfully on the shelf for human consumption?

C.      Should the OPMS Defendants' Motion to Dismiss be denied where the Plaintiff properly alleged causes of action under the Louisiana Product Liability Act (LPLA) based on OPMS Defendants' improper and deceptive packaging, distribution and over-the-counter sale of a deadly drug-like product without adequate warnings, leading to Harmony Moller's death?

## IV.      AUTHORITY AND ARGUMENT

### A.  The Single Business Enterprise Doctrine is Applicable

In Defendants' Memorandum, the omission of any mention or discussion of Louisiana's single business enterprise doctrine is completely understandable inasmuch as it vitiates any basis for the relief they seek.

Louisiana courts have recognized the single business enterprise theory as a vehicle for holding a group of affiliated entities responsible for the obligations of one of the entities.  *Sarpy v. ESAD, Inc.*, 2007-0347 (La. App. 4 Cir. 9/19/07), 968 So. 2d 736, 738, *writ denied*, 2007-2056 (La. 1/11/08), 972 So. 2d 1170; *In re New Orleans Train Car Leakage Fire Litigation,* 96–1677 (La. App. 4 Cir. 3/5/97), 690 So.2d 255.

It has long been held in Louisiana that the legal fiction of a distinct corporate entity may be disregarded when a corporation is so organized and controlled as to make it merely an instrumentality or adjunct of another corporation. If one corporation is wholly under the control of another, the fact that it is a separate entity does not relieve the latter from liability. In such an instance, the former corporation is merely an alter ego or a business conduit of the latter. *Green v. Champion Insurance Company,* 577 So.2d 249, 257 (La. App. 1st Cir.), *writ denied,* 580 So.2d 668 (La.1991).

When corporations represent precisely the same single interest, the court is free to disregard their separate corporate identity. *Green,* 577 So.2d at 257. As also noted therein, courts can pierce

the veil of a corporation in order to reach the "alter egos" of the corporate defendant, especially where the corporations constitute a single business. Thus, in addition to the traditional "piercing the veil" theory to disregard a corporate identity, the court in *Green* utilized the "single business enterprise" or "instrumentality" theory to extend liability beyond a separate entity. *Green,* 577 So.2d at 257–258.

As instructed in *Green*, in determining whether a group of entities constitutes a single business enterprise, certain factors similar to the factors used in "piercing the corporate veil" cases should be utilized. *Grayson v. R.B. Ammon & Assocs., Inc.*, 1999-2597 (La. App. 1 Cir. 11/3/00), 778 So. 2d 1, 14, *writ denied*, 2000-3270 (La. 1/26/01), 782 So. 2d 1026, and *writ denied*, 2000-3311 (La. 1/26/01), 782 So. 2d 1027.

Whether an affiliated group of entities constitutes a "single business enterprise" is **a question of fact** to be decided by the trial court. *Lee v. Clinical Research Center of Florida,* 04–0428, p. 7 (La. App. 4 Cir. 11/17/04), 889 So.2d 317; *Grayson v. Ammon & Associates, Inc.,* 99–2597, pp. 21–22 (La. App. 1 Cir. 11/3/00), 778 So.2d 1, 15. *Sarpy v. ESAD, Inc.,* 2007-0347 (La. App. 4 Cir. 9/19/07), 968 So. 2d 736, 739, *writ denied*, 2007-2056 (La. 1/11/08), 972 So. 2d 1170; *Boes Iron Works, Inc. v. Gee Cee Grp., Inc.,* 2016-0207 (La. App. 4 Cir. 11/16/16), 206 So. 3d 938, 948, *writ denied*, No. 2017-C-0040, 2017 WL 744658 (La. Feb. 10, 2017).

In Paragraph 12 of Plaintiff's SAC, she pleads and alleges:

All Defendants named herein are **alter egos** of one another and operate as a **single business enterprise** through a secretive web of affiliates, individuals, shell companies, alter egos, business names, assumed names and/or trade names, including, but not limited to,  Aether, LLC; Aghosh Corp.; Axis Holdings, LLC; Johnson Foods, LLC, LP IND., LLC; CAG Holdings, LLC; RMH Holdings, LLC; Lunar Labs, LLC; Martian Sales, Inc.; Shaman Supplies, LLC; Kono Labs; Highway 160 Way, LLC, PFI, LLC; Nuza LLC; Nuza,; Nuza Logistics; Calibre Manufacturing, LLC; Advanced Nutrition; Uziel, LLC; 1099 Industrial LLC; 1100 Alpha, LLC; Engaged Investments, LLC; Olistic Life Sciences Group; Olistica; Olistica Group; Interactive Earth Sciences Corp; Liv Group, Inc; Cascade Naturals;

Della Terra Pharmaceuticals; NP Pharma Holdings, LLC; OPMS; Choice Organics; Jordan Process; Precision Biologics; Eyal Gabbey,; Peyton Shea Palaio; Mark Jennings; Mark Reilly and Jacob Fletcher.

The named Defendants are collectively designated for convenience as the "OPMS Defendants" in Paragraph 13.

At paragraphs 40-42, Plaintiffs allege how the OPMS Defendants have combined to profit by promoting, distributing and/or selling kratom through "a complex web of companies that includes Defendants" who are referred to in the Complaint as the "OPMS enterprise" and "one of the largest kratom distributors in the United States."

At paragraph 43, the secretive and evasive tactics and abuse of corporate forms has been the subject of numerous investigations and reports as well as multiple public filings in multiple lawsuits by those harmed.  Those lawsuits include:

- Rachel McKibban, as Personal Representative of the Estate of Jordan McKibban, Deceased v. JOpen, LLC et. al., Case No. 23-2-01183-08 (Superior Court of the State of Washington In and For Cowlitz County) (naming in part, JOpen, LLC, Johnson Foods, LLC, LP IND., LLC, CAG Holding, LLC, RMH Holdings, LLC, and Olistica);
- Dusti Young, as Anticipated Representative of the Estate of Dustin Hernandez, Deceased, and Brenda Sandoval v. "OPMS Wholesale;" JOpen, LLC *et al*., Cause No. CC-23-01707-C (County Court of Dallas, Texas) (naming in part, "OPMS Wholesale," JOpen, LLC, and Martian Sales, Inc.);
- Estate of Daniel Scott by and through Kathryn Ann Paul as Personal Representative v. OPMS et al., Case No. 21CV33403 (Circuit Court of the State of Oregon for Multnomah County) (naming in part, OPMS and JOpen, LLC);
- Dana Pope individually as surviving parent of Ethan Pope, and as the Administrator of the Estate of Ethan Pope, deceased, and John Pope as surviving parent of Ethan Pope v. OPMS a/k/a Optimized Plant Mediated Solution *et al*., Civil Action No.: 22—A-1536 (State Court of Cobb County, GA) (naming, in part, LP IND., LLC and Olistica Life Science Group as defendants); and
- Susan Weber v. OPMS a/k/a Optimized Plant Mediated Solution et al, Civil Action No.: 23EV000485 (State Court of Fulton County, GA) (naming in part, LP IND., LLC and Olistica Life Science Group as defendants).

Details of these facts and reports are contained in footnotes within the Complaint which thereby incorporates those facts and allegations into the Complaint.

It should also be noted by the Court at the outset that all of the named Defendants in this case except Johnson Foods are represented by a single law firm.  This is not necessarily improper, and no suggestion is made that it is, but it is only proper if there are no conflicts of interest.

A lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if: (1) the representation of one client will be directly adverse to another client; or (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.  A lawyer may nonetheless represent multiple clients if each affected client gives informed consent, confirmed in writing.[3]

It is therefore not unreasonable to assume either that all of the named Defendants have no adverse interests or conflicts among or between them or that each of them has consented and waived the conflict.  In either case, the representation supports the existence of a single business enterprise.

The remaining Defendant, Johnson Foods, LLC, while represented by other counsel, has "fully" joined the other Defendants and adopted by reference their Motion to Dismiss which, again, is indicative of concerted action.[4]  Again, no impropriety is suggested on the part of counsel; only that the mutual coordination of defenses is evidence of a single business enterprise.

## B.  Incorporation by Reference and Judicial Notice

The incorporation by reference doctrine permits a court deciding a motion to dismiss for failure to state a claim to consider documents incorporated by reference, but not physically attached to the complaint if they are central to plaintiff's claim and no party questions their authenticity.  *Grant v. Aurora Loan Services, Inc*., No. CV 09-08174 MM (C.D. CA 9/10/2010),

---

[3] Rule 1.7, Louisiana Rules of Professional Conduct.
[4] R. 45-1, at pg. 1 of 4 of Memorandum by Johnson Foods, LLC.

736 F. Supp. 2d 1257; U.S. ex rel. Modglin v DJO Global Inc., No. CV 12-07152 MMM (C.D. CA 9/2/2014).

This Court may take judicial notice of matters of public record including records and reports of administrative bodies. *United States v. 14.02 Acres of Land More or Less in Fresno County,* 547 F.3d 943, 955 (9th Cir.2008) (quoting *Interstate Natural Gas Co. v. Southern California Gas Co.,* 209 F.2d 380, 385 (9th Cir.1954)).

A court may consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment. *United States v. Ritchie,* 342 F.3d 903, 907–08 (9th Cir.2003). See also, *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322, 127 S. Ct. 2499, 168 L.Ed.2d 179 (2007).

Plaintiff should not be penalized for not turning a thirteen-page Second Amended Complaint into a thirty or forty page one by utilizing incorporation by reference to public documents and other sources to which there can be no credible objection to their authenticity. To the extent necessary, Plaintiff requests this Court to take judicial notice of the FDA and other public documents referenced in her Second Amended Complaint.

### C. Plaintiff's Complaint Plausibly States a Cause of Action

Defendants' memoranda are silent regarding the factual matter incorporated by reference into Plaintiff's Complaint which provide copious and voluminous detail regarding both the basis for a defective product claim and personal jurisdiction. They ignore it and no doubt hope this Court does too. These references must be considered and taken as if pled into the Complaint.

It is of no moment at this stage of the litigation – at the outset – whether the references might constitute hearsay or lack the foundation that would be necessary at trial. That is not why

they were incorporated into the Complaint nor their purpose. Instead, they provide the facts, background and explanations necessary to support a plausible claim and jurisdiction.

Just to take a few examples, the Court's attention is invited to footnote 4 in ¶ 38 at page 9 of Plaintiff's SAC. The FDA document referenced discusses in detail the danger of kratom in the process of ordering its seizure and provides extensive factual, not "conclusory" sources supporting the cause of action stated in each of the corresponding paragraphs:

> Furthermore, based on FDA's review of the publicly available information regarding kratom, there does not appear to be a history of use or other evidence of safety establishing that kratom will reasonably be expected to be safe as a dietary ingredient. In fact, the scientific literature disclosed serious concerns regarding the toxicity of kratom in multiple organ systems. Consumption of kratom can lead to a number of health impacts, including respiratory depression, nervousness, agitation, aggression, sleeplessness, hallucinations, delusions, tremors, loss of libido, constipation, skin hyperpigmentation, nausea, vomiting, and severe withdrawal signs and symptoms. In the absence of a history of use or other evidence of safety establishing that kratom will reasonably be expected to be safe as a dietary ingredient, kratom and kratom-containing dietary supplements and bulk dietary ingredients are adulterated under section 402(f)(1)(B) of the Act [21 U.S.C. 342(f)(1)(B)], because they contain a new dietary ingredient for which there is inadequate information to provide reasonable assurance that such ingredient does not present a significant or unreasonable risk of illness or injury.

This is but one government issued document incorporated by reference in Plaintiff's SAC. The claim by these Defendants that the Plaintiff's SAC does not state facts sufficient to support her allegations facially and plausibly is pure sophistry.

Again, Footnote 6 in ¶ 38 at page 10:

> The U.S. Food and Drug Administration issued warning letters to two marketers and distributors of kratom products – Cali Botanicals of Folsom, California, and Kratom NC of Wilmington, North Carolina – for illegally selling unapproved, misbranded kratom-containing drug products with unproven claims about their ability to treat or cure opioid addiction and withdrawal symptoms. The companies also make claims about treating pain, as well as other medical conditions like depression, anxiety and cancer.

> The FDA continues to warn consumers not to use *Mitragyna Speciosa*, commonly known as kratom, a plant that grows naturally in Thailand, Malaysia,

Indonesia and Papua New Guinea. Kratom is not legally marketed in the United States as a drug or dietary supplement, and while it is important to gather more evidence, data suggest that certain substances in kratom have opioid properties that expose users to the risks of addiction, abuse and dependence. There are no FDA-approved uses for kratom, and the agency has received concerning reports about the safety of kratom.

Again, incorporating Footnote 7, in ¶ 43 at page 10 with respect to the single business enterprise allegations:

Amid the threat of regulatory oversight, kratom brands like O.P.M.S. depend on a labyrinth of corporations and limited liability companies that enable key supply chain sites to operate under the radar …Two dozen entities and trade names connected to the O.P.M.S. brand have been created since 2012, according to corporate filings. The web of companies has the effect of blurring who is in charge and where products are made …

The Times could find no evidence that O.P.M.S., or the phrase behind its acronym, "Optimized Plant Mediated Solutions," is a registered company anywhere in the United States …It's a brand and brand only …

The very construction of it is like a set of nesting dolls: company after company after company.

The brand relies on at least 16 companies and eight trade names, the Times found. One company registered in Wyoming holds trademarks. Another receives incoming kratom in Georgia. Another in Colorado makes extracts. Another Wyoming company furthers kratom-related research. For years, at least four entities were overseen by parent company Olistica Life Sciences Group, according to internal company organization charts and a 2020 employee handbook. The company also has a CBD business.

These are but a sampling of the factual underpinnings of the allegations made in this lawsuit.

While the Defendants may complain that these sources of facts and information do not *ipse dixit* establish their liability, or ultimately may not be admissible evidence at trial, or that a newspaper exposé is hearsay, such complaints are immaterial at this point in the litigation.

The purpose of a motion to dismiss under Rule 12(b)(6) is to assess the legal feasibility of the complaint, not to weigh the evidence which the plaintiff offers or intends to offer; motion should not be granted on ground that possibility of ultimate recovery is remote. *Schieffelin*, *supra*. Plaintiff has more than done this in her pleadings.

**D. Plaintiff's Complaint Plausibly Establishes Personal Jurisdiction on the Single Business Enterprise.**

When considered *as a whole*, as a single business enterprise, it becomes crystal clear that the OPMS Defendants' Motion to Dismiss on grounds of lack of personal jurisdiction should be denied. This is the key point.

Considered individually, the allegations taken as true still establish a *prima facie* showing of jurisdiction. Defendants would hope the Court will disregard the single business enterprise doctrine, but it is real. It exists in Louisiana. It has been pled. Defendants' Motion and Memorandum simply ignore it, but their silence does not extinguish the doctrine from Louisiana law which this court is *Erie*-bound to apply. The single business enterprise doctrine requires the Court – at least for the time being – to consider the Defendants as a collective but single entity for these purposes.

The allegations of the Amended Complaint specify how the OPMS Defendants have orchestrated an illicit kratom enterprise based on a product that is smuggled into the United States. Under federal and state law, the Defendants' aggressive national campaign to promote and profit from the sale of OPMS kratom products in Louisiana is sufficient contact with Louisiana for purposes of due process, and maintaining that jurisdiction in this state is foreseeable, and consistent with traditional notions of fair play and substantial justice.

Under the Louisiana long arm statute, personal jurisdiction exists in Louisiana over a nonresident, who acts directly or by an agent, as to a cause of action arising from any one of the following activities performed by the nonresident:

(1) Transacting any business in this state.
(2) Contracting to supply services or things in this state.
(3) Causing injury or damage by an offense or quasi offense committed through an act or omission in this state.
(4) Causing injury or damage in this state by an offense or quasi offense committed through an act or omission outside of this state if her regularly does or solicits business, or engages in any other persistent course of conduct, or derives revenue from goods used or consumers or services rendered in this state…
(8) Manufacturing of a product or component thereof which cause damages or injury in this state, if at the time of placing the product into the stream of commerce, the manufacturer could have foreseen, realized, expected, or anticipated that the product may eventually be found in this state by reason of its nature and the manufacturer's marketing practices….

La. Rev. Stat. Ann. § 13:3201.

The long-arm statute also permits the exercise of personal jurisdiction over a nonresident on "any basis consistent with the constitution of this state and of the Constitution of the United States." *Id.* Ultimately "because Louisiana's long-arm statute confers jurisdiction up to the limits of the Constitution," the court's analysis turns to the due process inquiry. *See, Meunier v. Home Depot U.S.A., Inc*., No. CV 19-12141, 2020 WL 6708379, at *1–2 (E.D. La. Nov. 16, 2020).

The Fifth Circuit engages in a stream of commerce analysis. Under that approach, "the minimum contacts requirement is satisfied if a court finds that the defendant delivered the product into the stream of commerce with the expectation that it would be purchased by or used by consumers in the forum state." *Id., citing, Ainsworth v. Moffett Eng'g, Ltd.*, 716 F.3d 174, 177 (5th Cir. 2013) (internal quotations omitted). "[M]ere foreseeability or awareness is a constitutionally sufficient basis for personal jurisdiction if the defendant's product made its way into the forum state while still in the stream of commerce." *Id.* (internal citations omitted). However, "[t]he defendant's contacts must be more than random, fortuitous, or attenuated, or of the unilateral

activity of another party or third person." *Id.* (citation omitted); *see Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985).

Accordingly, "foreseeability" remains the key factor in determining whether a state may properly exercise personal jurisdiction over a foreign defendant when applying the stream-of-commerce approach. A plaintiff may establish foreseeability by showing either that (1) the quantity of the defendant's sales and marketing in the forum state is high enough that the defendant can reasonably anticipate a court's exercise of personal jurisdiction in that state, or (2) the defendant has actual knowledge or an expectation that its injury-causing product is being sold in the forum state. *Meunier v. Home Depot U.S.A., Inc.*, No. CV 19-12141, 2020 WL 6708379, at *2 (E.D. La. Nov. 16, 2020), *citing, World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297-98 (1980) ("[T]he forum state does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products with the expectation that they will be purchased by consumers in the forum state."); *In re DePuy Orthopaedics, Inc., Pinnacle Hip Implant Liability Litig.*, 888 F.3d 753, 779 (5th Cir. 2018) ("[P]laintiffs need only show that [the defendant] delivered the product that injured them into the stream of commerce with the expectation that it would be purchased by or used by consumers in the forum state.").

The stream of commerce analysis is satisfied in this matter.  The massive national sales and distribution network described by the FDA and other referenced documents and sources, if true, as the Court must assume at this point, demonstrate a nation-wide sales and distribution of this product to support "minimum contacts" and personal jurisdiction of the single business enterprise.

### E.  OPMS Defendants Purposefully Availed Themselves of Louisiana

First, the OPMS Defendants' purposeful minimum contacts, individually and as a single business enterprise, with the Louisiana forum are clearly stated.  In analyzing sufficient minimum

contacts in a specific case, courts first consider whether the defendant has purposefully availed itself of the privilege of conducting activities within the forum state. *Ford Motor Co. v. Montana Eighth Judicial District Court*, 141 S. Ct. 1017, 209 L.Ed.2d 225 (2021). The contacts must be the defendant's own choice and not "random, isolated, or fortuitous," and they must show that the defendant deliberately "reached out beyond" its home, for example, by "exploiting a market" in the forum state. I*d.* Courts then consider whether the plaintiff's claims arise out of or relate to the defendant's contacts with the forum state. *Id.* See also, Burger King Corp. v. Rudzewicz, 471 U. S. 462, 473 (1985) ("Purposeful availment" exists in the circumstance where a nonresident "purposefully directs [its] activities toward forum residents.")

Again, the Plaintiff's allegations and referenced sources detail how the OPMS Defendants purposefully exploit Louisiana's market through a stream of commerce targeted directly at Louisiana kratom consumers. These are not minor, isolated, or random contacts. These are intentional and knowing actions taken to exploit the Louisiana market for kratom. These purposeful contacts are sufficient for this court to exercise jurisdiction over Defendants. See SAC ¶ 12-13, 17, 20, 40-42, 45, 49, & 51.

Defendants are all part of a kratom enterprise intended to import kratom into the U.S., process, package, market, and ultimately sell kratom to consumers across the U.S., and within Louisiana particularly. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297-298 (III), 100 S.Ct. 559 (1980) (establishing "stream of commerce" analysis of personal jurisdiction); *see also, Helicopteros Nacionales de Colombia, SA v. Hall*, 466 U.S. 408, 423, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984) (A nonresident corporation should expect amenability to suit in any forum that is significantly affected by the corporation's commercial activities.); *see also, Downing v. Losvar*, 21 Wash. App. 2d 635, 664, 507 P.3d 894, 910, *review denied sub nom. Downing v. Textron*

*Aviation, Inc*, 200 Wash. 2d 1004, 516 P.3d 384 (2022) ("Generally, when the defendant circulates products throughout the nation and a product causes damage in a targeted state, that state gains jurisdiction").

When a corporation delivers products into the stream of commerce with the expectation that consumers will purchase the goods in the forum state, that state gains personal jurisdiction over the corporation. *World-Wide Volkswagen*, 444 U.S. at 297-98. Designing a product for the market in the forum state, advertising in the forum state, establishing channels for providing regular advice to customers in the forum state, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum state entails purposeful availment. *Asahi Metal Industry Co. v. Superior Court*, 480 U.S. 102, 112, 107 S. Ct. 1026, 94 L. Ed. 2d 92 (1987) (plurality opinion).

The notion that the Defendants have no contacts with Louisiana is belied by the Plaintiff's allegations. Specifically, the Plaintiff's complaint describes the OPMS Defendants' acts of distribution, marketing, and sale of kratom products into Louisiana, leading to the death of Harmony Moller, who purchased and used said products within Louisiana. *See* SAC ¶ 12-13, 17, 20, 40-42, 45, 49, & 51. In other words, as the Plaintiff alleges, Defendants purposefully transacted business within Louisiana and committed the tortious acts alleged in the complaint within Louisiana. Thus, Defendants have purposefully availed themselves of Louisiana. There is jurisdiction over Defendants under Louisiana's long-arm statute.

### F. Harmony Moller's Death Arises From and Relates To Defendants' Contacts with Louisiana

Second, Plaintiff's injuries are directly related to the OPMS Defendants' actions. The Defendants' promotion and profit from the distribution and sale of kratom to Louisiana consumers was not a random or unrelated contact. Plaintiff's autopsy report plausibly supports the allegation

that Plaintiff's wrongful death product liability claims were related to the Defendants' conduct in creating a secretive web of shell companies that import an illicit product into the United States, and then pursue the distribution and sale of that product to Louisiana consumers. *See e.g.*, SAC ¶ 12, 43, & Fn. 7.

Plaintiff has alleged various activities and occurrences within Louisiana, related to the claim and occurrence at issue, the death of Harmony Moller. *See* SAC ¶ 12-13, 17, 20, 40-42, 45, 49, & 51. The factual allegations are likewise sufficient to show a relationship among the defendants, forum, and litigation substantial enough to make the current litigation foreseeable to Defendants. *Id*. Plaintiff alleges that Defendants targeted kratom products towards Louisiana retailers and consumers, including Harmony Moller. Plaintiff further alleges that such products caused decedent's wrongful death. *See Id*; Ford Motor Co., 141 S Ct. at 1029 (defendant's contacts were sufficiently related to the litigation, where its activities created a strong possibility of causing a forum resident to purchase and be injured by the product at issue).

### G. Jurisdiction Comports With Fair Play and Substantial Justice For Defendants Responsible For the Stream of Kratom Commerce Flowing Into Louisiana

Third, the court's jurisdiction over the OPMS Defendants comports with traditional notions of fair play and substantial justice. In determining this fundamental fairness issue, a court examines (1) the defendant's burden; (2) the forum state's interest; (3) the plaintiff's interest in convenient and effective relief; (4) the judicial system's interest in efficient resolution of controversies; and (5) the state's shared interest in furthering fundamental social policies. *Asahi, supra,* 480 U.S. at 112, 107 S.Ct. 1026; *World–Wide Volkswagen, supra,* 444 U.S. at 292, 100 S.Ct.

Plaintiff has made a *prima facie* showing of personal jurisdiction, thus, the burden of proof with respect to the reasonableness factor shifts to the OPMS Defendants to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable."

*Crescent Towing & Salvage Co. v. M/V JALMA TOPIC*, 652 F. Supp. 3d 700, 706 (E.D. La. 2023).
Plaintiff has presented allegations of sufficient minimum contacts and that Plaintiff's claims arise
from such contacts. Such allegations must be taken as true. The OPMS Defendants cannot present
a compelling case that jurisdiction is unreasonable or violates due process.

As Defendants who purposefully profit from the sale of kratom brands within Louisiana,
the OPMS Defendants have directly injected themselves into the stream of commerce in a
substance that has led to the death of a Louisiana resident.  The Defendants' conduct in exploiting
the kratom commerce with the forum State is such that they "should reasonably anticipate being
hailed into court" here. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474, 105 S. Ct. 2174, 2183
(1985).  In terms of fair play and substantial justice, it would be an absurd injustice to allow the
Defendants to escape jurisdiction in Louisiana while simultaneously reaping the profits from their
illicit web of companies promoting their kratom brands to Louisiana consumers. "Louisiana has a
significant interest in adjudicating a dispute that involves a sale of an allegedly defective product
to a Louisiana consumer where that product causes a personal injury in this state." *Ruckstuhl v.
Owens Corning Fiberglas Corp.*, 731 So. 2d 881, 890– (La. 1999).

The revenue generated by the Defendants' role in this multi-billion-dollar industry is
beyond question. Until their scheme of profiting from improperly imported kratom through a
secretive web of shell companies is held to account, Louisiana residents will continue to suffer the
adverse effects (including addiction and death) from the over-the-counter sale of a substance that
should not even be on the shelves of Louisiana gas stations and vape shops.  The inconvenience
for these Defendants to defend themselves in the forum they actively profit from does not outweigh
the interest in ensuring that injured Louisiana citizens receive the protection of state product
liability laws.

Given Defendants' minimum contacts with Louisiana, this Court exercising jurisdiction over Defendants does not offend traditional notions of fair play and substantial justice. *Int'l Shoe Co. v. State of Wash.*, 326 US 310, 316 (1945). The OPMS Defendants have enjoyed the benefits of Louisiana's market for kratom and must now face the consequences of doing so.

**H. Plaintiff Has Properly Stated Claims For Product Liability.**

When a defendant argues a failure to state a claim, the court is to take the factual allegations in the plaintiff's complaint as true and must construe all pleadings in favor of the plaintiff.  *See generally, Ashcroft v. Iqbal*, 556 U.S. 662, 696, 129 S. Ct. 1937, 1959, 173 L. Ed. 2d 868 (2009).

In this case Plaintiff asserts proper causes of action against all Defendants.  Specifically, the complaint alleges causes of action under the LPLA based upon the Defendants' role as manufacturers, distributors, and sellers involved in the marketing, distribution, and sale of the deadly and unlawfully imported OPMS kratom products that ultimately caused Harmony Moller's wrongful death. *See* SAC ¶ 12-13, 17, 20, 40-42, 45, 49, & 51.

Defendants seek dismissal of both Plaintiff's failure to warn and defective design claims. Each one is addressed in turn below. However, Defendants first claim that "there is no allegation regarding when or where Harmony Moller consumed any product manufactured by any Defendant." Motion, Doc. 32-1, at p. 11. Defendants appear to ignore Plaintiff's allegations, including but not limited to, "On February 6, 2023, Harmony Moller, a 36-year-old female, died as the result of the ingestion of OPMS brand kratom which she purchased in Mandeville, Louisiana." *Id.* at ¶ 17.  Or the allegations concerning the presence of kratom in the autopsy results after her death.  Id at ¶ 20.  In short, Plaintiff has alleged that Harmony Moller consumed the OPMS kratom manufactured, distributed, and sold by Defendants, and even states where and when such products were purchased and used.

1.    **The Plaintiff States a Defective Design Claim**

Defendants claim that Plaintiff must specifically allege an alternative design was feasible given the state of the art. Motion, Doc. 32-1, at p. 12.

It is undisputed that *Mitragyna Speciosa*, commonly known as kratom, is a plant that grows naturally in Thailand, Malaysia, Indonesia and Papua New Guinea.  Whole leaf Kratom in its natural state is not what Harmony Moller consumed. The OPMS product has been ground and processed, which process must be subject to discovery in this action.

Further, as alleged in Plaintiff's Complaint, kratom and kratom-containing dietary supplements and bulk dietary ingredients are *adulterated* as a matter of law under section 402(f)(1)(B) of the Act [21 U.S.C. 342(f)(1)(B)], because they contain a new dietary ingredient for which there is inadequate information to provide reasonable assurance that such ingredient does not present a significant or unreasonable risk of illness or injury.  The FDA has declared that kratom sold for human consumption presents a risk of extreme harm and death.[5]  Potential alternative designs may include selling a kratom product that complies with applicable federal regulations regarding safety or designing a product without using processed kratom that also complies with applicable safety regulations. That defendants have failed to develop a viable alternative design is not a failure that should prejudice Plaintiff.

Whether or not it is feasible to safely design a kratom product, Plaintiff stands on its allegation that these Defendants' over the counter kratom products were never safely designed, and do not comply with regulatory and industry standards. See e.g. FAC at ¶¶ 34-37, 104 & 192 (referencing regulations related to premarket notifications of safety and adulteration of kratom products under applicable FDA regulations).

---

[5] See ¶ 38 and footnote 4 at page 9 of Plaintiff's SAC

Rather than face these allegations, the OPMS Defendants make the strange argument that kratom sellers should be immune from design defect claims because kratom products are so deadly that "it is simply impossible to design a safer product."  See Motion, Doc. 32-1, at 2, and SAC at ¶ 22 & 34 (over-the-counter kratom products cannot be rendered reasonably safe for human consumption).  This theory is absurd.  A kratom defendant does not escape responsibility by admitting its products are so deadly they cannot be rendered safe for over-the-counter use.

In another bizarre argument, the OPMS Defendants assert that the Plaintiff has alleged that "the undisputed consensus…is that kratom is legal and benefits consumers," and "that any material risk to human health remains unknown." Motion, Doc. 32-1 at p. 14-15.  This self-serving distortion completely ignores the plain text of Plaintiff's Complaint, which unequivocally alleges the opposite:  that kratom is an "adulterated" product that is smuggled into the United States; known to be "63 times more deadly than other natural products"; and "known to cause a wide range of adverse events, including addiction, severe withdrawal, heart arrhythmias, respiratory depression, seizures, drug-drug interactions, overdose, and death." SAC at ¶ 32-33 & 38-39.  While the OPMS Defendants may wish to avoid the scrutiny of a court case, they cannot achieve this result with a motion to dismiss that ignores or misstates the underlying complaint.

### 2.    The Plaintiff States a Failure to Warn Claim

Under the LPLA's failure to warn claim, a kratom defendant will be liable for deaths caused by products that are not reasonably safe because adequate warnings or instructions were not provided. La. R.S. 9:2800.51 *et. Seq.* Those are the elements, and they are stated in the complaint. See SAC ¶¶ 48-49.

These defendants failed to warn Harmony Moller and other Louisiana kratom consumers about the "risks of sudden death by heart failure and/or great vessel failure, congenital heart or

blood vessel conditions its failure to warn of the opioid like effects of kratom and the pathological consequences of use of an atypical opiate like kratom, the failure to specify a maximum single dose warning, the failure to warn that undefined overdose could cause injury or sudden death…." SAC  48.  They failed to warn Harmony Moller that kratom is unlawfully imported, wrongfully distributed marketed and sold for human consumption without the required premarket verification of safety, causes dependence, addiction, and withdrawal in regular users, is 63 times more deadly than other natural products, and can cause death.  SAC ¶ 22-26, 31-35, & 48.

Despite these plain allegations, OPMS Defendants seek dismissal based on misleading interpretations of Plaintiff's complaint.  As with the design defect claim, Defendants argue that the Plaintiff concedes that the risks of kratom are unknowable. Motion, Doc 32-1 at p. 2 & 13. Again, the Plaintiff alleges the opposite, with numerous research-supported known risks of kratom, including death. SAC at ¶¶ 22-26, 31-35, 40-42, 45, 48, 49, & 51; see also FN 2-5. While Defendants may offer expert testimony to dispute Plaintiff's allegations at trial, these allegations are to be taken as true for purposes of this motion.

## V.    CONCLUSION

Plaintiff respectfully asks that the motion to dismiss be denied.  To the extent the motion is not completely denied, leave for discovery and/or amendment should be granted.

Dated: June 14, 2024.

Respectfully submitted,

**WAGAR HICKMAN, LLP**

By:  _s/ Nelson W. Wagar, III_

**NELSON W. WAGAR, III (No. 13136)**
**SARAH WAGAR HICKMAN (No. 35823)**
1401 West Causeway Approach
Mandeville, Louisiana 70471
Telephone (985) 888-8740

shickman@wagarhickman.com
cwagar@wagarhickman.com

-and-

Michael J. Cowgill (FL Bar # 1010945)
*Admitted pro hac vice*
Tamara J. Williams (FL Bar #127625)
*Admitted pro hac vice*
**mctlaw**
1605 Main Street, Suite 710
Sarasota, Florida 34236
mcowgill@mctlaw.com
twilliams@mctlaw.com

***Attorneys for Plaintiff, Kathleen Moller***