UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **KATHLEEN MOLLER,** | * | |
| **Plaintiff,** | * | |
| | * | |
| **v.** | * | **CIVIL ACTION NO. 2:24-cv-228-WBV-DPC** |
| | * | |
| **MARTIAN SALES, INC.; JOPEN,** | * | **THE HONORABLE WENDY B. VITTER** |
| **LLC; JOHNSON FOODS, LLC; LP** | * | |
| **IND., LLC; CAG HOLDINGS, LLC;** | * | **MAGISTRATE DONNA PHILLIPS** |
| **RMH HOLDINGS, INC.; ABC** | * | **CURRAULT** |
| **INSURANCE COMPANY and John** | * | |
| **Does 1-4,** | * | |
| **Defendants.** | * | |

**DEFENDANTS' MEMORANDUM OPPOSING
PLAINTIFF'S MOTION TO COMPEL DISCOVERY FROM
MARTIAN SALES, INC., JOPEN, LLC, LP IND., LLC,
CAG HOLDINGS, LLC AND RMH HOLDINGS, INC.**

**MAY IT PLEASE THE COURT:**

Defendants Martian Sales, Inc., JOpen, LLC, LP Ind., LLC, CAG Holdings, LLC, and RMH Holdings, LLC (collectively, "Defendants") respond to Plaintiff's motion to compel and ask this Court to deny Plaintiff's motion.

**I.      INTRODUCTION**

Plaintiff brings this wrongful death suit and alleges that Harmony Moller died as a result of O.P.M.S brand kratom.  In discovery, Plaintiff has identified two products at issue:  O.P.M.S. Silver Green Vein Maeng Da Kratom capsules and O.P.M.S. Silver Green Vein Maeng Da Kratom powder ("O.P.M.S. Silver").

The relevant facts are straightforward: Defendant Martian Sales owns the O.P.M.S. brand. Defendant JOpen is a national distributor of many products, including O.P.M.S. kratom products. Martian Sales has produced its Contract Processing Agreement with Advanced Nutrition, LLC, the manufacturer of the product at issue, and JOpen has produced its Distribution Agreements with

Martian Sales. These contracts govern the straightforward duties and responsibilities of the brand owner, the manufacturer, and the distributor of the only products at issue—O.P.M.S. Silver. Defendant LP processed bulk kratom but never processed O.P.M.S. Silver. Defendants CAG Holdings and RMH Holdings are industrial hemp companies and have nothing to do with kratom whatsoever, let alone O.P.M.S. kratom products.

Under the guise of an "alter ego" and "single business enterprise" theory, Plaintiff seeks to compel the production of Defendants' most sensitive financial documents, including their federal income tax returns. Plaintiff's motion is unnecessary and inappropriate, and the Court should deny it because Defendants have produced all relevant documents in this case, and far beyond. Defendants have produced documents related to their corporate structure, ownership, governance, and relationship to one-another.

Where the sole basis for requesting tax returns is an alleged alter ego theory of liability against some defendants, federal law prohibits production of tax returns except as a last resort. Plaintiff must demonstrate that there is a compelling need for the tax returns to prove her alter ego claim even notwithstanding the other financial and corporate documents that Defendants have produced.

Martian Sales has produced its Contract Processing Agreement with Advanced Nutrition, LLC, the manufacturer, and JOpen has produced its Distribution Agreements with Martian Sales, marketing documents (business-to-business magazine advertisements), and labeling documents. Plaintiff has also deposed all of Defendants' corporate representatives about all these issues— except JOpen, whose corporate representative is being deposed by Plaintiff's counsel on March 13 and 14, 2025.

Yet Plaintiff now demands that Defendants produce **all** balance sheets, income statements, and U.S. Federal Income Tax Returns for all these companies from formation to present.  This extraordinary and excessive demand for irrelevant, sensitive and private financial information is barred under Rule 26 because it is irrelevant and disproportional to the needs of this case.

To get around Rule 26, Plaintiff mischaracterizes this Court's recent Order against a separate defendant in this case, Johnson Foods.  There, this Court ordered Defendant Johnson Foods to respond to Plaintiff's requests for production because Defendant Johnson Foods failed to timely object and produce any documents in the lawsuit.  To the contrary, here, Defendants timely served responses and objections and produced extensive and complete documents responsive to all of Plaintiff's requests.

Defendants' extensive document production and testimony are more than sufficient to respond to all questions that Plaintiff legitimately has about her alter ego theory.  Here, however, Plaintiff's counsel endeavors to use discovery not for this pending action but to give themselves unfettered access to Defendants' finances.  Per their website, Plaintiff's counsel is actively soliciting cases and information about O.P.M.S. kratom and presumably wants Defendants' financial records to determine how much money they have—which is entirely irrelevant to the claims and defenses in this lawsuit.  *See* mctlaw at https://www.mctlaw.com/product-liability/kratom-lawsuits/.  This is not the purpose of discovery, and Plaintiff does not need Defendants' sensitive financial information.  This Court thus should deny Plaintiff's motion to compel, as it is not merely baseless and harassing, but irrelevant under Rule 26.

## II.    BACKGROUND

### A.    Plaintiff's Allegations and Defendants' Motion to Dismiss.

Plaintiff alleges that Harmony Moller consumed O.P.M.S. kratom and died.  SAC ¶ 17.
Plaintiff claims that "OPMS kratom is imported, packaged, distributed, and sold through a
complex web of companies that includes Defendants and that this constitutes an "OPMS
enterprise." *Id.* ¶ 41.  Plaintiff claims that this O.P.M.S. enterprise uses "various alter egos and
agents" to "support[] the import, distribution, and sale" of "the OPMS product at issue." *Id.* ¶ 44.
Plaintiff does not allege how Defendants are "alter egos" or "agents" of one another. *See generally
id.*

Plaintiff's sole allegation supporting personal jurisdiction is this vague and conclusory
enterprise theory.  Plaintiff alleges that "OPMS Kratom is manufactured, packaged, distributed,
and sold by the OPMS defendants via the stream of commerce throughout the United States." *Id.*
¶ 45.  Plaintiff does not allege that any of defendants individually distribute or sell O.P.M.S. kratom
or any other products in Louisiana. *See id.*  Plaintiff otherwise admits that Defendants are all
registered out-of-state. *See id.* ¶¶ 2–3, 6–11.

All Defendants except JOpen have pending a motion to dismiss challenging this Court's
jurisdiction and arguing that Plaintiff failed to state any claim against Defendants. Dkt. 29.  The
Court permitted jurisdictional discovery prior to deciding the motion—which has been extensive.
On September 12, 2024, Defendants responded to Plaintiff's first set of written discovery
requests—which in total number approximately 100 discrete requests.  On October 2, 2024,
Plaintiff deposed the corporate representative of CAG Holdings.  On October 28 and 29, 2024,
Plaintiff deposed the corporate representative of Martian Sales.  On December 4, 2024, Plaintiff
further deposed the corporate representatives of CAG Holdings and for RMH Holdings.  On

December 17, 2024, Plaintiff served second sets of requests for production and interrogatories, to which Defendants responded on January 16, 2025. On January 22, 2025, Plaintiff deposed the corporate representative of LP.

In January, Plaintiff moved for an extension of time to conduct additional jurisdictional discovery, which this Court denied following oral argument.

### B.    Roles of the Defendants.

Discovery has shown that each of the Defendants here has the following role:

***Martian Sales***.  Martian Sales owns the brand O.P.M.S.  Payton Decl. Ex. A (Martian Sales's R&Os to Pl.'s 1st Rogs).  Martian Sales is solely owned by Mark Reilly and has no other employees, affiliates, subsidiaries, or parent companies.  *Id.*, Ex. B (Martian Sales's Responses to Pl.'s 2nd Rogs).  Plaintiff deposed Mark Reilly on October 28 and 29, 2024, in this lawsuit.  At the relevant time period in this case, Martian Sales had a Contract Processing Agreement with Advanced Nutrition (not a defendant in this case), to process bulk kratom that ultimately ends up in O.P.M.S. kratom products.  *Id.* ¶ 3.  None of the other Defendants or entities in this case has common ownership or any corporate relationship with Martian Sales.  *Id.*, Ex. A.

***JOpen***.  JOpen is a distributer that focuses on distributing a wide array of goods to the convenience store market, including Maverick Playing Cards to Rainbow Meta Cube Fanny Packs to BIG Pens to Cala Nail Clippers.  *Id.* ¶ 4.  Most of JOpen's customers are other distributors.  *Id.* Among the many products that JOpen distributes is kratom, including O.P.M.S. kratom.  *Id.*, Ex. C (JOpen's R&Os to Pl.'s 1st Rogs).  Martian Sales uses JOpen as a distributor of O.P.M.S. kratom, and the parties have produced their Distribution Agreements.  *Id.* ¶ 3.  JOpen's sole owner is JDA1, LLC.  *Id.*, Ex. D (JOpen's R&Os to Pl.'s 3rd Rogs).  JOpen uses the d/b/a A1 Wholesale, Party Nuts and Choice Organics.  *Id.*  None of the other Defendants or entities in this case has

common ownership or any corporate relationship with JOpen. *Id.*, Ex. C. One of JOpen's duties under the Distribution Agreement is to pay Martian Sales's invoices out of the proceeds of the sales of O.P.M.S. This includes invoices to Martain Sales's vendors and manufacturers such as Advanced Nutrition. Plaintiff's counsel is deposing JOpen's corporate representative, David Gabbay, on March 13 and 14, 2025.

**LP Ind.** LP performed manufacturing services related to bulk kratom. *Id.*, Ex. E (LP's R&Os to Pl.'s 2nd Rogs). LP performed manufacturing services for some (but not all) kratom that ultimately ended up in O.P.M.S. products. *Id.* LP did not perform manufacturing services for O.P.M.S. Silver—the sole products identified by Plaintiff in discovery. LP does not market, distribute, or sell kratom products. *Id.* LP is an affiliate of defendants CAG and RMH, and shares a common sole member, FMK Group, Inc., with CAG. *Id.* FMK Group, LLC's is owned by Belfast II, LLC. *Id.* Plaintiff deposed Mark Jennings, LP's corporate representative, on January 22, 2025, in this lawsuit.

**CAG Holdings**. CAG operates a manufacturing facility that processes industrial hemp. *Id.*, Ex. F (CAG's R&Os to Pl.'s 1st Rogs). CAG is not involved in kratom. *Id.* CAG is an affiliate of defendants LP and RMH, and shares a common sole member, FMK Group, Inc., with CAG. *Id.*, Ex. G (CAG's R&Os to Pl.'s 2nd Rogs). Plaintiff deposed CAG's corporate representative Mark Jennings on October 2, 2024, and December 4, 2024.

**RMH Holdings**. RMH operates a manufacturing facility that processes industrial hemp. *Id.*, Ex. H (RMH's R&Os to Pl.'s 1st Rogs). RMH is not involved in kratom. *Id.* RMH is an affiliate of CAG and LP, and they operate separately. *Id.* RMH is solely owned by Western Wall Management, and Western Wall Management is owned by Peyton Palaio. *Id.*, Ex. I (RMH's R&Os

to Pl.'s 2nd Rogs).  RMH uses the d/b/a Cannopy Corporation.  *Id.*  Plaintiff deposed RMH's corporate representative on December 4, 2024.

> **C.**   **The Parties' Discovery.**

Plaintiff served the latest round of requests for production on Defendants on December 17, 2024.  *Id.*, Ex. J (Pl.'s 3rd RFPs on JOpen); *id.*, Ex. K (Pl.'s 2nd RFPs on Martian Sales); *id.*, Ex. L (Pl.'s 2nd RFPs on CAG Holdings); *id.*, Ex. M (Pl.'s 2nd RFPs on RMH Holdings); *id.*, Ex. N (Pl.'s 2nd RFPs on LP Ind.).  Each of these included the same seven requests asking for documents related to Defendants' corporate structure and sensitive financial information.  *Id.*

Defendants served their responses and objections on January 16, 2025.  *Id.*, Ex. O (JOpen's R&Os to Pl.'s 3rd RFPs); *id.*, Ex. P (Martian Sales's R&Os to Pl.'s 2nd RFPs); *id.*, Ex. Q (CAG Holdings's R&Os to Pl.'s 2nd RFPs); *id.*, Ex. R (RMH Holdings's R&Os to Pl.'s 2nd RFPs); *id.*, Ex. S (LP Ind.'s R&Os to Pl.'s 2nd RFPs).  Defendants produced documents related to their organizational structures, ownership, and affiliates, subsidiaries, and parent companies.  *Id.*  Defendants, however, objected to providing their balance sheets, income statements, and federal income tax returns.  *Id.*

On January 9, 2025, Plaintiff filed a motion for extension of time to conduct jurisdictional discovery.  Dkt. 63.  On January 17, 2025, the Court held a telephone status conference about Plaintiff's motion.  Dkt. 67.  At that conference, the Court "had an extensive conversation with counsel, during which the Court asked Plaintiff's counsel what additional discovery Plaintiff was seeking."  *Id.*  Plaintiff's counsel stated that Plaintiff was "seeking the financial records of non-parties, Mark Jennings, Mark R[e]illy, P[e]yton Palaio, Eyal Gabbay, and CCUS Holdings."  *Id.*  The Court denied Plaintiff's motion for these sensitive financial records and denied the motion to extend the time to conduct jurisdictional discovery.  *Id.*

Defendants' counsel met and conferred with Plaintiff's counsel about Plaintiff's requests for Defendants' balance sheets, income statements, and federal tax returns, from formation to present, on February 19, 2025. *Id.* ¶ 2. Defendants' counsel explained that these documents were irrelevant to Plaintiff's claims and disproportionate to the needs of this case. *See* Dkt. 67.

Plaintiff's counsel filed the motion to compel on February 24, 2025. Dkt. 82.

## III.    LEGAL STANDARD

Federal Rule of Civil Procedure 26(b)(1) allows a party to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Courts must consider whether the discovery is "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Discovery may be limited if "the discovery sought is unreasonably cumulative or duplicative." *Id.* 26(b)(2)(C).

More, discovery has "ultimate and necessary boundaries." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). And "control over discovery is committed to the sound discretion of the trial court." *Freeman v. United States*, 556 F.3d 326, 341 (5th Cir. 2009).

Further, in deciding Plaintiff's motion, the Court must keep several considerations in mind. First, pre-judgment, federal courts presumptively do not allow discovery into a defendant's financial assets. *F.T.C. v. Turner*, 609 F.2d 743, 745 (5th Cir. 1980) (citation omitted) (noting that a private plaintiff may not discover an opponent's assets until after a judgment against the opponent has been rendered); *Seabulk Towing, Inc. v. Oceanografia S.A. de C.V.*, Misc. No. 01-3791, 2002 WL 1837855, at *1 (E.D. La. Aug. 8, 2002) (rejecting pre-judgment asset discovery) (citing Fed. Rule Civ. P. 26(b)(2) *Advisory Committee's Note*, 1970 amendments; and 8 Wright, Miller And Marcus, Federal Practice And Procedure § 2010 (2d ed. 1994)). "Numerous courts have recognized that tax information is relevant where a party has placed the subject of his

income/earning capacity at issue in litigation. Courts have largely declined to compel the disclosure of such financial information, however, where Plaintiff does not seek economic damages." *Tate v. DG Louisiana LLC*, 653 F. Supp. 3d 316, 321 (E.D. La. 2023).

Specifically, with respect to the specific highly sensitive financial documents that are the subject of Plaintiff's motion, the Fifth Circuit (and all other federal courts) has developed special rules. "Income tax returns are highly sensitive documents; courts are reluctant to order their routine disclosure as a part of discovery." *Nat. Gas Pipeline Co. of Am. v. Energy Gathering, Inc*., 2 F.3d 1397, 1411 (5th Cir. 1993). "Not only are the taxpayer's privacy concerns at stake, but unanticipated disclosure also threatens the effective administration of our federal tax laws given the self-reporting, self-assessing character of the income tax system." *Id.*

For these reasons, "disclosure of tax returns for purposes of discovery ordinarily demands that the requesting party demonstrate relevancy and compelling need." *Id.* For a court to order disclosure of tax returns, the court must find both "that the returns are relevant to the subject matter of the action," and "that there is a compelling need for the returns because the information contained therein is not otherwise readily obtainable." *Mohnot v. Bhansali,* No. 99-cv-2332, 2001 WL 515242, at *1 (E.D. La. 2001); *see also Tate v. DG Louisiana LLC*, 653 F. Supp. 3d 316, 321 (E.D. La. 2023) ("To determine whether tax records should be produced, the moving party must demonstrate both: (1) that the requested tax information is 'relevant' to the subject matter of the action; and (2) that there is a 'compelling need' for the information because the information contained in the tax records is not 'otherwise readily obtainable' through alternative forms of discovery.").

Plaintiff cannot show either that the information she seeks is relevant nor that there is any compelling need. Plaintiff claims personal jurisdiction over defendants other than JOpen under a

single enterprise theory. This is not the same thing as an alter ego claim. "The single business enterprise theory of liability is distinguishable from the alter ego theory in several ways. The most important distinction is who may be held liable under each theory. As opposed to alter ego doctrine, which 'pierces the corporate veil' to reach the members of an LLC, the single business enterprise doctrine is a theory for imposing liability on two or more business entities when they act as one." *Inc. v. JTS Realty Corp.*, 2021-0157 (La. App. 1 Cir. 10/20/22), 370 So. 3d 16, 29–30.

Only in "narrowly defined circumstances" have courts applied the single business enterprise theory. *Id.* (citing *Fausse Riviere*, L.L.C. v. Snyder, 2016-0633 (La. App. 1st Cir. 2/15/17), 211 So.3d 1188, 1192). This is because a corporation is a "juridical person separate and apart from its members." *Id.*

Specifically, "[t]he court may pierce the corporate veil under two exceptional circumstances. The first is where the shareholders, acting through the corporation, commit fraud or deceit on a third party such that justice demands the corporate veil be pierced to allow the third party to recover from the shareholders personally. . . . In the second instance . . . the shareholders disregard the corporate formalities to such an extent that the shareholders and the corporation become indistinguishable, i.e., the corporation was operated as the 'alter ego' of the shareholder." *Id.*

Here, Plaintiff has not alleged either that Defendants have committed fraud on her *with respect to Defendants' corporate form* nor that Defendants have disregarded corporate formalities. This is a personal injury action. Plaintiff has not alleged that she was even aware of Defendants' corporate organization, nor could she. The documents Plaintiff seeks are relevant neither to her substantive personal injury claim nor her single enterprise theory claim.

## IV.    ARGUMENT

Plaintiff asks this Court to compel Defendants to produce Defendants' most sensitive financial information: Defendants' balance and income statements and Defendants' federal income tax returns from formation through present.  Plaintiff claims that she needs this information to support her alter ego allegations.  Memo at 2–3.  But Plaintiff has not demonstrated that these documents add anything to the complete information already produced related to alter ego, or that these requested documents are discoverable under Federal of Civil Procedure 26.  This Court should deny Plaintiff's motion to compel.

### A.    Plaintiff's requested documents are unreasonably cumulative and duplicative of documents that Defendants have already produced and Defendants' testimony.

Plaintiff claims that Defendants' sensitive financial information is discoverable here because it relates to Plaintiff's alter ego claims.  Memo at 2–3.  This Court should reject this argument.

Federal Rule of Civil Procedure 26(b)(2)(C) prohibits discovery that is unreasonably cumulative or duplicative.  Here, Defendants have already produced documents that are sufficient for Plaintiff to identify whether Plaintiff's alter ego allegations have any factual basis (and they do not).  These include documents related to Defendants' organizational structure, Defendants' ownership, and Defendants' related companies and the Distribution Agreements between Martian Sales and JOpen and the Contract Processing Agreement between Martian Sales and the manufacturer, Advanced Nutrition.  Defendants have answered multiple different interrogatory requests about the nature of their business, their affiliates, and their ownership.

These documents and written discovery are sufficient to show Defendants' relationship with one another, which is what matters for purposes of an alter ego analysis.  *See, e.g., Gibraltar*

*Sav. v. LDBrinkman Corp.*, 860 F.2d 1275, 1288 (5th Cir. 1988) (explaining that with alter ego "the focus is on the relationship between and among the corporation, its owners, and the laws of the state"). Defendants have told Plaintiff everything that Plaintiff wants to know about their relationship to one another.

Plaintiff's counsel has also deposed corporate representatives of Defendants CAG Holdings, Martian Sales, RMH Holdings, and LP Ind. extensively about their corporate structure, ownership, related entities, and finances. Plaintiff's counsel is scheduled to depose JOpen's corporate representative on March 13 and 14, 2025. Plaintiff's notices of 30(b)(6) deposition to Defendants included a broad range of topics that related to the issue of alter ego, including "receipt if any, of income or payments arising from the development, marketing, licensing, and/or sale of OPMS kratom," and their "ownership, control, and accounting." Payton Decl., Ex. T (Pl.'s Am. 30(b)(6) Notice to Martian Sales); *id.*, Ex. U (Pl.'s 4th Am. 30(b)(6) Notice to LP Ind.); *id.*, Ex. V (Pl.'s 3rd Am. 30(b)(6) Notice CAG Holdings); *id.*, Ex. W (Pl.'s 3rd Am. 30(b)(6) Notice RMH Holdings).

Plaintiff has not demonstrated why the documents Defendants have already produced, the interrogatories that Defendants have responded to, and the extensive witness testimony already given are not sufficient for their alter ego allegations. This Court should reject Plaintiff's continued fishing expedition of Defendants' most sensitive and private financial information as unreasonably cumulative and duplicative of what Defendants have already provided.

**B.    Plaintiff has not demonstrated a need for Defendants' sensitive financial information proportional to the needs of this case.**

Plaintiff asks this Court to require Defendants to produce their most sensitive financial information—Defendants' federal income tax returns and Defendants' balance sheets and income statements. Courts impose a high burden on parties for this type of very sensitive and private

information, and Plaintiff has not shown a need for this information—particularly a need proportional to this case. This Court thus should reject Plaintiff's inappropriate discovery requests.

"Generally, courts will not permit pre-judgment discovery of a party's financial condition unless that condition is relevant to a claim or defense at issue." *Saint Paul Commodities LLC v. Crystal Creek Cattle Co.*, No. 3:11-CV-0037-G, 2012 WL 3135574, at *4 (N.D. Tex. 2012). Here, pre-judgment discovery of Defendants' financial condition is not relevant to Plaintiff's claims. Plaintiff generally brings claims under the Louisiana Products Liability Act, *see* SAC, and Defendants' financial condition is not relevant to those claims. *See, e.g.*, *Bladen v. C.B. Fleet Holding Co.*, 487 F. Supp. 2d 759, 770 (W.D. La. Apr. 25, 2007) (explaining that "[t]he LPLA . . . does not authorize punitive damages.").

Plaintiff has also not demonstrated any need for pre-judgment discovery of Defendants' financial information to support her alter ego theory—based on Plaintiff's alter ego allegations or the considerable discovery Defendants have already provided. Plaintiff asks this Court to find that Defendants are "alter egos," because they purportedly act as a "single business enterprise." Despite extensive document discovery, witness testimony, and interrogatory responses, Plaintiff has not identified any evidence that supports her theory that Defendants are alter egos. All Plaintiff identifies is that LP, CAG and RMH (but not Martian Sales or JOpen) used the same third-party entity for accounting services, Memo at 3–4, but use of a third-party accounting service does not provide any basis for Plaintiff's alter ego theory whatsoever—according to Plaintiff's theory, all publicly traded companies that utilize the service of the same Big Four accounting firm would be alter egos.

This Court has denied a motion to compel where a plaintiff has asked the type of discovery Plaintiff seeks here. *See Fidelis Grp. Holdings, LLC v. Chalmers Auto., LLC*, No. 16-3258, 2016

WL 6157601 (E.D. La. Oct. 24, 2016). In *Fidelis Group*, the plaintiff sought financial information that the plaintiff argued was relevant to its alter ego theory. *Id.* at *4. The Court rejected the plaintiff's request, explaining that the plaintiff's bare allegations of alter ego "without more," such as specific evidence already developed in the case that substantiated the existence of an alter ego relationship, was not enough to justify further discovery. *See id.* The Court found that such discovery would be "disproportional to the needs of [the] case, especially because the burden would outweigh the likely benefit." *Id.*

Plaintiff has not justified a need for pre-judgment discovery regarding financial status where Plaintiff has not alleged that Plaintiff lacks an adequate remedy at law. The "alter-ego doctrine" and the "single business doctrine" are both equitable remedies, not causes of action. *W. Oil & Gas JV, Inc. v. Castlerock Oil Co., Inc.*, 91 F. App'x 901, 904 (5th Cir. 2003) (explaining that these remedies are "when the corporate form is 'used as part of an unfair device to achieve an inequitable result'"); *see also In re Gulf States Long Term Acute Care of Covington, LLC*, 487 B.R. 713, 722 (E.D. La. Bankr. Feb. 26, 2013). Thus, like all equitable remedies, a plaintiff must show she lacks an adequate remedy at law before a finding of alter ego. *See, e.g.*, *Sheets v. Yamaha Motors Corp., U.S.A.*, 849 F.2d 179, 184 (5th Cir. 1988). And ordinarily, a plaintiff is not entitled to pre-judgment discovery into whether a defendant can satisfy a judgment. *See Moore v. Wayne Smith Trucking Inc.*, 2015 WL 6438913, at *4 (E.D. La. Oct. 22, 2015) ("[D]istrict courts across the country generally do not allow pre-judgment discovery regarding a defendant's financial condition or ability to satisfy a judgment.").

Plaintiff thus has not demonstrated a need for discovery into Defendants' sensitive financial information. This Court should reject Plaintiff's request for this information.

### C.    This Court's February 19, 2025 Order has no bearing on Plaintiff's motion to compel Defendants' sensitive financial documents.

Plaintiff argues that this Court should grant Plaintiff's motion to compel because of this Court's Order on February 19, 2025. Plaintiff claims that "[t]his Court has already recognized the relevance and discoverability of this type of information" in this February 19 Order. Memo at 2. This mischaracterizes this Court's February 19 Order.

This Court's February 19 Order did not comment on the relevance or discoverability of the sensitive financial records that Plaintiff is asking this Court to compel. *See* Dkt. 78. All that this Court decided in the February 19 Order was that Defendant Johnson Foods (a separate defendant not subject to the current motion) should be compelled to respond to Plaintiff's discovery requests. The Court ordered this because Defendant Johnson Foods did not respond at all to Plaintiff's requests and thus waived any objections to them. *See id.* Here, Defendants timely responded and objected to Plaintiff's inappropriate discovery requests. Thus, the February 19 Order has no bearing on how this Court should rule on Plaintiff's motion to compel at issue here.

## V.    CONCLUSION

Defendants respectfully request that this Court deny Plaintiff's motion to compel.

Dated this 3rd day of March, 2025.

Respectfully Submitted

By:    */s/ Gwendolyn C. Payton*

**Gwendolyn C. Payton** (admitted *pro hac vice*)
**KILPATRICK TOWNSEND & STOCKTON LLP**
1420 Fifth Ave., Suite 3700
Seattle, Washington 98101
Telephone: (206) 497-9600
Facsimile: (206) 299-0414
gpayton@ktslaw.com

**Hayley R. Ambler**
Louisiana State Bar No. 25848
**KILPATRICK TOWNSEND & STOCKTON LLP**
1100 Peachtree Street NE, Suite 2800

Atlanta, Georgia 30309
Telephone: (404) 815-6080
Facsimile: (404) 541-3268
hambler@ktslaw.com


**Maeghan E. Whitehead** (admitted *pro hac vice*)
**KILPATRICK TOWNSEND & STOCKTON LLP**
2001 Ross Avenue, Suite 4400
Dallas, Texas 75201
Telephone: (214) 922-7138
Facsimile: (214) 279-4456
mewhitehead@ktslaw.com

***COUNSEL FOR DEFENDANTS LP IND., LLC;
CAG HOLDINGS, LLC; RMH HOLDINGS, INC.;
MARTIAN SALES, INC.; and JOPEN, LLC***


## CERTIFICATE OF SERVICE

This is to certify that on the 3rd day of March, 2025, a copy of the foregoing document was filed with the Clerk of Court and served on all counsel of record via the Court's ECF System.


*/s/ Gwendolyn C. Payton*
Gwendolyn C. Payton