# EXHIBIT A

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **KATHLEEN MOLLER** | * | **CIVIL ACTION NO. 24-0228-WBV-DPC** |
| | * | |
| **VERSUS** | * | **JUDGE WENDY B. VITTER** |
| | * | |
| **MARTIAN SALES, INC; JOPEN, LLC,** | * | **MAGISTRATE DONNA PHILLIPS** |
| **a Texas limited liability company;** | * | **CURRAULT** |
| **JOHNSON FOODS, LLC, a Wyoming** | * | |
| **limited liability company; LP IND., LLC,** | * | |
| **a Wyoming limited liability company;** | * | |
| **CAG HOLDINGS, LLC, a Wyoming** | * | |
| **limited liability company; RMH** | * | |
| **HOLDINGS, INC., a Wyoming** | * | |
| **corporation; ABC INSURANCE** | * | |
| **COMPANY and John Does 1-4.** | * | |
| | * | |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

### DEFENDANT MARTIAN SALES, INC.'S RESPONSES AND OBJECTIONS
### TO PLAINTIFF'S FIRST SET OF INTERROGATORIES

TO:    Plaintiff, Kathleen Moller, by and through her attorneys of record, Nelson W. Wagar, III, Sarah Wagar Hickman, Wagar Hickman, LLP, 1401 West Causeway Approach, Mandeville, Louisiana and Michael Cowgill, Tamara J. Williams, mctlaw, 1605 Main Street, Suite 710, Sarasota, Florida 34236

Defendant Martian Sales, Inc., pursuant to the Federal Rules of Civil Procedure, responds

to Plaintiff's Kathleen Moller's First Set of Interrogatories, as follows:

### GENERAL OBJECTIONS

1.    Defendant objects to the Interrogatories to the extent that they are vague,

ambiguous, overbroad, unduly burdensome, oppressive, not relevant to the subject matter of this

action, and not reasonably calculated to lead to the discovery of admissible evidence.

2.    Defendant objects to the Interrogatories to the extent that they contradict, are

inconsistent with, or impose on Defendant any obligations in excess of the requirements of the

Federal Rules of Civil Procedure.

---

3.      Defendant objects to the Interrogatories to the extent they seek information and materials protected by the attorney-client privilege, attorney-work product doctrine, and any other applicable legal privilege.

4.      Defendant objects to the Interrogatories to the extent that they seek information or documents that constitute or contain trade secrets, proprietary information, and/or other confidential information.  Defendant will produce such information only pursuant to a mutually agreeable protective order in this matter, and if such information is not subject to any other objections.

5.      Defendant objects to the Interrogatories to the extent that they seek information or documents that are not in its possession, custody, or control and are equally or more easily accessible by Plaintiff.

6.      Defendant objects to the Interrogatories to the extent they seek information or documents outside the scope of the time, place, subject matter, and circumstances of the occurrences mentioned or complained of in the Second Amended Complaint, dated February 6, 2024 (the "Complaint").  Paragraphs 14 and 17 of the Complaint allege that injuries were suffered on February 6, 2023, allegedly after consumption of an unspecified kratom product.  Accordingly, actions or activities by Defendant after February 6, 2023—as well as issues, documents, or communications in connection with activities other than the production and/or distribution of Defendant's kratom products—do not give rise to Plaintiff's cause of action.

7.      Subject to the foregoing objections and all applicable Specific Objections, and unless otherwise specified, Defendant responds to these Interrogatories according to the following time period:  January 1, 2020 through February 6, 2023.

8.     Defendant objects to these Interrogatories to the extent they are not tailored sufficiently to the issue of whether personal jurisdiction over Defendant in the State of Louisiana exists in this action.

9.     Defendant does not concede that any of the responses are or will be admissible evidence at trial.  Further, Defendant does not waive any objection, whether or not asserted herein, to use any such answer at trial.

10.     These Responses and Objections have been prepared pursuant to a reasonably and duly diligent investigation and search for the necessary information.

## <u>SPECIFIC OBJECTIONS TO DEFINITIONS</u>

1.     Defendant objects to the definition of "documents" to the extent that it seeks information not relevant to the subject matter of this litigation or is otherwise protected by the attorney-client privilege or work product doctrine.

2.     Defendant objects to the definition of "identify" to the extent that contradicts, is inconsistent with, or imposes on Defendant any obligations in excess of the requirements of the Federal Rules of Civil Procedure.

3.     Defendant objects to the definition of "specific" and "specifically" to the extent that contradicts, is inconsistent with, or imposes on Defendant any obligations in excess of the requirements of the Federal Rules of Civil Procedure.

4.     Defendant objects to the definition of "affiliate" to the extent that contradicts, is inconsistent with, or imposes on Defendant any obligations in excess of the requirements of the Federal Rules of Civil Procedure.

## SPECIFIC RESPONSES TO
## FIRST SET OF INTERROGATORIES

**INTERROGATORY NO. 1:**

Please describe the extent of Martian Sales, LLC's (hereinafter "Martian") distribution of Kratom into the State of Louisiana since January 1, 2018.  In your description specify those who received a distribution of Martian's product, with the quantities of each specific Martian's product provided to each distributor and retailer within Louisiana.

**RESPONSE:**

Defendant objects to this Interrogatory on the grounds that it is overbroad, unduly burdensome, and seeks information that is neither relevant to the subject matter of this action nor to the determination of any motion made (or that could be made).  It is unreasonable for Defendant to respond with information related to any kratom product when this action is and should be properly circumscribed to the product at issue in this case.

Subject to the foregoing objections, Defendant states that it has never distributed any kratom product into the State of Louisiana.  Defendant does not retain any control over the product or distribution channel used by the distributor, which is not located in Louisiana.

**INTERROGATORY NO. 2:**

Please identify all upstream suppliers (including manufacturers) of Kratom supplied to Martian since January 1, 2018. In your answer, please include the name, address, and phone number for all suppliers and manufacturers by year, and the form or type of product provided.

**RESPONSE:**

Defendant objects to this Interrogatory on the grounds that it is overbroad, unduly burdensome, and seeks information that is neither relevant to the subject matter of this action nor to the determination of any motion made (or that could be made), or in connection with the issue of whether personal jurisdiction over Defendant exists in this action.  Specifically, information about "all upstream suppliers (including manufacturers)" that does not relate to the State of Louisiana is not a proper Interrogatory for purposes of jurisdictional discovery.  It is unreasonable

for Defendant to respond with information related to any kratom product when this action is and should be properly circumscribed to the product at issue in this case. Defendant also objects to the time period sought in this Interrogatory as overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

Subject to the foregoing objections, Defendant states that it contracts with manufacturers located outside of Louisiana to produce kratom products and then contracts with a distributor, also located outside of Louisiana, to purchase and distribute the products to retailers, wholesalers, and other distributors. At or around the incident date alleged in the Complaint, Martian Sales has contracted with the following manufacturers (none of which are located or incorporated in Louisiana):

LP Ind., LLC
        c/o Gwendolyn Payton
        Kilpatrick Townsend & Stockton LLP
        1420 Fifth Avenue
        Suite 3700
        Seattle, Washington 98101

Calibre Manufacturing
        c/o Gwendolyn Payton
        Kilpatrick Townsend & Stockton LLP
        1420 Fifth Avenue
        Suite 3700
        Seattle, Washington 98101

Nuza LLC
        c/o Gwendolyn Payton
        Kilpatrick Townsend & Stockton LLP
        1420 Fifth Avenue
        Suite 3700
        Seattle, Washington 98101

**INTERROGATORY NO. 3:**

Please describe the agricultural source(s) for the Kratom plant material that is used in the production of Martian's kratom products. In your description, please specify the location of farms, fields, forests or acreages where the Kratom is being sourced from, including the specific owners and address(es) or coordinates within each source country.

**RESPONSE**:

Defendant objects to this Interrogatory on the grounds that it is overbroad, unduly burdensome, and seeks information that is neither relevant to the subject matter of this action nor to the determination of any motion made (or that could be made), or in connection with the issue of whether personal jurisdiction over Defendant exists in this action. Specifically, the "agricultural source(s) for [LP's] Kratom plant material" is not relevant to the issue in this case—namely, Defendant's alleged liability, or lack thereof, for the events alleged in Paragraph 14 and 17 of the Complaint. Similarly, Plaintiff's demand to "specify the location of farms, fields, forests or acreages where the Kratom is being sourced from, including the specific owners and address(es) or coordinates within each source country" is overbroad and not tailored to the product, facts, or time period at issue in this case.

**INTERROGATORY NO. 4:**

Please describe the nature and extent of any other representations to retailers and consumers within Louisiana about the safety and efficacy (or lack thereof) of Martian's Kratom products. Your description should include but not be limited to verbal and written representations; marketing materials; contracts, forms, templates and commercial documentation; website and blog publications; correspondence, invoicing and e-mail communications with retailers (including Defendant retailers); and scripts or guidance for salespersons, telemarketers, and/or retailers of Martian's kratom products. In describing each representation or collection of representations, please include the location and content of each representation, the dates or timeframes of the representation(s), and the persons making the representations (including agents and affiliates) and the persons receiving the representations (including but not limited to the Defendant retailers, consumers making on-line or telephone inquiries, or individuals raising complaints or concerns).

**RESPONSE:**

Defendant objects to this Interrogatory on the grounds that it is overbroad, unduly burdensome, and seeks information that is neither relevant to the subject matter of this action nor to the determination of any motion made (or that could be made), or in connection with the issue of whether personal jurisdiction over Defendant exists in this action. Specifically, it is not

reasonable for Defendant to identify "any . . . representations to retailers and consumers within Louisiana about the safety and efficacy" of Defendant's kratom products without reasonable time and scope limitations.  Defendant further objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege or work product doctrine.

Subject to the foregoing objections, Defendant states that from approximately mid-2020 through February 2023, Defendant maintained www.opmskratom.com and the OPMS Kratom products included a warning that provided:

*Warning:*

Only for use as a botanical specimen. Mitragyna speciosa is an unapproved dietary ingredient. The manufacturers/re-sellers of this product, therefore, cannot advise on its use. Ingesting Mitragyna speciosa can be dangerous. Consult your physician about potential interactions, other possible complications, and precautionary measures before considering this product. By opening this package, you accept full responsibility for the use of the product, including, but not limited to any adverse events or health complications. Inform your physician of the alkaloid content, labeled on the package. This product has been sterilized; all potential contaminants are removed for safety purposes. Manufacturers / Re-sellers assume no responsibility for the use or misuse of this product.

Keep out of reach of children. DO NOT USE IF YOU ARE PREGNANT, PLAN TO BECOME PREGNANT, OR WHILE BREASTFEEDING. NOT FOR SALE TO MINORS! 18+ ONLY. (21+ IN TENNESSEE).

Manufacturers / Re-sellers assume no responsibility for the use or misuse of this product.

## INTERROGATORY NO. 5:

Please describe the extent to which you have received information that adverse events may have been suffered by persons within Louisiana using Martian's kratom products (such as reports, claims, complaints, or allegations that a product user has suffered or may have suffered addiction, withdrawal, overdose, disabilities, death, disruption to enjoyment of life, or other negative symptoms or side effects from a Martian kratom product). Potential sources of such information would include, but not be limited to, customers and consumers; retailers (including the co-Defendants); comments or complaints submitted via website, social media, e- mail, or otherwise; communications from consumer family members; communications from regulatory or law enforcement officials; communications from medical professionals; etc.

## RESPONSE:

Subject to the foregoing objections, Defendant states that it is not aware of any "adverse events" related to Defendant's kratom products outside of the allegations contained in the Complaint in this lawsuit, and the Amended Petition for Damages and Jury Demand dated July 3,

2024 filed in the matter of *Bradley v. Martian Sales, Inc., et al.*, currently pending in the Fourth Judicial District Court for the Parish of Ouachita, which Defendant specifically denies.

**INTERROGATORY NO. 6:**

Please describe in detail the full extent of your interaction and coordination with any other named Defendant regarding the marketing, distribution, and sale of kratom products. In your description address the timing and nature of any agreements, contracts and/or sales practices involving Martian and any other Defendant from the time Martian was first introduced to the Defendant to the present.

**RESPONSE:**

Defendant objects to this Interrogatory on the grounds that it is overbroad, unduly burdensome, and seeks information that is neither relevant to the subject matter of this action nor to the determination of any motion made (or that could be made), or in connection with the issue of whether personal jurisdiction over Defendant exists in this action. Specifically, the phrase "the full extent of [its] interaction and coordination with any other named Defendant regarding the marketing, distribution, and sale of kratom products" is without reasonable time and scope limitations, and is therefore unduly burdensome and not tailored sufficiently to the issue of personal jurisdiction.

Subject to the foregoing objections, Defendant refers Plaintiff to Defendant's Responses to Request for Production Nos. 7 and 14 and states the following:

(a)    ABC Insurance Co.:  None.

(b)    CAG:  None.

(c)    Johnson Foods, LLC:  None.

(d)    JOpen:  JOpen distributes O.P.M.S. kratom products.  JOpen does not have any common ownership with Martian Sales and is not related to Martian Sales.

    (e)    <u>L.P.</u>:  LP performs manufacturing services related to bulk kratom.  LP does not

have any common ownership with Martian Sales and is not related to Martian

Sales.

    (f)    <u>RMH</u>: None.

## **INTERROGATORY NO. 7:**

Please describe all employees and contractors who have been paid by Martian to assist in
Martian's business operations since January 1, 2018. This would include employees and
contractors involved in the ordering, manufacture, refining, packaging, and distribution of the
Martian product categories, as well as any other Martian administrative and/or business
operations. In your description, please specify include the name and contact information for each
employee and contractor, the dates of employment and/or contracts, and the nature of the
employment and services paid for.

## **RESPONSE**:

Defendant objects to this Interrogatory on the grounds that it is overbroad, unduly

burdensome, and seeks information that is neither relevant to the subject matter of this action nor

to the determination of any motion made (or that could be made), or in connection with the issue

of whether personal jurisdiction over Defendant exists in this action.  Specifically, the phrase "all

employees and contractors who have been paid by Martian assist in Martian's business operations

since January 1, 2018" is entirely overbroad and is not reasonably calculated to lead to the

discovery of admissible evidence.  Further, this Interrogatory is not tailored sufficiently to the issue

of personal jurisdiction.  Indeed, it is unclear how the information sought by this Interrogatory is

relevant to the allegations contained in the Complaint.  Even if the information were relevant,

which it is not, Defendant further objects to the extent that this Interrogatories seeks irrelevant

private or proprietary information.

Subject to all the foregoing objections, Defendant has had no employees or contractors

who have been paid by Defendant to assist in any business operations in Louisiana since January

1, 2018.

**INTERROGATORY NO. 8:**

Please describe how Martian has used distributors to distribute and sell Martian's kratom products throughout Louisiana since January 1, 2018. This description should address the agreements, terms and conditions, procedures and practices (including invoicing), and limitations and requirements that have governed Martian's business relations with each distributor.

**RESPONSE:**

Defendant does not distribute or sell kratom products in the State of Louisiana. Defendant contracts with a distributor located outside of Louisiana to distribute products to retailers, wholesalers, and other distributors. Defendant does not retain any control over the product or distribution channel after it goes to the distributor.

**INTERROGATORY NO. 9:**

Describe the nature of any affiliation you have had with any other Defendant named in the Complaint.

**RESPONSE:**

Defendant objects to the term "affiliation" to the extent that it contradicts, is inconsistent with, or otherwise expends Defendant's discovery obligations under the Federal Rules of Civil Procedure. Subject to all foregoing objections, Defendant states the following:

(a)    ABC Insurance Co.: No affiliation.

(b)    CAG: No affiliation.

(c)    Johnson Foods, LLC: No affiliation.

(d)    JOpen: No affiliation.

(e)    L.P.: No affiliation.

(f)    RMH: No affiliation.

**INTERROGATORY NO. 10:**

Identify and describe all websites and social media channels from which Martian's kratom products are distributed or sold into Louisiana (including but not limited to Botanicalpros.com, konolabs.com, a1wholesaledistribution.com, and partynuts.com). For each identified website

plead describe how kratom products distributed or sold through such websites receive orders and fulfill orders to and from Louisiana.

**RESPONSE**:

Defendant does not distribute or sell kratom products in the State of Louisiana. Defendant contracts with a distributor located outside of Louisiana to purchase and distribute products to retailers, wholesalers, and other distributors. Defendant does not retain any control over the product or distribution channel after sending it to the distributor. Defendant does not operate or control any websites or social media channels directed into Louisiana. Defendant has the website www.opmskratom.com, which can be accessed generally from the web.

**INTERROGATORY NO. 11:**

Confirm, correct, or otherwise describe the national chain of distribution for OPMS products described in the Tampa Bay Times "Deadly Dose" series of articles, which can be found at: https://project.tampabay.com/investigations/deadly-dose/kratom-industry/.

**RESPONSE**:

Defendant objects to this Interrogatory on the grounds that it is overbroad, unduly burdensome, and seeks information that is neither relevant to the subject matter of this action nor to the determination of any motion made (or that could be made), or in connection with the issue of whether personal jurisdiction over Defendant exists in this action. Specifically, the phrase "national chain of distribution" is overbroad to the extent that it seeks information about jurisdictions other than the State of Louisiana. Defendant also objects to this Interrogatory as vague and ambiguous—specifically, it is not clear what is meant by a "national chain of distribution". Further, it is not reasonable to demand that Defendant explain or otherwise correct information in a news article from a different jurisdiction with which Defendant had not involvement whatsoever.

Subject to all the foregoing objections, Defendant does not distribute or sell kratom products in the State of Louisiana. Defendant contracts with a distributor located outside of Louisiana to purchase and distribute products to retailers, wholesalers, and other distributors. Defendant does not retain any control over the product or distribution channel after sending it to the distributor.

**INTERROGATORY NO. 12:**

Please describe the quality, quantity, and nature of all contacts between Martian Sale's Inc. and its affiliates (including Mark Reilly) with and within the state of Louisiana.

**RESPONSE:**

Martian Sales has no contacts with the state of Louisiana and no responsive documents exist in Martian Sales's possession, custody, or control.

**INTERROGATORY NO. 13:**

Please describe the identity of any person(s) who have done business as OPMS or who have manufactured, distributed, or sold OPMS branded kratom in Louisiana.

**RESPONSE:**

Defendant objects to this Interrogatory on the grounds that it is overbroad, unduly burdensome, and seeks information that is neither relevant to the subject matter of this action nor to the determination of any motion made (or that could be made), or in connection with the issue of whether personal jurisdiction over Defendant exists in this action. Specifically, the phrase "any person(s) who have done business as OPMS or who have manufactured, distributed, or sold OPMS branded kratom in Louisiana" is overbroad to the extent that it seeks information about jurisdictions other than the State of Louisiana. Defendant further objects to this Interrogatory to the extent that it seeks information not relevant to the facts and time period at issue in this case.

Subject to the foregoing objects, JOpen, LLC distributes O.P.M.S. branded kratom, some of which is sold in Louisiana.

**INTERROGATORY NO. 14:**

Please describe the timeframes that Martian Sales (or any affiliate of Martian Sales) received income or payments related to the design, development, manufacture, marketing, licensing, and/or sale of OPMS branded kratom sold in Louisiana.

**RESPONSE:**

Martian Sales is not compensated based on sales in Louisiana and no responsive documents exist in Martian Sales' possession, custody, or control.

**INTERROGATORY NO. 15:**

Please describe the facts and details surrounding the negotiation, execution, and implementation of the "Intellectual Property License Agreement" executed on October 1, 2014, between Martian Sales, Inc. (licensor) and Eri Wahyu Hidayat (licensee)[1].

**RESPONSE:**

Defendant objects to this Interrogatory on the grounds that it is overbroad, unduly burdensome, and seeks information that is neither relevant to the subject matter of this action nor to the determination of any motion made (or that could be made), or in connection with the issue of whether personal jurisdiction over Defendant exists in this action.

Subject to all foregoing objections, Defendant states that Eri Wahyu Hidayat sold bulk kratom to Martian Sales starting in 2014 and shipped it to the United States, at which point Martian Sales received the bulk kratom and sold it to local stores in the Georgia area. The parties then entered into the "Intellectual Property License Agreement" executed on October 1, 2015, between Martian Sales, Inc. (licensor) and Eri Wahyu Hidayat (licensee), which speaks for itself. The Agreement was terminated in 2020.

---

[1] A copy of the licensing agreement is attached hereto as Exhibit 1.

**INTERROGATORY NO. 16:**

Please identify the entities and persons involved in the design and development of OPMS kratom products, including the technologies and processes utilized to create such products.

**RESPONSE:**

Defendant objects to this Interrogatory on the grounds that it is overbroad, unduly burdensome, and seeks information that is neither relevant to the subject matter of this action nor to the determination of any motion made (or that could be made), or in connection with the issue of whether personal jurisdiction over Defendant exists in this action. Specifically, information about "the technologies and processes utilized to create such products" and information about "the entities and persons involved in the design and development of OPMS kratom products" that does not relate to the State of Louisiana—or to the facts and time period at issue in this case—is unreasonable and not tailored specifically to jurisdictional discovery. It is also unreasonable for Defendant to respond with information related to any kratom product when this action is and should be properly circumscribed to the product at issue in this case.

Subject to the foregoing objections, Defendant states Mark Reilly was responsible for the design and development of O.P.M.S. kratom products.

**INTERROGATORY NO. 17**

Please identify the entities and persons involved in the manufacture, marketing, distribution, and sale of OPMS kratom products in the five years preceding Harmony Moller's death.

**RESPONSE:**

Defendant objects to this Interrogatory on the grounds that it is overbroad, unduly burdensome, and seeks information that is neither relevant to the subject matter of this action nor to the determination of any motion made (or that could be made), or in connection with the issue of whether personal jurisdiction over Defendant exists in this action. Specifically, information about all "entities and persons involved in the manufacture, marketing, distribution, and sale of

OPMS kratom products" that does not relate to the State of Louisiana—or to the facts and time period at issue in this case—is unreasonable and not tailored specifically to jurisdictional discovery. It is also unreasonable for Defendant to respond with information related to any kratom product when this action is and should be properly circumscribed to the product at issue in this case.

Subject to the foregoing objections, Defendant states it contracts with manufacturers located outside of Louisiana to produce the kratom product and then contracts with a distributor also located outside of Louisiana to purchase and distribute the products to retailers, wholesalers, and other distributors. Specifically, in February 2023, Martian Sales contracted with the following manufacturers:

> LP, Ind., LLC
> c/o Gwendolyn Payton
> Kilpatrick Townsend & Stockton LLP
> 1420 Fifth Avenue
> Suite 3700
> Seattle, Washington 98101

> Calibre Manufacturing
> c/o Gwendolyn Payton
> Kilpatrick Townsend & Stockton LLP
> 1420 Fifth Avenue
> Suite 3700
> Seattle, Washington 98101

> Nuza LLC
> c/o Gwendolyn Payton
> Kilpatrick Townsend & Stockton LLP
> 1420 Fifth Avenue
> Suite 3700
> Seattle, Washington 98101

Martian Sales contracted with the following distributor:

> JOpen LLC
> c/o Gwendolyn Payton
> Kilpatrick Townsend & Stockton LLP
> 1420 Fifth Avenue

Suite 3700
Seattle, Washington 98101

Martian Sales does not retain any control over the product or distribution channel after initially selling it to the distributor.  Further, Martian Sales does not engage in any advertising within the State of Louisiana and does not direct any advertising campaigns to the state.

DATED:  September 12, 2024

Respectfully submitted,


By  */s/ Gwendolyn C. Payton*
**Hayley R. Ambler**
Louisiana Bar No. 25848
**KILPATRICK TOWNSEND & STOCKTON LLP**
1100 Peachtree Street NE, Suite 2800
Atlanta, Georgia 30309
Telephone:  (404) 815-6080
Facsimile:  (404) 541-3268
hambler@ktslaw.com

**Gwendolyn C. Payton** (admitted *pro hac vice*)
**KILPATRICK TOWNSEND & STOCKTON LLP**
1420 Fifth Avenue, Suite 3700
Seattle, Washington 98101
Telephone:  (206) 497-9600
Facsimile:  (206) 299-0414
gpayton@ktslaw.com

**Maeghan E. Whitehead** (admitted *pro hac vice*)
**KILPATRICK TOWNSEND & STOCKTON LLP**
2001 Ross Avenue, Suite 4400
Dallas, Texas 75201
Telephone:  (214) 922-7138
Facsimile:  (214) 279-4456
mewhitehead@ktslaw.com

*Counsel for Defendants LP IND., LLC; CAG HOLDINGS, LLC; RMH HOLDINGS, INC.; MARTIAN SALES, INC.; and JOPEN, LLC.*

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on the 12th day of September 2024, a copy of the foregoing document was served on all counsel of record by electronic mail.


*/s/ Gwendolyn C. Payton*
Gwendolyn C. Payton

# EXHIBIT 1

# INTELLECTUAL PROPERTY LICENSE AGREEMENT

**THIS AGREEMENT** is made as of October 1, 2014 (hereinafter the "Effective Date") by and between Martian Sales Inc., a Wyoming corporation ("Licensor") and LICENSEE NAME ERI WAHYU HIDAYAT , of COUNTRY and STATE WEST JAVA INDONESIA ("Licensee") (together, the "Parties").

## RECITALS

**WHEREAS**, Licensor owns and claims the rights to the intellectual property for trade names, marks associated with the trade names, images that may be related to the trade names, associated or related trade names, brands or brand identities belonging to the O.P.M.S., O.P.M.S. Kratom,. O.P.M.S. Gold, O.P.M.S. Silver and any other O.P.M.S. product (the "Intellectual Property").

**WHEREAS**, Licensee desires to license the right to use the Intellectual Property connection with its business operated in Indonesia.

**NOW, THEREFORE**, the Parties hereby agree as follows:

1.  <u>License</u>. Licensor grants to Licensee a limited, exclusive license, with no right to sublicense or transfer, for use solely in connection with the marketing and sale of goods manufactured, processed, packaged, distributed or sold by Licensee. Licensee may have goods manufactured and packaged by third parties.

2.  <u>Royalty Fee</u>. Licensee to pay to Licensor, upon the sooner of the Termination of this Agreement or once every ten (10) years, a Royalty Fee of USD $1,000,000.00. If the Agreement is terminated sooner than 10 years, the Royalty Fee due will be prorated on a monthly basis.

3.  <u>Termination</u>. This license will continue for ten (10) years, so long as Licensee is not in default of this Agreement.
    a.  The License granted to Licensee hereunder may be terminated by either Party at any time, for any reason, upon thirty (30) days' notice.
    b.  Each party may terminate this Agreement immediately upon notice to the other party if the other party commits a breach of any term of this Agreement which is not capable of remedy, or, in the case of a breach capable of being remedied, has failed within fifteen (15) days after receipt of notice from the other party, to remedy such breach to the reasonable satisfaction of the other party; provided, however, that Licensor shall have the right to terminate this Agreement immediately upon notice to Licensee if License, as determined by Licensor in its sole discretion, willfully commits a breach of this Agreement.
    c.  Licensor shall have no obligation to compensate or indemnify Licensee, except as otherwise expressly provided herein, in the event Licensor terminates this Agreement.
    d.  Upon termination of this Agreement for any reason, the License granted to Licensee hereunder shall immediately terminate and Licensee shall have no further right to use

the Intellectual Property for any purpose, including but not limited to, using the Intellectual Property in connection with the marketing, packaging, or sale of goods.

e.    Within fifteen (15) days after such termination, Licensee will return or, at Licensor's election, destroy all copies of all packaging and other printed materials bearing the Intellectual Property.

f.    Sections 3, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17 of this Agreement shall survive the Termination of this Agreement.

4.    **Quality Control.**  Licensee agrees that goods or services associated with the Intellectual Property is all be of the highest quality, the Licensee will conduct itself in a manner so as to preserve the goodwill associated with the Intellectual Property and will not do anything that would damage or depreciate such goodwill and will cooperate with Licensor in taking such actions as are reasonably necessary or desirable to ensure quality compliance, as may be reasonably specified by Licensor from time to time.

5.    **Assignment.**  This Intellectual Property License may not be assigned, sublicensed or otherwise transferred without prior consent from Licensor which may be granted, conditioned or denied at Licensor's sole discretion.

6.    **Retention of Ownership.**  Licensee acknowledges that Licensor is the owner of the Intellectual Property and that Licensor retains all ownership rights, subject to the limited license granted pursuant to this Intellectual Property License Agreement, and that Licensor makes no representations or warranties, express or implied, except as expressly set forth in this Agreement. All usage of the name shall inure to the benefit of Licensor. Licensor has the right, but not the obligation, to apply to register the Intellectual Property, in all forms and variations, as a Intellectual Property or service mark, as the case may be, with any or all state, federal or foreign Intellectual Property authorities as Licensor shall, in its sole discretion, determine. Licensee shall cooperate with Licensor to sign all documents, provide adequate specimens and information, and to take all steps reasonably necessary to allow Licensor to register the Intellectual Property as so determined.  Licensee may request that Licensor or Licensor may decide to amend, modify or otherwise add to the Intellectual Property's forms, uses, or variations. If such Intellectual Property Modifications occur, Licensor may include those in this Agreement for no additional Royalty Fee. The terms and conditions of this Agreement remain in effect for any Intellectual Property Modifications included for Licensee's use.

7.    **Responsibility for Licensed Products/Services.**  Licensee shall be solely responsible for and assume all costs and liabilities related to: (a) the quality of the licensed products and services bearing the Intellectual Property, (b) any defect in or of licensed products (whether such defect be in materials, workmanship or design) or failure of the licensed services, (c) product liability of the licensed products, (d) conformance of licensed products/services will strictly adhere to all applicable laws, rules, regulations and standards of any country in which the licensed products are sold, including any government or regulatory authority (i.e., FDA), health, consumer product, and agricultural regulations, etc. and (e) the promotion, sale, documentation and marketing of licensed products/services. Licensee shall be solely responsible for the payment and discharge of any taxes or duties relating to any transactions of Licensee, its subsidiaries, employees, contractors, agents or sublicensees, in connection with the manufacture, use, distribution, or sale, of licensed products or services.

8.    **Indemnification.**  Licensee shall indemnify and defend Licensor against any and all claims, costs, damages and expenses, including reasonable attorneys' fees and expenses, arising out of any claim by a third party against Licensee or Licensor for infringement based on Licensee's use of the Intellectual Property.  Licensee must provide Licensor prompt notice of any claim giving rise to such indemnity.   If a claim of infringement by a third party occurs,

  DEF_MOLLER_000429

Licensor may demand by notice (the "Termination Notice") at any time that Licensee terminate the use of the Intellectual Property, and Licensee shall terminate the use of the Intellectual Property immediately upon receipt of the Termination Notice. Licensee shall defend, indemnify and hold Licensor and/or any of its affiliates, subsidiaries, agents and assignees, harmless from and against any and all claims, demands, causes of action, liability, loss, damage, judgements or expenses (including without limitation reasonable attorneys' fees, expenses and court costs) (collectively, the "Claims") arising out of or related to (x) Licensee's design, manufacturing, distribution, shipment, labeling, sale, advertisement or promotion of goods or the labeling, packaging, advertising and promotional materials for the goods (other than Claims solely related to the Intellectual Property), including, but not limited to, any Claim for personal injury, wrongful death or any similar matter; (y) Licensee's breach of any of its representations, warranties, covenants or other obligations hereunder; and (z) Licensee's gross negligence or willful misconduct. Licensor shall have the right to defend any such claim or suit through counsel of its own choice at Licensee's expense.

9.    Relationship. Nothing in this Agreement shall be construed as creating a joint venture, partnership, agency or employment relationship between the Parties. Except as specified herein, neither party shall have the right, power or implied authority to create any obligation or duty, express or implied, on behalf of the other party hereto.

10.    Disputes. The rights and liabilities of the Parties arising out of or relating to this Agreement will be governed by the laws of the state of **Wyoming** and any disputes between the Parties will be submitted to binding arbitration in **Wyoming** under the Commercial Arbitration Rules of the American Arbitration Association, and judgment on the award may be entered in any court of competent jurisdiction; provided, however, that either party may seek preliminary injunctive or other equitable relief in court pending arbitration to prevent irreparable harm. The prevailing party in any arbitration or litigation shall be entitled to recover all reasonable expenses thereof, including attorneys' fees in connection with such proceedings or any appeal thereof.

11.    Covenants of Licensee. Licensee covenants and agrees that:

a.    it shall at all times conduct its business related to its manufacturing, labeling, packaging, marketing, use, offer for sale and sale of goods and the Intellectual Property in strict compliance with all health, safety and other laws, ordinances, orders, rules and regulations (state, federal, municipal or promulgated by other agencies or bodies having or claiming jurisdiction), and all applicable industry standards, including product requirements and standards for human consumption if such use is chosen during the Licensees' marketing and sale of any products using the Intellectual Property, and will observe the highest standards of quality and fair dealing with customers;

b.    all goods manufactured, processed, distributed and sold hereunder will be merchantable and fit for the purpose for which they are intended;

c.    all goods will conform in all respects to the samples approved by Licensor and that Licensee will not distribute or sell any goods which are of a quality or standard inferior to or different from the approved quality or are injurious to the reputations and goodwill associated with the Intellectual Property; and,

d.    Licensee shall not use third parties to manufacture or package goods unless such third parties have signed an acknowledgment provided by Licensor.

e.    Licensor shall not be responsible for providing any formulas or direction towards the manufacturing, composition, marketing, sale or end use of the products which the Licensee uses the Intellectual Property on, that is being licensed as a part of this Agreement.

12.    Intellectual Property.

DEF_MOLLER_000430

a.    Licensee agrees not to contest or otherwise challenge or attack Licensor's rights in and to the Intellectual Property or the validity of the Intellectual Property or the license granted herein during the term here of and thereafter. Licensee further agrees not to do anything either by act of omission or commission which might impair, jeopardize, violate, or infringe the Intellectual Property, or to misuse or bring into dispute the Intellectual Property or otherwise diminish Licensor's goodwill with respect to the Intellectual Property, as determined by Licensor in its sole discretion. Licensee shall not use the Intellectual Property as part of its company name, corporate name or trade name except with the prior consent of Licensor, which consent will not be unreasonably withheld. Licensee shall not register or attempt to register the Intellectual Property or similar intellectual property during the term of this Agreement or thereafter, or aid or abet anyone else doing so.

b.    Licensee shall prominently display the appropriate notice(s) in conjunction with any and all use of the Intellectual Property, as indicated in the Intellectual Property Guidelines. Licensee shall not use any other Intellectual Property or design in combination with any Intellectual Property without Licensor's prior approval. Licensee agrees that it will not use the Intellectual Property in a misleading or confusing manner, nor in a manner that misrepresents any relationship between the Parties. Licensee hereby acknowledges Licensor's right, title and interest in and to the Intellectual Property and agrees not to claim any title to the Intellectual Property or any right to use the Intellectual Property except as permitted by this Agreement. Any goodwill associated with the use of the Intellectual Property by Licensee will inure solely to the benefit of the Licensor. Licensor reserves the right to object to unfair use or misuse of its Intellectual Property or other violations of applicable law. Nothing contained herein shall prevent Licensor or any of its licensees or distributors from manufacturing, distributing, or selling any products or services of any kind with the Intellectual Property in any territory in the world.

13.    Limitation of Liability. In no event shall Licensor be liable to Licensee, regardless of the form of action or theory of recovery for any indirect, special, exemplary, consequential, incidental or punitive damages, or for lost profits or business interruption losses arising from or in connection with this Agreement or any alleged or actual breach thereof, even if Licensee has been advised of the possibility of such damages. The Licensee accepts full responsibility both legally and otherwise for any and all use of the Intellectual Property.

14.    Independent Contractors. The relationship of Licensor and Licensee established by this Agreement is that of independent contractors, and neither party shall be considered or deemed to be an agent, employee, joint venturer or partner of the other party as a result of this Agreement. Neither Party shall have the right, power or authority to assume, create, or incur any expense, liability or other obligation, express or implied, on behalf of the other and shall not represent itself as an agent of the other party or as otherwise authorized to act for or on behalf of the other party. Neither party shall be responsible for the payment of workers' compensation, disability benefits, unemployment insurance, and for the withholding of income taxes, social security or business license taxes for the other party's employees.

15.    Miscellaneous. In the event that any provision of this license would be held illegal, invalid or unenforceable by a court or any jurisdiction, Licensor will be allowed to immediately terminate this license without any legal formality and Licensee shall terminate the use of the Intellectual Property immediately upon receipt of the notice of the decision of Licensor. This Agreement shall be interpreted under the laws of the State of Wyoming. Parties agree to submit any dispute arising out of this Agreement to, and consent to the jurisdiction of, the courts of the State of Wyoming or any Federal District Court having jurisdiction within such state. This Agreement supersedes all prior understandings, oral or written, with respect to the subject matter hereof and shall be binding upon and inure to the benefit of the parties hereto and their permitted successors and assigns. No amendment or change in this Agreement may be made except in writing signed by the Parties. Any waiver under this Agreement shall be in writing,

DEF_MOLLER_000431

and no waiver or absence of granting a waiver shall be deemed a waiver or a continuing waiver.

16    Notices.  All notices, approvals and requests hereunder shall be verbal or in writing.

17    Confidentiality.  From and after the Effective Date, Licensee shall, and shall cause their affiliates, subsidiaries, agents and assignees to hold in confidence any and all information, whether written or oral, concerning the Licensor and the Intellectual Propertys. If Licensee is compelled to disclose any information by judicial or administrative process or by other requirements of Law, Licensee shall promptly notify Licensor and shall disclose only that portion of such information which Licensees are advised by counsel is legally required to be disclosed, provided that Licensee shall use reasonable best efforts to obtain an appropriate protective order or other reasonable assurance that confidential treatment will be accorded such information.  Licensee acknowledges that a breach or threatened breach of this Section 17 would give rise to irreparable harm to Licensor, for which monetary damages would not be an adequate remedy, and hereby agrees that in the event of a breach or a threatened breach by Licensee of any such obligations, Licensor shall, in addition to any and all other rights and remedies that may be available to it in respect of such breach, be entitled to equitable relief, including a temporary restraining order, an injunction, specific performance and any other relief that may be available from a court of competent jurisdiction (without any requirement to post bond).

IN WITNESS WHEREOF, the Parties have entered into this Intellectual Property License Agreement, with an effective of 1st day of _October_ , 2014

Licensee: ERI WAHYU HIDAYAT

Dated: OCTOBER 3Rd 2014

By: ERI WAHYU HIDAYAT

Address:
JL IR·H JUANDA NO·539
BANDUNE, WEST JAVA

Signature:

Licensor:  Martian Sales Inc.

Dated: 10/01/14

By: Mark Reilly

Address:  1621 Central Ave.
            Cheyenne , WY 82001

Signature: