**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **KATHLEEN MOLLER,** | * | |
| **Plaintiff,** | * | |
| | * | **Civil Action No.** |
| **v.** | * | **2:24-cv-0228-WBV-DPC** |
| | * | **(Consolidated with No. 24-CV-0781)** |
| **MARTIAN SALES, INC.; JOPEN, LLC; JOHNSON FOODS, LLC; LP IND., LLC; CAG HOLDINGS, LLC; RMH HOLDINGS, INC.; ABC INSURANCE COMPANY and John Does 1-4,** | * * * * * * | **APPLIES TO ALL CASES** **Judge Wendy B. Vitter** **Magistrate Donna Phillips Curault** |
| **Defendants.** | * | |

**DECLARATION OF MAEGHAN E. WHITEHEAD IN SUPPORT OF MEMORANDUM IN SUPPORT OF DEFENDANT JOPEN, LLC'S MOTION TO COMPEL DISCOVERY AND FOR SANCTIONS**

I, Maeghan E. Whitehead, declare as follows:

1. My name is Maeghan Whitehead. I am an attorney with the law firm Kilpatrick Townsend & Stockton LLP. I represent Defendant JOpen, LLC ("Defendant" or "JOpen"), and am admitted pro hac vice in this matter. The facts contained in this declaration are within my personal knowledge and are true and correct. I am fully qualified to make this declaration and can testify about this declaration if I am called as a witness.

2. On November 22, 2024, Defendant JOpen issued its First Set of Rule 34 Requests for Production ("RFPs") and First Set of Rule 33 Interrogatories ("ROGs") (collectively, "Defendant's First Discovery Requests") to Plaintiff. Attached as **Exhibit A** to this declaration is a true and correct copy of Defendant's RFPs. Attached as **Exhibit B** to this declaration is a true and correct copy of Defendant's ROGs to Plaintiff.

3. On January 2, 2025, Plaintiff responded to Defendant's RFPs and ROGs. Attached as **Exhibit C** to this declaration is a true and correct copy of Plaintiff's Responses to Defendant's RFPs. Attached as **Exhibit D** to this declaration is a true and correct copy of Plaintiff's Responses to

Defendant's ROGs. Some of Plaintiff's responses refer to Plaintiff's Rule 26 Initial Disclosures (exchanged on July 15, 2024). Attached as **Exhibit D-1** to this declaration is a true and correct copy of Plaintiff's Initial Disclosures.

4. On January 7, 2025, JOpen provided Plaintiff medical authorizations for her deceased daughter's records ("Decedent") and asked, "Plaintiff to execute so Defendant JOpen, LLC can begin collecting medical records for its defense." Attached as **Exhibit E** to this declaration is a true and correct copy of the January 7-29, 2025 Email Correspondence re: Moller – Medical Authorizations for Signature. Attached as **Exhibit E-1** is a true and correct copy of the January 7, 2025 Email with the Medical Authorizations attached.

5. On January 13, 2025, Defendant sent Plaintiff a letter regarding deficiencies in Plaintiff's responses to Defendant's First Discovery Requests. Attached as **Exhibit F** to this declaration is a true and correct copy of JOpen's January 13, 2025 Letter.

6. On January 15, 2025, Plaintiff's counsel stated that she would have Plaintiff execute the Authorization on Monday, January 20, 2025. When JOpen did not receive authorizations, JOpen followed up with Plaintiff's counsel again asking when they can expect to receive the executed authorizations. ***See Exhibit E.***

7. On January 31, 2025, Plaintiff responded to Defendant's January 13, 2025 Letter. Attached as **Exhibit G** to this declaration is a true and correct copy of Plaintiff's January 31, 2025 Letter.

8. On February 10, 2025, Defendant sent another letter regarding deficiencies in Plaintiff's responses to Defendant's First Discovery Requests. Attached as **Exhibit H** to this declaration is a true and correct copy of JOpen's February 10, 2025 Letter.

9. On February 13, 2025, Plaintiff responded to Defendant's February 10, 2025 Letter. Attached as **Exhibit I** to this declaration is a true and correct copy of Plaintiff's February 13, 2025 Letter.

10. Defendant JOpen sent out Rule 45 non-party subpoenas to multiple third parties for documents, including St. Tammany Parish Sherriff's Office, St. Tammany Parish Coroner's Office, and St. Tammany Fire District.

11. On February 19, 2025, St. Tammany Parish Sheriff's Office produced records to Defendant in response to JOpen's subpoena. These records included the incident report, crime scene photos and five separate extractions of police-worn body camera videos.

12. Attached as **Exhibit J** to this declaration is a true and correct copy of the St. Tammany Parish Sherriff's Office's Incident Report (of which only a portion has been included in Plaintiff's production). Attached as **Exhibit J-1** to this declaration is a true and correct copy of the records produced by Plaintiff from the St. Tammany Parish Sherriff's Office.

13. Attached as **Exhibit K** to this declaration is a true and correct copy of selected crime scene photos from records produced by St. Tammany Parish Sheriff's Office. This includes photos of prescription drugs, cannabis products, alcohol, supplements and vitamins. One of the prescription drugs belongs to a minor child of an individual who worked at the restaurant where Decedent was employed when she died.

14. After review of the police-worn body camera videos taken on February 6, 2025, the date of Decedent's death, it appears that (1) Decedent was living in a bedroom next to Plaintiff's bedroom, steps away from each other sharing the same hallway; (2) Plaintiff and Ivan Moller had numerous prescription medicine bottles discovered in their home; and (3) Plaintiff made statements related to the following:

a. Decedent has had spina bifida her whole life and suggesting she was born with this condition as a result of Ivan Moller's (Decedent's father and her husband) exposure to Agent Orange;

b. Decedent's father had cancer and an aortic aneurysm and was scheduled to have major aneurysm surgery the week of Decedent's death;

c. The night before her death, after returning from spending time with her friend "Meghan," Decedent reported her stomach hurt, believed that she had food poisoning, possibly from consuming crawfish, she could not hold anything down, could not eat anything, was dehydrated and throwing up all night;

d. The day of Decedent's death, Plaintiff was going to take her to receive fluids and an IV and gave her medications, including Zofran, Phenergan and Compazine;

e. The night before or the day of Decedent's death, Decedent told Plaintiff she took a whole bottle of tums to which Plaintiff asked why she took the whole bottle and Decedent apologized stated her stomach was upset;

f. After being informed that Decedent had hydrocodone in her room with Plaintiff's name on it, Plaintiff questioned why she would have that and acknowledged that it is old and that neither Plaintiff nor Decedent's father would have taken hydrocodone and stated she does not know why Decedent would have the hydrocodone unless she thought it was for nausea;

g. Decedent gets something through the mail that is some kind of herbal pill, like a vitamin or mineral thing that comes in a bottle;

h. Decedent had a cyst and she and Plaintiff went to LLC out in Covington and they took that out about three years prior to her death;

i. When Decedent returned from abroad, she had her teeth worked on;

j. During her time abroad, Decedent was a teacher in Thailand, Cambodia and Vietnam;

k. Decedent uses pot and Plaintiff was not aware if she used it the day of the incident but indicated Plaintiff can smell it.

15. On March 31, 2025, St. Tammany Parish Coroner's Office produced records to Defendant in response to JOpen's Rule 45 subpoena. These records include a medical authorization executed by Plaintiff to disclose medical records related to Decedent. The records list "spina biphada (sic.)" under "Medical History" of Decedent. The records contain a hand-written note reference to "Hydrocodone" under the "Investigator's notes and observations" portion of the Investigation Field Report. The records list "birth control infection" under "Medications administered during Hospice/Hospital stay." Attached as **Exhibit L** to this declaration is a true and correct copy of the records produced by St. Tammany Parish Coroner's Office. Records produced by Plaintiff from the St. Tammany Parish Coroner's Office did not include the page that includes the handwritten note related to Decedent's "spina biphada (sic.)" Attached as **Exhibit L-1** to this declaration is a true and correct copy of the records produced by Plaintiff from the St. Tammany Parish Coroner's Office.

16. On April 17, 2025, St. Tammany Fire District produced records to Defendant in response to JOpen's Rule 45 subpoena. In the Patient Care Record, under "Medications" there is a reference to "Phenergan." In the "Narrative" section, it states "Pt's mother stated the pt thought she had food poisoning the last two days and had taken Phenergan earlier today." Attached as

**Exhibit M** to this declaration is a true and correct copy of excerpts from records produced by St. Tammany Fire District's.

17. On June 26, 2025, JOpen sent a letter to Plaintiff regarding Plaintiff's deficiencies in her discovery responses seeking information regarding Decedent's use of medications or mental or physical conditions or disabilities during her childhood and adolescence and (2) Plaintiff's refusal to execute medical authorizations. Defendant provided specific details regarding issues learned after review of additional discovery that demonstrate Plaintiff's deficiencies. JOpen requested Plaintiff's response by July 10. Attached as **Exhibit N** to this declaration is a true and correct copy of JOpen's June 26, 2025 Letter.

18. On July 10, 2025, JOpen sent a letter to Plaintiff supplementing its June 26, 2025 Letter regarding additional comprehensive deficiencies revealed by additional discovery and other independently obtained information that show omissions and/or falsehoods in Plaintiff's responses to Defendant's First Discovery Requests. Defendant requested Plaintiff's response by July 17, 2025. Attached as **Exhibit O** to this declaration is a true and correct copy of JOpen's July 10, 2025 Letter.

19. Plaintiff did not respond to either JOpen's June 26 or July 10 Letter. On July 18, 2025, after both deadlines to respond passed without any response from Plaintiff, Defendant sent an email to Plaintiff requesting a telephonic meet-and-confer. Plaintiff responded referring only to Plaintiff's February 13, 2025, Letter and stating:

> ***The letters that followed repeating the same points and insisting that defendants are right and we're wrong has not changed our minds. You are correct, we have nothing more to add to my correspondence of February 13 of last year. Defendants' silence over the past year or so gave us the impression that the matter was settled. In any event, if you wish to have the matter resolved before the US Magistrate Judge, I will consider your***

> ***conferral obligations under Rule 37 to have been satisfied and will not object on that basis.***

Attached as **Exhibit P** to this declaration is a true and correct copy of the July 18, 2025 email correspondence.

20. I have reviewed statements posted to (or comments made from) a public Facebook account authored by "Kathi Moll." I reasonably believe this Facebook account to belong to Plaintiff, wherein Plaintiff made the following public statements:

a. Harmony was sick yesterday and thought it was food poisoning. Her heart stopped and it wouldn't start despite all attempts.

b. She came in on Sunday after work and said her stomach hurt. By the night, she thought she had food poisoning, but was sure it would go away in two days. Despite medications and every attempt possible to save her live [sic], her heart just stopped beating.

c. It was a long 5 months before we found out that her death was caused by a cardiac anomaly that caused her heart to suddenly stop beating from lack of blood flow in a cardiac artery.

d. Her heart was so giving, but it had a physical flaw that was unknown and it took her from Earth to [sic] soon.

e. Thanks to Harmony's FRIENDS in KAMPOT, CAMBODIA for honoring Harmony Moller on the river cruise.

f. Ivan's daughter, Harmony also suffered the effects of Agent Orange she inherited. She also was quiet about it, but the struggle was real and never compensated by our military.

g. Ivan's best friend, Jim, for 50 years, followed Ivan to that place where heroes go to rest, this morning… Both are Vietnam era vets who were exposed to AGENT ORANGE while fighting for our country. Both were working with the VA to get compensation for years of suffering the effects on their body. I hope the VA stands by their word to take care of the vets and their families.

h. Thanks to the VA for making our loss a little less painful…

Attached as **Exhibit Q** to this declaration are true and correct copies of excerpts of Facebook posts Plaintiff appears to have authored.

21. Attached as **Exhibit R** is a true and correct copy of publicly available information that related to a GoFundMe fundraiser requesting support related to "recouping some of the cost" of a service for Decedent. Attached as **Exhibit R-1** are true and correct copies of the only documents produced by Plaintiff related to funeral expenses.

22. Attached as **Exhibit S** is a true and correct copy of information related to a Misdemeanor case for possession of marijuana involving Decedent.

23. I have attempted to meet and confer with Plaintiff's counsel about Defendants' belief that Plaintiff has unreasonably refused to cure the multiple deficiencies in Plaintiff's discovery requests.

"I declare under the penalty of perjury that the foregoing is true and correct."

*/s/ Maeghan E. Whitehead*
Maeghan E. Whitehead