# EXHIBIT

# P

| | |
|---|---|
| **From:** | Chip Wagar III |
| **To:** | Rightler, Hillary |
| **Cc:** | Payton, Gwendolyn; Whitehead, Maeghan; Chin, Kristina; Roberts, Monica; Ambler, Hayley; Peterkin, Monique; Reid, Allison; Sarah Wagar Hickman; mcowgill@mctlaw.com; Tamara J. Spires; Angeleah Eckersen; Shalom Bonee; Helene Gregorich |
| **Subject:** | RE: Kathleen Moller v. Martian Sales, Inc, et al |
| **Date:** | Friday, July 18, 2025 11:04:50 AM |
| **Attachments:** | image001.png<br>2025-02-13 Reply CX JOpen AY re PL DV RSP.pdf<br>2025-06-26 CF DA re PL DV RSP.pdf |

**CAUTION: External Email**

*Dear Hillary –*

*In response, your correspondence below is inaccurate in several respects. I did respond to the initial deficiency letter. It is attached. Correspondence from Ms. Payton at your firm acknowledged receipt of our correspondence.*

*The letters that followed repeating the same points and insisting that defendants are right and we're wrong has not changed our minds. You are correct, we have nothing more to add to my correspondence of February 13 of last year. Defendants' silence over the past year or so gave us the impression that the matter was settled.*

*In any event, if you wish to have the matter resolved before the US Magistrate Judge, I will consider your conferral obligations under Rule 37 to have been satisfied and will not object on that basis.*

*Furthermore, I do not understand where you got the expert/discovery deadline/prejudice issue? This case is pending mutual motions (dismiss/opposition, MSJ) and our discovery was limited to jurisdictional matters pending before the court. Assuming the court denies the defendants' motion to dismiss, and the case moves on, your clients will have to file answers, a new DCO will be promulgated and so forth. If the Court grants defendants' motion to dismiss, the expressed concern about expert/discovery deadlines will be moot, will it*

*not? I'm sorry, I just don't follow your assertions on this point.*

*With best regards,*

*Sincerely,*

*Chip Wagar*

*Wagar Hickman, LLC*
*1401 W. Causeway Approach*
*Mandeville, Louisiana 70471*
*985-888-8740*

**From:** Rightler, Hillary <HRightler@ktslaw.com>
**Sent:** Friday, July 18, 2025 8:48 AM
**To:** Sarah Wagar Hickman <Shickman@wagarhickman.com>; Chip Wagar III <CWagar@wagarhickman.com>; mcowgill@mctlaw.com; Tamara J. Spires <tspires@mctlaw.com>; Angeleah Eckersen <aeckersen@mctlaw.com>; Shalom Bonee <SBonee@wagarhickman.com>; Helene Gregorich <HGregorich@wagarhickman.com>
**Cc:** Payton, Gwendolyn <GPayton@ktslaw.com>; Whitehead, Maeghan <MEWhitehead@ktslaw.com>; Chin, Kristina <KChin@ktslaw.com>; Roberts, Monica <moroberts@ktslaw.com>; Ambler, Hayley <hambler@ktslaw.com>; Peterkin, Monique <MPeterkin@ktslaw.com>; Reid, Allison <AReid@ktslaw.com>
**Subject:** RE: Kathleen Moller v. Martian Sales, Inc, et al

**CAUTION:** This email originated from outside the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Counsel,

To date, we have not received any response to our June 26 and July 10 letters (transmittal emails attached) regarding your deficiencies to Defendant's discovery responses despite the deadlines passing. Not only have you declined to respond to the substance in our letters, but you have also failed to communicate with us in any way about the letters.

Expert discovery deadlines are approaching and your failure to work with us in good faith to resolve these discovery disputes continues to prejudice defendant.

We have interpreted your lack of response to mean that you have nothing additional to add beyond your last correspondence in February.

We are available for a telephonic meet-and-confer on Monday afternoon until 5 pm ET or Tuesday morning until noon ET.

If you cannot confer during those times, we believe we've met our requirement to attempt to confer through our letters which you have ignored. With the expert deadline, we intend to seek court intervention no later than Tuesday afternoon but will remain willing to confer after our motion is filed.

Thanks,
Hillary

Hillary Rightler
She | Her | Hers
HRightler@ktslaw.com
Kilpatrick Townsend & Stockton LLP
1100 Peachtree Street NE | Suite 2800 | Atlanta, GA 30309-4528
**T** 404 815 6584 | **M** 404 731 9298 | **F** 404 541 3320
My Profile | vCard

**From:** Rightler, Hillary <HRightler@ktslaw.com>
**Sent:** Thursday, July 10, 2025 11:55 AM
**To:** shickman@wagarhickman.com; cwagar@wagarhickman.com; mcowgill@mctlaw.com; Tamara J. Spires <tspires@mctlaw.com>; Angeleah Eckersen <aeckersen@mctlaw.com>; sbonee@wagarhickman.com; hgregorich@wagarhickman.com
**Cc:** Payton, Gwendolyn <GPayton@ktslaw.com>; Whitehead, Maeghan <MEWhitehead@ktslaw.com>; Chin, Kristina <KChin@ktslaw.com>; Roberts, Monica <moroberts@ktslaw.com>; Ambler, Hayley <hambler@ktslaw.com>; Peterkin, Monique <MPeterkin@ktslaw.com>; Reid, Allison <AReid@ktslaw.com>
**Subject:** Kathleen Moller v. Martian Sales, Inc, et al

Counsel,

Please see the attached correspondence.

Hillary

Hillary Rightler
She | Her | Hers
HRightler@ktslaw.com
Kilpatrick Townsend & Stockton LLP
1100 Peachtree Street NE | Suite 2800 | Atlanta, GA 30309-4528
**T** 404 815 6584 | **M** 404 731 9298 | **F** 404 541 3320
My Profile | vCard

'

---

Confidentiality Notice:
This communication constitutes an electronic communication within the meaning of the Electronic Communications Privacy Act, 18 U.S.C. Section 2510, and its disclosure is strictly limited to the recipient intended by the sender of this message. This transmission, and any attachments, may contain confidential attorney-client privileged information and attorney work product. If you are not the intended recipient, any disclosure, copying, distribution or use of any of the information contained in or attached to this transmission is STRICTLY PROHIBITED. Please contact us immediately by return e-mail or at 404 815 6500, and destroy the original transmission and its attachments without reading or saving in any manner.

'

WAGAR HICKMAN

ATTORNEYS AT LAW

Chip Wagar
Partner
Telephone 985 888 8740
Facsimile 985 888 8792
cwagar@wagarhickman.com

February 13, 2025

***Via Email*** ***gpayton@ktslaw.com***
Gwendolyn C. Payton, Esq.
KILPATRICK TOWNSEND & STOCKTON LLP
1420 Fifth Ave., Ste. 3700
Seattle, WA 98101

Re: *Kathleen Moller v. Martian Sales, Inc., et al.*
Case No. 24-cv-0228-WBV-DPC

Dear Ms. Payton:

We have your letter of February 10 regarding this matter and, respectfully, I believe we are at an impasse if you continue to insist on pursuing the interrogatories and requests discussed in your letter. Nonetheless, in the hopes of avoiding motions on the subject, perhaps the following will clarify further our position on the subject discovery.

Interrogatory 1:

It is difficult to follow the argument made here. "Reasonably anticipated use" and "intended use" in Louisiana, pursuant to the Louisiana Products Liability Act is determined from the ***manufacturer's*** perspective, not the consumers. Check the definitions at La. R.S. 9:2800.53(7). We do not dispute that your client has a right to "search for evidence and information to build its defense to these allegations", but for that, you would need to search your clients' employees and records, we suggest, not the decedent's mother.

You state that "[d]efendant … reasonably believes that the decedent may have discussed her use of kratom prior to her death in communications on her cell phone."

What is the basis for this belief? You fail to mention any basis whatsoever for this subjective belief. Even so, your bald assertion that such discussions "would plainly be relevant to the allegations at issue" seems specious and incredulous.

Are you suggesting that access to the decedent's telephone records would permit you to then begin randomly calling the numbers of her friends and family and interrogate them on what discussions she may have had with them about her use kratom? And what relevance could that possibly have to any issue in this litigation? Or is there some other use you have in mind for her cell phone and records? You fail to mention anything on this point.

Perhaps you have overlooked the limits of the scope of discovery provided by Rule 26(b)(1) which provides:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and **proportional** to the needs of the case, considering the importance of **the issues at stake** in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, **the importance of the discovery in resolving the issues**, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of **discovery** need not be admissible in evidence to be discoverable.

We see no connection between this attempt to invade the privacy of the decedent's family as well as perhaps innumerable other friends and relationships she may have had before her untimely death and any issue at stake, or their resolution, and your correspondence sheds no light on this.

Interrogatories 4 and 5:

The same rationale for our position and objection just stated, *supra*, applies here although the relevance of the identity of persons the decedent lived or traveled with in her years abroad in Asia would seem even more incongruous and dubious.

Your sole rationale is that "information regarding the decedent's life abroad may be relevant to the allegations at issue." How? What allegations are you referring to where this could have any possible relevance except to invade the privacy of the decedent, her family and any individuals her mother might be able to identify?

Interrogatories 9 and 11:

You seem to contend that medications prescribed or taken in the childhood or adolescence of this 36-year-old woman is somehow relevant? How? To what "mental or physical conditions or disabilities during her childhood and adolescence" you contend would be "relevant to the claims in this litigation" do you refer? Harmony Moller was not "disabled" during her childhood or adolescence or even her adulthood, as that term is ordinarily defined.

As far as her more current medical "conditions" after her return to the US you already have that evidence. The decedent's cause of death was established by the St. Tammany Parish Coroner's office and toxicology labs taken after her death, as you well know. You already have or soon will have evidence from what few medical services she obtained during her time in the US.

Request for Production 9:

The medical condition of the Plaintiff – the decedent's mother – is not at issue in this litigation. There is no relevance to your seeking the identity of her private medical providers or their records either from her doctors or pharmacy.

We answered the question that she had been prescribed Xanax for insomnia after her husband's death. This has no relevance to the death of her daughter and rummaging through the decedent's mother's medical records would be a blatant intrusion into her privacy for no conceivable reason. Nor is it proportional to the needs of the case, considering the importance of the issues at stake in the action and the resolution of those issues, as required by the Rules.

Interrogatories 3, 22 and Requests for Production 22, 31, 32, and 58

We do not make objections to discovery lightly or without careful consideration. You offer nothing new or different on these discrete discovery requests from your previous correspondence other than to accuse us of offering "conclusory" or "unavailing" responses. Our objections stand which we believe were succinct and within the requirements of the FRCP as far as detail and the basis for the objections.

In conclusion, we respectfully suggest that the objections made were timely and supported by the Rules and case law. We believe the subject discovery was out of bounds. Your failure to articulate any cogent relevance beyond conclusory, speculative argumentation convinces us all the more that this is nothing more than a fishing expedition to smear our client's daughter's character if you can. If you feel compelled to escalate this to a hearing before the Court, we will accept that challenge.

Sincerely,

CHIP WAGAR

CW/sb

cc: Michael Cowgill (*via email* mcowgill@mctlaw.com)
Tamara Spires (*via email* tspires@mctlaw.com)

**Kilpatrick Townsend & Stockton LLP**
ktslaw.com

Suite 3700, 1420 Fifth Avenue
Seattle, WA 98101

direct dial 206 626 7714
direct fax 206 321 2428
gpayton@ktslaw.com

June 26, 2025

***VIA EMAIL***

Nelson W. Wagar, III
Sarah Wagar Hickman
**Wagar Hickman, LLP**
1401 West Causeway Approach
Mandeville, Louisiana 70471

Michael J. Cowgill
Tamara J. Williams
**mctlaw**
1605 Main Street, Suite 710
Sarasota, Florida 34236

Re: KATHLEEN MOLLER v. MARTIAN SALES, INC., et al., Case No. 24-cv-0228-WBV-DPC

Dear Counsel:

We are in receipt of your letter dated February 13, 2025. Notwithstanding Plaintiff's stated unwillingness to reach a resolution without escalation to the Court, Defendant JOpen LLC ("Defendant") writes once more in a good faith effort to resolve this disagreement efficiently and amicably. Since our last correspondence, we have received and reviewed additional discovery that further demonstrates both the relevance of the information Defendant seeks and the unreasonableness of Plaintiff's position in failing to adequately respond.

This letter focuses on Plaintiff's (1) untenable position that discovery of information regarding decedent's use of medications or mental or physical conditions or disabilities during her childhood and adolescence ("Pediatric Medical Information") is irrelevant; and (2) Plaintiff's refusal to sign medical authorizations provided by Defendant ("Medical Authorizations"). Objections previously raised by Defendant to Plaintiff's other inadequate discovery responses stand and will be addressed in a subsequent letter, together with additional deficiencies identified after discovery. This letter separately focuses on these critical issues as prejudice to Defendant is high.

Regarding Interrogatory Nos. 4 and 5, Defendant seeks information regarding decedent's medical providers and hospitals and clinics where she received any examination or treatment, *from birth to death*. Plaintiff's responses appear limited to Plaintiff's most recent years of adulthood, citing her "many years abroad" and one unknown urgent care facility. Plaintiff's responses omit any discussion of decedent's medical providers, hospitals or clinics where she received any examination or treatment during childhood. To the extent Plaintiff is refusing to response to Interrogatory Nos. 4 and 5 as it relates to decedent's childhood medical providers, hospitals and clinics, please so state along with the basis for doing so.

Regarding Interrogatory Nos. 9 and 11, Plaintiff objects on broad relevancy grounds, and improperly contends that decedent's Pediatric Medical Information is not relevant to the claims in this litigation.

The coroner's report found the decedent's cause of death to be an "abnormally high left coronary ostia takeoff." High coronary artery takeoffs are one of a constellation of conditions that are congenital, inherited, or acquired during childhood that may not manifest until death in adulthood. Therefore, determining the existence and impact of the decedent's congenital heart abnormalities is of central relevance to the question of causation in this case.

Additionally, the lab reports related to the evaluation of decedent's heart for post-mortem donation purposes suggest that she may have suffered a congenital heart defect that contributed to the coronary takeoff, as portions of her heart were evaluated and rejected for donation purposes.

Further, multiple sources have identified that the decedent had Spina Bifida. Spina Bifida is a congenital condition with potentially manifold medical consequences across affected individuals, including an increased risk of congenital heart defects. The coroner's report explicitly identified decedent's spina bifida. Shockingly, in the police body camera footage, Plaintiff *herself* admitted the decedent had spina bifida for "*her whole life*." Plaintiff also expressed—in the same sentence—her belief that the decedent's father's exposure to agent orange is linked to this congenital birth defect.

Decedent's spina bifida was not disclosed anywhere in Plaintiff's responses. This omission alone reveals Plaintiff's lack of good faith in responding to Defendant's discovery requests and attempts to hide behind a purported lack of knowledge or conclusory objections.

Despite Plaintiff's knowledge about her daughter's congenital disorder, in response to Request for Production Nos. 10, 14, and 20, Plaintiff stated she "has made a reasonable search of documents and information responsive to these Requests and has nothing more to offer." It is unbelievable that Plaintiff has no knowledge of and possesses no documents regarding the congenital ailment her daughter had since birth. To the extent that such documents and information are responsive to Requests for Production Nos. 10, 14, and 20 and Interrogatory Nos. 9 and 11, please respond accordingly. If Plaintiff stands on her objections to relevance of decedent's Pediatric Medical Information, please so state.

Regarding Request for Production No. 58, for the same reasons stated above, Plaintiff's refusal to submit authorization for the decedent's medical records is completely unreasonable. Plaintiff has refused to sign Medical Authorizations. Any prior objection to signing "blank" authorizations fails to acknowledge that Defendant provided completely filled-in authorizations and Plaintiff failed to sign these documents.

Plaintiff also accuses Defendant of engaging in a "fishing expedition to smear" the decedent's character. Putting aside Defendant's continued confusion as to how discovering the decedent's medical records will somehow taint her character, the fact remains that withholding authorization profoundly prejudices Defendant. Defendant remains unable to discover critical information if Plaintiff will neither share it nor authorize Defendant to track it down directly.

This is a wrongful death case where Plaintiff has placed decedent's medical history at issue. Discovery to date is replete with evidence that suggests decedent suffered from a congenital defect that could have impacted her cause of death. Defendant has a right to mount its defense to the claims Plaintiff has brought. As Plaintiff claims Defendant's products caused the decedent's death, we are clearly entitled to discover the decedent's medical conditions that might have contributed to the same. If Plaintiff still refuses to sign Medical Authorizations, please so state.

We hope this letter helps Plaintiff recognize the relevance of the decedent's medical information and that Plaintiff will now provide this information without further delay. If not, we see no other path than to file a motion with the Court.

Please respond and provide Plaintiff's final position by July 10, 2025.

Best regards,

Gwendolyn C. Payton