UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

KATHLEEN MOLLER                              CIVIL ACTION

VERSUS                                       NO. 24-228
                                             c/w 24-781

MARTIAN SALES, INC., ET AL.                  SECTION: D (2)

ORDER AND REASONS

Before the Court is Plaintiffs' Motion to Review Magistrate Judge's Order and

Objections, filed by Kathleen Moller.[1]  Defendants, Martian Sales, Inc., Jopen, LLC,

LP Ind., LLC, CAG Holdings, LLC, and RMH Holdings, LLC oppose the Motion,[2] and

Plaintiff has filed a Reply.[3]  After careful consideration of the parties' memoranda

and the applicable law, the Motion is **DENIED.**

## I.    FACTUAL AND PROCEDURAL BACKGROUND

This is an action for the wrongful death of Harmony Moller, who died on

February 6, 2023, allegedly as the result of the ingestion of OPMS brand kratom.[4]

On January 24, 2024, plaintiff, Kathleen Moller, filed a Complaint in this Court

against Martian Sales, Inc., Jopen, LLC, Johnson Foods, LLC, LP IND, LLC, CAG

---

[1] R. Doc. 103.

[2] R. Doc. 110.

[3] R. Doc. 113.  At the time the Opposition brief was filed, Johnson Foods, LLC was the only other defendant that had made an appearance in the case.  Johnson Foods, LLC did not join in the opposition.

[4] According to Plaintiff, "Kratom is the name given to botanical products derived from the leaves of the *Mitragyna Speciosa* tree, which grows in Southeast Asia."  R. Doc. 100 at ¶ 34.  Plaintiff alleges that, "Kratom contains dozens of psychoactive compounds or alkaloids," and that, "[t]he two most-studied alkaloids are mitragynine and 7-hydroxymitragynine.  These two alkaloids bind to the same opioid brain receptors as morphine.  Like opiates, these compounds can lead to analgesia (release of pain), euphoria, and sedation." *Id.* at ¶ 36.  Plaintiff alleges that, "[b]oth of these alkaloids were found in the whole blood extracted from the decedent on February 7, 2023, and reported in the decedent's autopsy report." *Id.*

Holdings, LLC, RMH Holdings, LLC, and Olistica Life Sciences Group, alleging that these defendants are liable for the death of her daughter, Harmony, because they import, package, distribute, and/or sell dangerous kratom products to Louisiana residents, including Harmony.[5]  Plaintiff appears to assert a wrongful death claim under Louisiana Civil Code article 2315.2[6] and two products liability claims under Louisiana's Products Liability Act, La. R.S. 9:2800.51, *et seq*., asserting that the kratom product consumed by Harmony was unreasonably dangerous due to a failure to warn and a design defect.[7]

At the Court's request, Plaintiff filed a Second Amended Complaint on February 6, 2024, to clarify her allegations regarding diversity jurisdiction under 28 U.S.C. § 1332.[8]  The Second Amended Complaint is identical to the original Complaint, except that Olistica Life Sciences Group is not named as a defendant.[9]  In the Second Amended Complaint, Plaintiff alleges that, "[a]ll defendants named herein are alter egos of one another and operate as a single business enterprise through a secretive web of affiliates, individuals, shell companies, alter egos, business names, assumed names, and/or trade names,"[10] and that, "OPMS kratom is imported, packaged, distributed, and sold through a complex web of companies that includes Defendants.  This web is referred to herein as the OPMS enterprise."[11]  Plaintiff

---

[5] R. Doc. 1 at ¶¶ 13–51.
[6] *Id*. at ¶ 51.
[7] *Id*. at ¶¶ 45–50.
[8] R. Doc. 7.
[9] *Compare* R. Doc. 1 at ¶ 12 *to* R. Doc. 7 at ¶ 12.
[10] R. Doc. 7 at ¶ 12.
[11] *Id*. at ¶ 41.

alleges that the OPMS enterprise "is one of the largest kratom distributors in the United States, including Louisiana."[12]

Plaintiff further asserts that, "the OPMS enterprises' evasive tactics and abuse of corporate forms has been highlighted by recent investigative reports, as well as public filings in multiple lawsuits,"[13] and that, "[t]hrough its various alter egos and agents, the OPMS enterprise has supported the import, distribution, and sale of three of the most popular kratom brand names on the market," including "the OPMS product at issue in this case."[14]    Plaintiff claims that, "OPMS Kratom is manufactured, packaged, distributed, and sold by the OPMS defendants via the stream of commerce throughout the United States to herbal stores, gas stations, corner stores, and smoke shops where it is primarily marketed as an herbal medicine or supplement to treat a variety of ailments," and that it constitutes a product under Louisiana's Products Liability Act (the "LPLA").[15]    Plaintiff further alleges that the defendants are "manufacturers" under the LPLA, that Harmony's ingestion of kratom was a "reasonably anticipated use of the product" under the LPLA, and that kratom is unreasonably dangerous as a matter of law due to its failure to adequately warn users of the risks of sudden death by heart failure, among other things.[16]    Plaintiff also alleges that the kratom consumed by Harmony was unreasonably dangerous and defective in design under the LPLA because there are alternative products with the

---

[12] *Id.* at ¶ 42.
[13] *Id.* at ¶ 43.
[14] *Id.* at ¶ 44.
[15] *Id.* at ¶ 45.
[16] *Id.* at ¶¶ 46–48.

same or similar alleged benefits that are capable of preventing injury and death to users, and the likelihood of injury or death outweighed the burden of adopting such alternative design or use of different products.[17]  In addition to the LPLA claims, Plaintiff seeks damages for her grief, loss of companionship and consortium, love, affection, and support due to Harmony's wrongful death under La. Civ. Code art. 2315.2.[18]

On May 9, 2024, LP IND, LLC, CAG Holdings, LLC, RMH Holdings, Inc., Martian Sales, Inc., and Jopen, LLC (collectively, "Defendants") filed a Motion to Dismiss, asserting that the Second Amended Complaint should be dismissed for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2) and for failure to state a claim under Fed. R. Civ. P. 12(b)(6).[19]  On May 28, 2024, Johnson Foods, LLC filed a Motion to Dismiss, also asserting that the Second Amended Complaint should be dismissed for lack of personal jurisdiction and for failure to state a claim under Rules 12(b)(2) and 12(b)(6).[20]  Plaintiff opposed both Motions,[21] and Reply briefs were filed.[22]  The Court discussed the two motions during a Telephone Status Conference held on July 16, 2024.[23]  As a result of that discussion, and without objection from defense counsel, the Court issued an oral Order denying the motions without prejudice.[24]  The Court, however, also issued an oral Order granting Plaintiff's request to conduct

---

[17] *Id.* at ¶ 50.
[18] *Id.* at ¶ 51.
[19] R. Doc. 32.
[20] R. Doc. 45.
[21] R. Doc. 48.
[22] R. Docs. 50 & 51.
[23] *See* R. Doc. 54 at pp. 2–3.
[24] *Id.* at p. 2.

jurisdictional discovery, set forth in her Opposition brief to the two motions,[25] and gave Plaintiff until January 27, 2025, to conduct jurisdictional discovery.[26]  The Court also set a follow-up telephone status conference for January 29, 2025.[27]  On January 9, 2025, however, Plaintiff filed an opposed Motion for Extension of Time to Conduct Jurisdictional Discovery,[28] which the Court addressed during a Telephone Status Conference held on January 17, 2025.[29]  After a lengthy discussion with counsel, Plaintiff's counsel advised that Plaintiff was seeking the financial records of non-parties, Mark Jennings, Mark Riley, Payton Palaio, Eyal Gabbay, and CCUS Holdings as part of her jurisdictional discovery.[30]  Counsel for the defendants offered to provide a declaration "which the parties will confer about."[31]  As such, the Court issued an oral Order denying Plaintiff's Motion for Extension of Time, but the Court clarified that any outstanding discovery requests from the Plaintiff must be answered by the defendants.[32]

On February 28, 2025, Plaintiff moved for leave to file a Third Amended Complaint to "clarify ownership of certain Defendant entities and to name additional defendants."[33]  Several defendants opposed the motion,[34] and Plaintiff filed a Reply.[35] The assigned United States Magistrate Judge ultimately granted the motion on

---

[25] *See* R. Doc. 48.
[26] R. Doc. 54 at p. 2.
[27] *Id*.
[28] R. Docs. 63 & 64.
[29] *See* R. Docs. 65 & 67.
[30] R. Doc. 67 at p. 2.
[31] *Id*.
[32] *Id*.
[33] R. Doc. 85.
[34] R. Doc. 93.
[35] R. Doc. 95.

March 21, 2025,[36] and the Third Amended Complaint was filed into the record that same day.[37]  The Third Amended Complaint names as additional defendants Nuza, LLC, Calibre Manufacturing, LLC, FMK Group, Inc., PNW Holdings, LLC, CC US Holdings, LLC, Peyton Shea Palaio, Mark Jennings, Eyal David Gabbay, and Mark Daniel James Reilly.[38]  Plaintiff alleges that the additional entities are associated with the OPMS kratom brand, while Palaio is "the ringleader and mastermind behind several Defendant entities, including MARTIAN SALES.; [sic] LP; FMK; PNW; and CC US," Jennings is the chief executive officer of Olistica Life Sciences Group, Gabbay is the owner and operator of Jopen, and Reilly is the owner and operator of Martian Sales.[39]  The Third Amended Complaint is otherwise identical to the Second Amended Complaint and is the operative complaint in the matter.[40]

On February 24, 2025, Plaintiff filed a Motion to Compel Discovery from Martian Sales, Inc., Jopen, LLC, LP IND, LLC, CAG Holdings, LLC, and RMH Holdings, Inc. (collectively, "Defendants"),[41] seeking an order compelling them to produce documents in response to two requests for production that sought, "all balance sheets and income statements" for the entity "from formation to present," and "all U.S. Federal Income Tax Returns" for the entity "from formation to present."[42]  Plaintiff claimed that these financial records were essential to her single

---

[36] R. Doc. 99.
[37] R. Doc. 100.
[38] *Id.* at ¶¶ 6–24.
[39] *See Id.* at ¶¶ 16–24.
[40] *Compare* R. Doc. 100 *to* R. Doc. 7.
[41] The Court notes that Johnson Foods, LLC was the only defendant not named in the Motion to Compel.
[42] R. Doc. 82.  *See* R. Doc. 82-1 at p. 1; R. Doc. 82-2 at pp. 3–4; R. Doc. 82-3 at pp. 3–4; R. Doc. 82-4 at pp. 3–4; R. Doc. 82-5 at pp. 3–4; R. Doc. 82-6 at pp. 3–4.

business enterprise ("SBE") allegations.[43]  Defendants opposed the Motion, asserting that Plaintiff cannot show that the financial information sought is relevant or that there is a compelling need for the information.[44]  In response, Plaintiff maintained that the documents sought are relevant and necessary for "the alter ego and single business enterprise claims, as pursuant to the adage 'follow the money.'"[45]

The Magistrate Judge held a hearing on the Motion to Compel on March 12, 2025, during which she pointed out that under Fifth Circuit authority a party must have a compelling need to discover tax returns and financial records, and that the information must not be "otherwise readily obtainable" through alternative forms of discovery.[46]  The Magistrate Judge found that Plaintiff "was unable to articulate what particular information he [sic] seeks in the tax returns and financial records that is not available through other forms of discovery."[47]  As such, the Magistrate Judge ordered Plaintiff to file a supplemental memorandum identifying the particular information needed in the tax returns and financial statements, and gave Defendants an opportunity to file a response to the supplemental memorandum.[48]  Plaintiff filed a Supplemental Memorandum, along with a letter from a retained Certified Public Accountant ("CPA"), who indicated that Defendants' tax returns would provide reliable information regarding where distributions from entities are

---

[43] R. Doc. 82-1 at pp. 2–3.

[44] R. Doc. 88 at pp. 8–9 (citing *Nat. Gas Pipeline Co. of Am. v. Energy Gathering, Inc.,* 2 F.3d 1397, 1411 (5th Cir. 1993)).

[45] R. Doc. 91 at p. 2.

[46] R. Doc. 94 at p. 1 (citing *F.D.I.C. v. LeGrand*, 43 F.3d 163, 172 (5th Cir. 1995); *Nat. Gas Pipeline Co.,* 2 F.3d at 1411).

[47] R. Doc. 94 at p. 1.

[48] *Id.*

paid, the owners of each business, and would make it possible to trace money flowing from business entities to individuals.[49]  In response, Defendants assert that the CPA letter is not responsive to the court's request, that Plaintiff failed to specify what information she would obtain from the tax documents that is relevant to her SBE theory, and that Plaintiff failed to show that she cannot obtain the information through any other means.[50]

On March 21, 2025, the Magistrate Judge issued an Order and Reasons, granting in part and denying in part Plaintiff's Motion to Compel.[51]  The Magistrate Judge determined that "Plaintiff seeks to obtain Defendants' financial documents and tax returns to support their arguments for attribution of Defendants' minimum contacts to one another under theories of alter ego/SBE/veil piercing" for personal jurisdiction purposes.[52]  The Magistrate Judge pointed out that, "the factors used to determine alter-ego relationships for liability purposes are different than the relevant factors for purposes of imputing personal jurisdiction."[53]  The Magistrate Judge then explained that the Fifth Circuit in *Hargrave v. Fibreboard Corporation* identified the following seven factors as useful in assessing whether an entity's contacts may be attributed to another entity for jurisdictional purposes under veil piercing/alter ego/single business enterprise theories: (1) the amount of stock owned by the parent of the subsidiary; (2) separate headquarters; (3) common officers and directors; (4)

---

[49] R. Doc. 96.  *See* R. Doc. 96-1 at p. 2.
[50] R. Doc. 97.
[51] R. Doc. 98.
[52] *Id*. at p. 9.
[53] *Id*. (citing *Licea v. Curacao Drydock Co.*, 952 F.3d 207, 212, 213 n.2 (5th Cir. 2015)).  The Magistrate Judge noted that, "[t]he test for jurisdictional veil piercing is less stringent than that for imposing liability.  R. Doc. 98 at p. 9, n.22 (citing; *Savoie v. Pritchard*, 122 F.4th 185, 192 (5th Cir. 2024)).

observance of corporate formalities; (5) separate accounting systems; (6) whether the parent exercised complete authority over general policy; and (7) whether the subsidiary exercised complete authority over daily operations.[54] The Magistrate Judge found that while tax returns contain information that may be relevant to liability and/or post-judgment collection efforts, in light of the extensive discovery that had already occurred, there was no compelling need for the information to justify the production of Defendants' tax returns.[55] The Magistrate Judge further found that Defendants' tax returns "would reflect only very limited information relevant to the jurisdictional issue, and that the information appeared cumulative and duplicative of information already provided."[56] The Magistrate Judge reasoned that alternative sources can more readily be used to obtain information relevant to the *Hargrave* factors, and that Plaintiff had failed to demonstrate "how other discovery methods fail to reveal the information relevant to the relevant jurisdictional alter ego/SBE/veil piercing issue or how any particular item of information in the tax returns is not

---

[54] R. Doc. 98 at p. 10 (citing *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 428 (5th Cir. 2005); *Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1160 (5th Cir. 1983)).  The Magistrate Judge also pointed out that Louisiana courts consider similar factors in assessing liability under the single business enterprise theory, including: (1) common ownership; (2) common directors and officers; (3) common employees; (4) common offices; (5) unified administrative control; (6) similar or supplementary business functions; (7) one corporation financing the other; (8) inadequate capitalization; (9) one corporation's creation of the other; (10) one corporation paying the salaries, expenses, or losses of the other corporation; (11) one corporation receiving no business other than that given to it by the affiliated corporation; (12) shared property; (13) noncompliance with corporate formalities; (14) services rendered by the employees of one corporation on behalf of another corporation; (15) centralized accounting; (16) undocumented transfer of funds between corporations; (17) unclean allocation of profits and losses between corporations; and (18) excessive fragmentation of a single enterprise into separate corporations.  R. Doc. 98 at p. 10, n.25 (citing *Green v. Champion Ins. Co.*, 577 So.2d 249, 257–58 (La. App. 1 Cir. 1991); *accord. Jackson v. Tanfoglio Giuseppe, S.R.L.*, 615 F.3d 579, 587 (5th Cir. 2010)).

[55] R. Doc. 98 at p. 11.

[56] *Id.*

available from other sources."[57]  Based upon the information already provided and Defendants' acknowledgement that they will provide affidavits confirming that they do not file consolidated tax returns with one another, the Magistrate Judge concluded that there was no compelling need at this time for Plaintiff to obtain the tax returns.[58]

The Magistrate Judge further found that Plaintiff had failed to establish that "a wholesale production of all balance sheets and income statements from formation to present" was necessary to obtain information regarding the seven *Hargrave* factors.[59]  Because Plaintiff's daughter died in 2023, the Magistrate Judge ruled that Defendants must produce the following documents from their financial statements for the years 2022 to 2024, marked confidential and subject to the Protective Order,[60] to the extent the information had not already been provided in Defendants' document production:

(1) redacted balance sheets or other financial statements reflecting ownership of stock of any other defendant;
(2) financial documents reflecting the identity of any common officers, directors or employees shared by Defendants;
(3) financial documents reflecting any joint bank accounts shared with any other defendant;
(4) financial documents/checks/redacted bank statements reflecting transfers between Defendants;

---

[57] *Id*. (citing *Asset Funding Grp., LLC v. Adams & Reese, LLP*, Civ. A. No. 07-02965, 2008 WL 927937, at *9 (E.D. La. Apr. 4, 2008) (Roby, M.J.)).
[58] R. Doc. 98 at p. 11.
[59] *Id*. at p. 12.
[60] *See* R. Docs. 62 & 168.

(5) financial documents reflecting any shared offices or headquarters with any other defendant; and

(6) financial documents reflecting any shared account systems with any other defendant.[61]

The Magistrate Judge concluded that the production of these limited financial documents balances Defendants' interests in the privacy of their financial information and Plaintiff's need to obtain evidence relevant to the *Hargrave* factors for jurisdictional purposes.[62]

Plaintiff filed a Motion to Review Magistrate Judge's Order and Objections on April 1, 2025, seeking review of the Magistrate Judge's partial denial of her Motion to Compel.[63]   Plaintiff seeks review of the Order and Reasons to the extent the Magistrate Judge denied the production of Defendants' tax records, omitted any discussion of the adequacy of unaudited financial statements that were ordered produced, did not order the production of audited financial statements, and did not order the production of tax returns in the event any or all of the Defendants did not have audited financial records.[64]   Plaintiff maintains that she is entitled to the production of Defendants' tax returns because she has alleged that various defendants are members of a single business enterprise, and the CPA report submitted in support of her Motion to Compel shows that tax records and financial statements "comprise customary documents underlying analysis of SBE and alter ego in these kinds of cases."[65]   While the Magistrate Judge found that the information in

---

[61] R. Doc. 98 at p. 13.
[62] *Id.*
[63] R. Doc. 103.
[64] R. Doc. 103-1 at pp. 2–3.
[65] *Id.* at pp. 2 & 3.

Defendants' tax returns would be cumulative of information already produced by Defendants, Plaintiff contends that shielding the production of these documents prevents both Plaintiff and the Court from knowing whether the documents are actually cumulative.[66]  Plaintiff points out that while tax documents are sensitive, there is a Protective Order in place and the documents are not being requested as a pre-judgment inquiry into the financial means of Defendants to pay a judgment.[67] According to Plaintiff, "there was good cause to produce these documents given the single business enterprise and alter ego allegations, and therefore further inquiry into the financial records of these entities is merited."[68]

Plaintiff further claims that accurate financial records and corporate structure records are essential to a single business enterprise analysis, and that her CPA report shows that the documents and information provided by Defendants to date do not meet the criteria required by generally accepted accounting principles.[69]  Plaintiff asserts that the Magistrate Judge failed to address this issue, or the difference between audited and unaudited financial documents.[70]  Plaintiff contends that the Magistrate Judge should have ordered the production of tax returns and audited financial statements or, if audited versions were not available, then unaudited financial statements and tax returns.[71]  Plaintiff claims that by side stepping these issues, the Magistrate Judge's ruling "kneecaps" her ability to establish facts and

---

[66] *Id*. at p. 4.
[67] *Id*. at p. 5.
[68] *Id*. at p. 6 (footnote omitted).
[69] *Id*. (*citing* R. Doc. 96-1).
[70] R. Doc. 103-1 at p. 7.
[71] *Id*.

evidence to support the elements of the single business enterprise or alter ego theory.[72] Finally, Plaintiff asserts that the Magistrate Judge failed to provide any justification for limiting the time period for the document production to 2022 to 2024.[73] Plaintiff argues that because information regarding the intertwined relationships between Defendants is a "moving target," the Magistrate Judge should have ordered the production of documents for the five-year window from 2020 to 2025, at a minimum, if not for the entire existence of each corporation.[74]

Defendants assert that a Magistrate Judge's decision regarding a discovery dispute is reversed only for an abuse of discretion and that Plaintiff failed to show that the Magistrate Judge abused her discretion in partially denying the Motion to Compel.[75] Defendants claim that Plaintiff raises three issues in her Motion: (1) the Magistrate Judge's denial of her request to compel the production of Defendants' tax returns; (2) the fact that the Magistrate Judge did not specifically reference "audited" financial documents when requiring the production of certain financial information; and (3) the fact that the Magistrate Judge limited production of financial information to the years 2022 to 2024.[76] Defendants assert that Plaintiff has not, and cannot, show that the Magistrate Judge abused her discretion in concluding that Plaintiff failed to show a compelling need for Defendants' tax returns.[77] Defendants assert that they have already provided the information that Plaintiff's CPA claims is

---

[72] *Id.*
[73] *Id.*
[74] *Id.*
[75] R. Doc. 110 at p. 1 (citing *Falkins v. Goings*, Civ. A. No. 21-1749, 2022 WL 17414295, at *2 (E.D. La. Dec. 5, 2022) (Barbier, J.)).
[76] R. Doc. 110 at p. 4.
[77] *Id.* at pp. 5–6.

contained in their tax returns, which is purportedly relevant to Plaintiff's single business enterprise theory under Louisiana law.[78]  Defendants further assert that, to the extent they exist, Defendants will produce audited financial documents that are responsive to the categories of documents the Magistrate Judge ordered them to produce.[79]  Finally, Defendants argue that Plaintiff has failed to allege any error on the Magistrate Judge's part in limiting production to the time period of 2022 to 2024, and further assert that Plaintiff failed to demonstrate how the wholesale production of financial information was relevant to the *Hargrave* factors.[80]

In response, Plaintiff asserts that the Magistrate Judge abused her discretion by not ordering the production of Defendants' tax returns because they are "objectively not cumulative or duplicative as they contain information only obtainable through the returns."[81]  Plaintiff claims that only some of the defendant-entities have produced information identifying ownership, pointing out that Martian Sales provided testimony that Mark Reilly is its only owner, but that the remaining defendants appear to be owned by trusts with unknown beneficiaries or limited liability companies with unknown members.[82]  Plaintiff asserts that the interrelation of the defendants remains opaque and that it is unclear who receives distributions from revenue.[83]  Plaintiff asserts that Defendants' tax returns are relevant to the litigation based upon the single business enterprise and alter ego allegations, and

---

[78] *Id.* (*citing* R. Doc. 96-1; R. Doc. 88 at pp. 5–7; R. Doc. 97 at pp. 3–5).
[79] R. Doc. 110 at pp. 7–8.
[80] *Id.*
[81] R. Doc. 113 at pp. 1–2.
[82] *Id.* at p. 3 (*citing* R. Docs. 113-1 & 113-2).
[83] R. Doc. 113 at pp. 3–4 (*citing* R. Doc. 113-2).

that there is a compelling need for the tax returns because they contain information that is only reliably known through those tax returns.[84] Plaintiff maintains that there is no justification for limiting the time period required for production to 2022 to 2024, and that a five-year window from 2019 to 2024, at a minimum, is reasonable.[85]

## II.    LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 72(a) and 28 U.S.C. § 636(b)(1)(A), a party can appeal a magistrate judge's ruling on a nondispositive pretrial motion to the district judge for review.  "A magistrate judge is afforded broad discretion in resolving such motions, and the standard of review is deferential."[86] "The district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law."[87] Under this standard, "factual findings are reviewed for clear error, which is present when the reviewing court upon examination of the entire evidence is left with the definite and firm conviction that a mistake has been committed."[88] "A legal conclusion is contrary to

---

[84] R. Doc. 113 at p. 4 (*citing* R. Doc. 98 at p. 8, n.15).

[85] R. Doc. 113 at p. 4.

[86] *Falkins v. Goings*, Civ. A. No. 21-1749, 2022 WL 17414295, at *2 (E.D. La. A. Dec. 5, 2022); *Lemann v. Midwest Recovery Fund LLC*, Civ. A. No. 15-3329, 2016 WL 3033622, at *2 (E.D. La. May 27, 2016) (Barbier, J.).  *See A.M. Castle & Co. v. Byrne*, 123 F. Supp. 3d 895, 898 (S.D. Tex. 2015) ("A magistrate judge is permitted broad discretion in resolving nondispositive pretrial motions.").

[87] Fed. R. Civ. P. 72(a).  *See* 28 U.S.C. § 636(b)(1)(A) ("A judge of the court may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law.").

[88] *Ambrose-Frazier v. Herzing Inc.*, Civ. A. No.15-1324, 2016 WL 890406, at *2 (E.D. La. Mar. 9, 2016) (Morgan, J.) (citing authority) (citation modified).  *See United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948) ("A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.").

law when the magistrate judge fails to apply or misapplies relevant statutes, case law, or rules of procedure."[89]

"For issues that are committed by law to a judge's discretion, such as the resolution of discovery disputes, the magistrate's rulings are reviewed for abuse of discretion."[90]  Because Plaintiff seeks review of the Magistrate Judge's ruling on her Motion to Compel, the ruling will be reviewed for an abuse of discretion.  Courts consider this to be a "high standard."[91]

## III.  ANALYSIS

### A. Defendants' tax returns

Plaintiff first seeks review of the portion of the Magistrate Judge's ruling in which she denied Plaintiff's request to compel the production of Defendants' tax returns after finding that there was no compelling need to justify their production in light of the extensive discovery already obtained.[92]  Plaintiff seems to suggest that the Magistrate Judge erred in finding that the information contained in the tax

---

[89] *Lemann*, Civ. A. No. 15-3329, 2016 WL 3033622 at *2 (quoting *Ambrose-Frazier*, Civ. A. No.15-1324, 2016 WL 890406 at *2) (citation modified).

[90] *Edwards v. Barbier*, Civ. A. No. 24-619, 2024 WL 3859954, at *2 (E.D. La. Aug. 19, 2024) (Morgan, J.) (quoting *Energy Intelligence Grp., Inc. v. Canal Barge Co.*, Civ. A. No. 12-2107, 2014 WL 201698, at *1 (E.D. La. Jan. 17, 2014) (Zainey, J.)) (citation modified).  *See Falkins*, Civ. A. No. 21-1749, 2022 WL 17414295 at *2 (citing *Ambrose-Frazier*, Civ. A. No.15-1324, 2016 WL 890406 at *2; *Kresefky v. Panasonic Commc'ns & Sys, Co.*, 169 F.R.D. 54, 64 (D.N.J. 1996)) (same).

[91] *J.M. Smith Corp. v. Ciolino Pharm. Wholesale Distrib., LLC*, Civ. A. No. 14-2580, 2015 WL 6454457, at *3 (E.D. La. Oct. 26, 2015) (Zainey, J.).  *See Quantlab Group, LP v. Dempster*, Civ. A. No. H-18-2171, 2019 WL 7037653, at *2 (S.D. Tex. Dec. 20, 2019) (Atlas, J.) (quoting *Nerium SkinCare, Inc. v. Nerium Int'l, LLC*, Civ. A. No. 3:16-CV-1217-B, 2017 WL 9934881, at *1 (N.D. Tex. Feb. 6, 2017) (Boyle, J.)) (citation modified) ("Where, as here, discovery orders are at issue, the objecting party's burden is especially heavy.").  *See* 12 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 3069 (3d ed. 2014) ("In sum, it is extremely difficult to justify alteration of the magistrate judge's nondispositive actions by the district judge.").

[92] R. Doc. 103-1 at pp. 2–4.

returns would be cumulative and duplicative of information already provided.[93] Plaintiff argues that, "there was good cause to produce these documents given the single business enterprise and alter ego allegations, and therefore further inquiry into the financial records of these entities is merited."[94]

In the Third Amended Complaint, Plaintiff alleges that, "[a]ll Defendants named herein are alter egos of one another and operate as a single business enterprise through a secretive web of affiliates, individuals, shell companies, alter egos, business names, assumed names, and/or trade names . . . ."[95] In her briefing on Defendants' prior motions to dismiss, Plaintiff argued that the Court has personal jurisdiction over Defendants based upon her allegation that they are alter egos of one another and operate as a single business enterprise.[96] The Fifth Circuit has made clear that, "[g]enerally, the proper exercise of personal jurisdiction over a nonresident corporation may not be based solely upon the contacts with the forum state of another

---

[93] *Id.* at pp. 4–5.

[94] *Id.* at pp. 4–5 & 6.

[95] R. Doc. 100 at ¶ 25.  The Court agrees with Defendants that Plaintiff seems to conflate the single business enterprise theory of liability with the alter ego theory in her Motion to Compel briefing.  *See* R. Doc. 88 at pp. 9–10.  As explained by one Louisiana appellate court, "[t]he single business enterprise theory of liability is distinguishable from the alter ego theory in several ways.  The most important distinction is who may be held liable under each theory."  *Hill Int'l, Inc. v. JTS Realty Corp.*, 2021-0157 (La. App. 1 Cir. 10/20/22), 370 So.3d 16, 30.  "As opposed to alter ego doctrine, which pierces the corporate veil to reach the members of an LLC, the single business enterprise doctrine is a theory for imposing liability on *two or more business entities* when they act as one."  *Id.* (citing *Brown v. ANA Ins. Grp.*, 2007-2116 (La. 10/14/08), 994 So.2d 1265, 1266 n.2) (emphasis in original).  "The single business enterprise doctrine permits multiple companies to be treated as a single entity–but still an entity separate from its human owners–as if all of the different companies within an affiliated group had been organized as just one, all-encompassing corporation or LLC."  *Hill Int'l*, 2021-0157, 370 So.3d at 30.  Stated another way, "[w]hile the alter ego theory provides a basis to impose liability on the *individual members* of a business entity, single business enterprise provides a basis to impose liability on any *affiliated business entities* operating as one."  *Hill Int'l*, 2021-0157, 370 So.3d at 30 (emphasis in original).

[96] R. Doc. 48 at p. 3.

corporate entity with which the defendant may be affiliated."[97]  As the Fifth Circuit explained, "[t]his principle, however, is not inviolate."[98]  "Rather, the presumption of institutional independence of related corporate entities may be rebutted by clear evidence, which requires a showing of something beyond the mere existence of a corporate relationship between a resident and nonresident entity to warrant the exercise of jurisdiction over the nonresident."[99]  As such, Fifth Circuit cases "generally demand proof of control by one corporation over the internal business operations and affairs of another corporation to make the other its agent or alter ego, and hence fuse the two together for jurisdictional purposes."[100]

As the Magistrate Judge correctly pointed out, the alter-ego or veil-piercing test for purposes of attribution of contacts (*i.e.,* personal jurisdiction) is different and less stringent than that for liability.[101]  The Magistrate Judge correctly applied the law that, "[i]n determining whether the plaintiff has overcome the presumption of corporate separateness such that the corporations may be fused for jurisdictional purposes," courts consider the following seven *Hargrave* factors: (1) the amount of stock owned by the parent of the subsidiary; (2) whether the entities have separate headquarters, directors, and officers; (3) whether corporate formalities are observed; (4) whether the entities maintain separate accounting systems; and (5) whether the

---

[97] *Diece-Lisa Indus., Inc. v. Disney Enter., Inc.*, 943 F.3d 239, 251 (5th Cir. 2019) (quoting *Freudensprung v. Offshore Tech. Services, Inc.*, 379 F.3d 327, 346 (5th Cir. 2004)) (citation modified).
[98] *Freudensprung*, 379 F.3d at 346.
[99] *Id.* (quoting *Dickson Marine, Inc. v. Panalpina, Inc.*, 179 F.3d 331, 338 (5th Cir. 1999)) (citation modified).
[100] *Freudensprung*, 379 F.3d at 346 (quoting *Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1160 (5th Cir. 1983) (collecting cases)) (citation modified).
[101] *Savoie v. Pritchard*, 122 F.4th 185, 192 (5th Cir. 2024) (quoting *Stuart v. Spademan*, 772 F.2d 1185, 1198, n.12 (5th Cir. 1985)) (citation modified).

parent exercises complete control over the subsidiary's general policies or daily activities."[102]

As to Plaintiff's request for the production of Defendants' tax records, the Fifth Circuit has held that, "[i]ncome tax returns are highly sensitive documents; courts are reluctant to order their routine disclosure as a part of discovery."[103] In the context of post-judgment discovery, which is "very broad," the Fifth Circuit in *F.D.I.C. v. LeGrand* held that the party seeking the production of tax returns must show their relevance, then the burden shifts to the party opposing production to show that other sources exist from which the information contained in the tax returns may be readily obtained.[104] As the Magistrate Judge pointed out, in the context or pretrial discovery, some district courts place the burden on the requesting party to demonstrate both relevance and a compelling need for the tax returns,[105] while other courts require the party opposing the production to show that other sources exist from which the information contained in the tax returns may be readily obtained.[106] In *LeGrand*,

---

[102] *Diece-Lisa Indus., Inc.*, 943 F.3d at 251 (quoting *Freudensprung*, 379 F.3d at 346) (citation modified). *See Hargrave*, 710 F.2d at 1160.

[103] *Nat. Gas Pipeline Co. of America v. Energy Gathering, Inc.*, 2 F.3d 1397, 1411 (5th Cir. 1993) (citing *SEC v. Cymaticolor*, 106 F.R.D. 545, 547 (S.D.N.Y. 1985)).

[104] *F.D.I.C. v. LeGrand*, 43 F.3d 163, 172 (5th Cir. 1995).

[105] R. Doc. 98 at pp. 10–11. *See Ins. Safety Consultants LLC v. Nugent*, Civ. A. No. 3:15-CV-2183-B, 2017 WL 10701817, at * (N.D. Tex. Mar. 21, 2017) (Stickney, M.J.); *U.S. ex rel Univ. Loft Co. v. AGS Enters., Inc.*, Civ. A. No. SA-14-CA-528-OLG, 2016 WL 9462335, at *9 (W.D. Tex. June 29, 2016) (Mathy, M.J.) (quoting *Landry v. Haye*, Civ. A. No. 12-2766, 2013 WL 6157920, at *2 (W.D. La. Nov. 21, 2013) (Kay, M.J.) (citing *Reed v. Tokio Marine and Nichido Fire Ins. Co., Ltd.*, Civ. A. No. 3:09-CV-00676, 2010 WL 420921, at *1 (W.D. La. Feb. 1, 2010) (Hayes, M.J.))); *Butler v. Exxon Mobil Refining & Supply Co.*, Civ. A. No. 07-386-C-M2, 2008 WL 4059867, at *2 (M.D. La. Aug. 28, 2008) (Noland, M.J.) (citing *Nat. Gas Pipeline*, 2 F.3d at 1411); *Asset Funding Grp., LLC v. Adams & Reese, LLP*, Civ. A. No. 07-02965, 2008 WL 927937, at *9 (E.D. La. Apr. 4, 2008).

[106] *LBC Fixed Income Fund I 2020, LLC v. Watkins Healthcare Group, LLC*, Civ. A. No. 2024-008, 2024 WL 3317758, at *2 (E.D. La. June 21, 2024) (Dossier, M.J.); *Nguyen v. Amer. Com. Lines, LLC*, Civ. A. No. 11-1799 c/w 11-2705, 2024 WL 2958589, at *5 (E.D. La. June 12, 2024) (Lemelle, J.); *Select Oilfield Services, LLC v. Total Marine Services of Jefferson, Inc.*, Civ. A. No. 23-2431, 2024 WL 1701941, at *10 (E.D. La. Apr. 19, 2024) (Currault, M.J.); *Matter of GH Storm Cat, LLC*, Civ. A. No. 20-3085, 2022 WL

however, the Fifth Circuit made clear that the party seeking the tax returns does *not* have to prove both prongs of the test; rather, once he shows that the tax returns are relevant, the burden shifts to the party opposing production to show that the information can be readily obtained from other sources.[107]  As such, this Court will apply the burden-shifting framework set forth in *LeGrand* by first considering whether Plaintiff has shown that the tax returns are relevant to the subject matter of the action.  If the Court determines that Plaintiff has shown that they are relevant, the Court will then consider whether Defendants have shown that other sources exist from which the information contained in the tax returns can be readily obtained.

Applying these legal principles to the facts of this case, the Court finds that Plaintiff has failed to show that Defendants' tax returns are relevant to the subject matter of the litigation.  Louisiana federal courts have found tax information relevant where a party has placed the subject of his income or earning capacity at issue in the litigation by seeking damages for lost wages or lost earning capacity.[108]  "Courts have

---

1699002, at *4 (E.D. La. Mar. 9, 2022) (Currault, M.J.); *Lozada-Leoni v. MoneyGram International, Inc.*, Civ. A. No. 4:20CV68-RWS-CMC, 2020 WL 10046089, at *15 (E.D. Tex. July 8, 2020) (Craven, M.J.); *Molina v. Transocean Deepwater, Inc.*, Civ. A. No. H-08-3361, 2009 WL 10736478, at *2 (S.D. Tex. Dec. 28, 2009) (Rosenthal, J.).

[107] *LeGrand*, 43 F.3d at 172 (citing *United States v. Bonanno*, 119 F.R.D. 625, 627 (E.D.N.Y. 1988)) (emphasis in original) ("Roughton misreads *Bonanno* as requiring the party seeking the documents to prove *both* prongs of the test.") (emphasis in original).  The Court notes that *Bonanno* involved pretrial discovery, and that the *Bonanno* court held that, "[w]hile the party seeking discovery of the tax returns bears the burden of establishing relevance, the party resisting disclosure should bear the burden of establishing alternative sources for the information."  *Bonanno*, 119 F.R.D. at 627 (citing authority).

[108] *Tate v. DG Louisiana LLC*, 653 F. Supp. 3d 316, 321 (E.D. La. 2023) (citing *Butler*, Civ. A. No. 07-386-C-M2, 2008 WL 4059867 at *2 & n.5; *Campos v. Zurich Am. Ins. Co.*, Civ. A. No. 2:21-CV-3923, 2022 WL 3647722, at *6 (W.D. La. Aug. 24, 2022) (Kay, M.J.); *Equal Emp. Opportunity Comm'n v. Columbia Sussex Corp.*, Civ. A. No. 07-701-JJB-DLD, 2009 WL 10679322, at *4 (M.D. La. Aug. 3, 2009) (Dalby, M.J.); *Thai v. Miller Truck Lines, Inc.*, Civ. A. No. 05-1958, 2006 WL 2349605, at *1 (W.D. La. Aug. 11, 2006) (Hornsby, M.J.)).  *See Nguyen*, 2024 WL 2958589 at *5 (citing same authority) ("Louisiana federal courts have found tax returns relevant for wage loss claims.").

largely declined to compel the disclosure of such financial information, however, where Plaintiff does not seek economic damages."[109]  Unlike in the cases cited by Plaintiff, where courts ordered the production of tax returns, this case does not involve post-judgment discovery or a plaintiff who has placed his income or earning capacity at issue in the litigation by seeking damages for lost wages or lost earning potential.[110]  In the Third Amended Complaint, Plaintiff asserts two LPLA claims, which does not allow recovery of punitive damages,[111] and Plaintiff seeks compensatory damages for the wrongful death of her daughter.[112]  The Court therefore agrees with the Magistrate Judge that Plaintiff has not placed her income or earning capacity at issue in the litigation and cannot argue that the tax returns are relevant on that basis.[113]

---

[109] *Tate*, 653 F. Supp. 3d at 321 (citing authority).

[110] R. Doc. 103-1 at p. 6, n.3; R. Doc. 113 at p.4, n. 3 (citing *LeGrand*, 43 F.3d 163) (finding that, in the context of postjudgment discovery, "relevance of the tax returns to a judgment creditor is virtually presumed" because they "can verify the information provided by the judgment-debtor concerning his assets and income, and it can reveal a judgment-debtor's attempts to hide assets."); *In re Norplant Contraceptive Prods. Liab. Litig.*, 170 F.R.D. 153, 153–54 (E.D. Tex. 1996) (ordering the production of tax returns to fill in "gaps in the employment history of one or more of the 5 bellwether plaintiffs" that could "lead to relevant information regarding the Plaintiffs' daily work activities, performance, and attendance"); *Lozada-Leoni v. MoneyGram Int'l, Inc.*, Civ. A. No. 4:20CV68-RWS-CMC, 2020 WL 10046089 at *15 (ordered the production of tax returns, finding they were relevant to plaintiff's claim for "back pay (lost wages and benefits)")).  *See also Nguyen*, Civ. A. No. 11-1799 c/w 11-2705, 2024 WL 2958589 at *5 (ordering the production of plaintiffs' tax returns, finding that they were "manifestly relevant" based upon plaintiffs' claim for "loss of profits or impairment of earning capacity"); *Select Oilfield Services, LLC*, Civ. A. No. 23-2431, 2024 WL 1701941 at *10 (ordering the production of plaintiff's tax returns because they are relevant to plaintiff's claim for loss of use damages for certain equipment that was lost or stolen); *Butler,* Civ. A. No. 07-386-C-M2, 2008 WL 4059867 at *2 (ordering the production of plaintiff's tax returns because he placed his income/earning capacity at issue by seeking past and future lost wages and benefits and damages for loss of earning capacity).

[111] *Bladen v. C.B. Fleet Holding Co.*, 487 F. Supp. 2d 759, 770 (W.D. La.2007) (*citing* La. R.S. 9:2800.51–9:2800.59 (2007)); *Pierre v. Medtronic, Inc.*, Civ. A. No. 17-12196, 2018 WL 1911829, at *5 (E.D. La. Apr. 23, 2018) (Lemelle, J.) (citing authority).

[112] *See* R. Doc. 100.

[113] R. Doc. 98 at p. 7.

While Plaintiff claims that Defendants' tax returns are "clearly relevant" based upon the report submitted by her CPA,[114] her only argument in support of that position is that, "there was good cause to produce these documents given the single business enterprise and alter ego allegations, and therefore further inquiry into the financial records of these entities is merited."[115]  In her Reply brief, Plaintiff likewise asserts that information contained in Defendants' tax returns "is relevant to the subject matter of this action given the single business enterprise and alter ego allegations and the inevitable analysis of those allegations that will soon come before the Court."[116]  Plaintiff, however, fails to cite any legal authority to support her contention that tax records are relevant based solely upon alter ego and single business enterprise allegations.[117]

The Court recognizes that Plaintiff cited two cases in her Reply In Support of her Motion to Compel wherein tax returns were ordered produced because they were relevant to a plaintiff's alter ego allegations.[118]  Those cases, however, are distinguishable from the facts of this case.  First, those cases did not involve jurisdictional discovery and whether the contacts of one entity could be attributed to another for personal jurisdiction purposes.[119]  Second, neither case recognized that

---

[114] R. Doc. 103-1 at p. 4 (*citing* R. Doc. 96-1).
[115] R. Doc. 103-1 at p. 6.
[116] R. Doc. 113 at p. 4.
[117] *See, generally*, R. Docs. 103 & 113.
[118] R. Doc. 91 at p. 3 (citing *Mack Energy Co. v. Red Stick Energy, LLC*, Civ. A. No. 16-1696, 2019 WL 3403369, at *5 (W.D. La. July 26, 2019) (van Meerveld, M.J.); *Whale Capital, L.P. v. Ridgeway*, Civ. A. No. 22-2570, 2023 WL 7220560, at *6–7 (E.D. La. Nov. 2, 2023) (Currault, M.J.) *reconsideration denied*, Civ. A. No.22-2570, 2024 WL 894866 (E.D. La. Mar. 1, 2024) (Currault, M.J.)).
[119] *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 346 (5th Cir. 2004) (citing *Hargrave v. Fibreboard*, 710 F.2d 1154, 1160 (5th Cir. 1983)).

income tax returns are "highly sensitive documents" and subject to a different standard for disclosure, namely the two-part test set forth in *F.D.I.C. v. LeGrand*.[120] Finally, one of the cases involved an unopposed motion to compel.[121] Importantly, those two cases, which involved orders from Magistrate Judges, do not necessarily support the conclusion that the Magistrate Judge's ruling in this case was clearly erroneous or contrary to the law. Further, the law relied on in both of those cases is not contrary to the law relied on by the Magistrate Judge in this matter.[122] As such, the Court does not find that those two cases support Plaintiff's position that Defendants' tax records are relevant based solely on the allegations in the Third Amended Complaint. To the extent Plaintiff asserts that, "[t]his Court had already recognized the relevance and discoverability of this type of information when it ordered Johnson Foods, LLC to produce them,"[123] the document Plaintiff cites to support that claim is a minute entry issued by the Magistrate Judge on Plaintiff's Motion to Compel Discovery from Defendant Johnson Foods, LLC, which did not

---

[120] 43 F.3d 163, 172 (5th Cir. 1995).

[121] *Whale Capital*, Civ. A. No. 22-2570, 2023 WL 7220560 at *6–7 ("Plaintiff argues that it seeks the information to determine whether Defendants have conducted sham transactions to deprive it of security under the guaranty agreement and/or alter ego issues. Defendant bears the burden to establish that the information sought could have 'no possible relevance' to any claim in this case. Having failed to respond to the motion, Defendant has not satisfied this burden.").

[122] Notedly, the Magistrate Judge in *Whale Capital* is the same one in the instant case, and she cited and relied on much of the same law in that matter, including Rule 26, *Rangel v. Gonzalez Mascorro,* 274 F.R.D. 585, 590 (S.D. Tex. 2011), *Dotson v. Edmonson,* Civ. A. No. 16-15371, 2017 WL 11535244, at *3 (E.D. La. Nov. 21, 2017), *F.T.C. v. Turner,* 609 F.2d 743, 745 (5th Cir. 1980), *Liebmann v. Goden,* 629 F. Supp. 3d 314, 331 (D. Md. 2022), *Rullan v. Goden,* Civ. A. No. 22-2099, 2023 WL 4787463 (4th Cir. July 27, 2023), *Dickson v. Nat'l Maint. & Repair of Ky., Inc.*, Civ. A. No. 08-8, 2011 WL 2610195, at *2 (W.D. Ky. July 1, 2011).

[123] R. Doc. 103-1 at p. 6 (*citing* R. Doc. 78).

concern the discovery of tax returns.[124]  As such, the Court rejects Plaintiff's assertion as baseless.

The Court further finds that Plaintiff failed to address how Defendants' tax returns are relevant to the issue for which she sought jurisdictional discovery – to show that the contacts of one or more of the defendant-entities can be attributed to the other defendant-entities based upon her allegation that Defendants "are alter egos of one another and operate as a single business enterprise"[125]  Specifically, Plaintiff did not mention the *Hargrave* factors in her Motion or Reply brief,[126] and therefore did not address whether Defendants' tax returns would provide information relevant to the factors that are used to determine whether an entity's contacts may be attributed to another entity for jurisdictional purposes under veil piercing, alter ego, and single business enterprise theories.[127]  Those factors, as correctly set forth by the Magistrate Judge, include the amount of stock owned by the parent of the subsidiary, whether the entities have separate headquarters, directors, and officers, whether corporate formalities are observed, whether the entities maintain separate accounting systems, and whether the parent exercises complete control over the subsidiary's general policies or daily activities.[128]

---

[124] *See* R. Docs. 70, 76, 77, & 78.

[125] R. Doc. 100 at ¶ 25.

[126] *See* R. Docs. 103 & 113.

[127] *Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1160 (5th Cir. 1983).  *See Cormier v. Scribe Media, LLC*, Civ. A. No. 1:23-cv-647-DAE, 2024 WL 4719641, at *3 (W.D. Tex. Sept. 11, 2024) (Howell, M.J.) (applying the *Hargrave* factors to determine whether the defendants "are alter egos or operate as a single-business enterprise" for purposes of personal jurisdiction).

[128] *Freudensprung v. Offshore Tech. Servs, Inc.*, 379 F.3d 327, 346 (5th Cir. 2004) (citing *Hargrave*, 710 F.2d at 1160).

Instead of addressing the *Hargrave* factors, Plaintiff points to a CPA report she submitted in further support of her Motion to Compel and seems to take the position that Defendants' federal income tax returns are relevant because they will include information regarding where distributions are paid, the owners of the business and the corporate officers, corporate ownership in other corporations, as well as the business address, the date of incorporation, and the number of partners or shareholders in each business. [129]   While some of that information, including information regarding the business owners, corporate officers, and corporate ownership of other corporations, seems pertinent to the *Hargrave* factors, Defendants have already provided information and documents regarding their corporate ownership, their organizational structure, their subsidiary and parent companies, and their relationships to each other.[130]   And, importantly, the Magistrate Judge applied the correct law in her analysis.   Thus, the Magistrate Judge did not abuse her discretion in refusing to compel the production of Defendants' tax returns on the basis that some of the information contained in Defendants' tax returns would be duplicative of information already provided by Defendants.   That finding was not clearly erroneous.   Plaintiff has failed to show that any additional information contained in Defendants' tax returns is relevant to the *Hargrave* factors or the personal jurisdiction issue.   To the extent the Magistrate Judge may have implicitly found that Plaintiff carried her burden of proving that Defendants' tax returns were

---

[129] R. Doc. 96-1 at pp. 2–3.
[130] R. Doc. 88 at pp. 5–7 (*citing* R. Docs. 88-2, 88-3, 88-4, 88-5, 88-6, 88-7, 88-8, 88-9, 88-10, 88-11, 88-12, 88-13, 88-14, & 88-15); R. Doc. 88 at p. 11; R. Doc. 97 at pp. 3–5 (*citing* R. Doc. 88 at pp. 5–7).

relevant to the litigation before considering whether there was a compelling need for their production,[131] that finding was contrary to Fifth Circuit precedent set forth in *LeGrand*.

For the same reason, the Court also finds that it was erroneous for the Magistrate Judge to conclude that, "Plaintiff has not demonstrated how other discovery methods fail to reveal the information relevant to the relevant jurisdictional alter ego/SBE/veil piercing issue or how any particular item of information in the tax returns is not available from other sources."[132]  As previously discussed, the Fifth Circuit in *LeGrand* made clear that the party seeking the production of tax returns only has to prove their relevance and does *not* also bear the burden of proving that no other sources exist from which the information contained therein may be readily obtained.[133]  That said, pursuant to *LeGrand*, the Court finds that because Plaintiff failed to carry her burden of proving that Defendants' tax returns are relevant to the litigation, the Court need not determine whether Defendants carried their burden of proving that other sources exist from which the information contained in the income tax returns may be readily obtained.  Therefore, any error by the Magistrate Judge seemingly finding that Plaintiff had the burden of proof was harmless.

---

[131] While the Magistrate Judge did not make a specific finding as to the relevance of Defendants' tax returns, the fact that the Magistrate Judge addressed the second factor of the two-part test in determining whether the tax returns should be produced – whether there was a compelling need for the documents – suggests that the Magistrate Judge found that the tax returns were relevant.  *See* R. Doc. 98 at pp. 7–11.

[132] R. Doc. 98 at p. 11 (citing *Asset Funding Grp., LLC v. Adams & Reese, LLP*, Civ. A. No. 07-02965, 2008 WL 927937, at *9 (E.D. La. Apr. 4, 2008)).

[133] *See F.D.I.C. v. LeGrand*, 43 F.3d 163, 172 ("Roughton misreads *Bonanno* as requiring the party seeking the documents to prove *both* prongs of the test.") (citing *United States v. Bonanno*, 119 F.R.D. 625, 627 (E.D.N.Y. 1988)) (emphasis in original).

Nonetheless, the Court points out that information regarding several of the *Hargrave* factors could have been obtained "by propounding alternative discovery inquiries, such as focused interrogatories."[134]  In fact, Plaintiff attempted to obtain some of the information, including about Defendants' organizational structure, through interrogatories[135] and Fed. R. Civ. P. 30(b)6) corporate depositions.[136] Plaintiff's failure to obtain information relevant to the *Hargrave* factors through written discovery and deposition testimony, however, does not provide support for her request to compel the production of Defendants' income tax returns.

## B. Discussion of the adequacy of unaudited financial statements

Plaintiff next seeks review of the Magistrate Judge's omission of any discussion of the adequacy of unaudited financial statements that were ordered produced, the Magistrate Judge's failure to order the production of audited financial statements, and the Magistrate Judge's failure to order the production of tax returns in the event that any or all of the defendants did not have audited financial records.[137]  Relying on the report from her CPA, Plaintiff claims that the deposition testimony and documents produced by Defendants to date do not "meet the criteria required by the Statement on Standards for Forensic Services issued by the American Institute of Certified Public Accountants or generally accepted accounting principles (GAAP)."[138] Plaintiff asserts that, "[u]naudited financial records not verified by a third party are

---

[134] *Asset Funding Group, LLC*, Civ. A. No. 07-02965, 2008 WL 927937 at *9.
[135] *See* R. Docs. 88-3 at pp. 4–5; R. Doc. 88-5 at pp. 4–5; R. Doc. 88-6 at pp. 4–5; R. Doc. 88-8 at pp. 4–6; R. Doc. 88-10 at pp. 4–6.
[136] *See* R. Docs. 88-21 through 88-24.
[137] R. Doc. 103-1 at pp. 2–3.
[138] *Id.* at p. 6 (*citing* R. Doc. 96-1).  *See* R. Doc. 113 at p. 2 (citing R. Doc. 96-1 at p. 2).

essentially worthless as someone could create financial statements that say anything."[139]  Plaintiff further claims that the Magistrate Judge made no distinction between audited or unaudited financial documents in ordering Defendants to produce redacted balance sheets and other financial statements reflecting ownership of stock, and Plaintiff seems to suggest that the Magistrate Judge erred by not requiring that tax returns be produced if Defendants only have unaudited financial documents.[140]

Defendants point out that the Magistrate Judge ordered the production of certain categories of financial records that she concluded were relevant to the *Hargrave* factors and relevant to determining whether an entity's contacts may be attributed to another entity for jurisdictional purposes under a veil piercing/alter ego/single business enterprise theory.[141]  Defendants assert that Plaintiff's arguments regarding audited versus unaudited financial statements "is a non-issue" because they will produce any audited financial statements that are responsive to the categories of documents that were ordered to be produced.[142]  In response, Plaintiff asserts that this concession "does not resolve the issue" because Defendants may not have audited financial documents "and income tax returns remain the gold standard against which any form of internal financials are to be judged."[143]

The Court finds that Plaintiff has failed to show that the Magistrate Judge abused her discretion by not requiring Defendants to produce audited financial

---

[139] R. Doc. 103-1 at p. 6 (*citing* R. Doc. 96-1).  *See* R. Doc. 96 at p. 3 (*citing* R. Doc. 96-1 at pp. 1–2).
[140] R. Doc. 103-1 at p. 7.
[141] R. Doc. 110 at pp. 6–7.
[142] *Id*. at p. 7.
[143] R. Doc. 113 at p. 2 (*citing* R. Doc. 96-1 at p. 2).

documents. As Defendants correctly point out, the Magistrate Judge ordered the production of certain financial documents, including redacted balance sheets and other financial statements, that contain information relevant to the *Hargrave* factors. Specifically, the Magistrate Judge ordered Defendants to produce financial documents reflecting the ownership of stock of any other defendant, the identity of any common officers, directors, or employees shared by Defendants, any joint bank accounts shared with any other defendant, checks or bank statements reflecting transfers between Defendants, any shared offices or headquarters with any other defendant, and any shared account systems with any other defendant.[144] These categories mirror the *Hargrave* factors, which are appropriately considered by a Court in determining whether an entity's contacts may be attributed to another entity for jurisdictional purposes and whether Plaintiff has overcome the presumption of corporate separateness.[145] Plaintiff cites no legal authority, and the Court has found none, to suggest either that courts must order the production of audited, rather than unaudited, financial documents, or that the *Hargrave* factors must be supported by audited financial documents. In ordering the production of these documents, the Magistrate Judge concluded that, "[p]roduction of these limited financial documents balances Defendants' interests in the privacy of their financial information and Plaintiff's need to obtain evidence relevant to the *Hargrave* jurisdictional attribution inquiry."[146] Plaintiff has failed to show that this was an abuse of discretion.

---

[144] R. Doc. 98 at p. 12.
[145] *See Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 346 (5th Cir. 2004) (citing *Hargrave v. Fibreboard*, 710 F.2d 1154, 1160 (5th Cir. 1983)).
[146] R. Doc. 98 at p. 12.

**C.  The time period imposed for the documents ordered to be produced**

Finally, Plaintiff asserts that there is no justification for the Magistrate Judge limiting the production of financial documents to the time period of 2022 to 2024 based upon the 2023 death of Plaintiff's daughter.[147]  Plaintiff contends that information regarding Defendants' intertwined relationships "are a 'moving target' with new corporations being formed dynamically."[148]  As such, Plaintiff asserts in her Motion that the Court should require the production of financial documents for at least the five-year window from 2020 to 2025,[149] if not for the entire existence of each defendant-entity.[150]

Defendants argue that Plaintiff cannot demonstrate that the Magistrate Judge abused her discretion in limiting the time period for the production of financial records to 2022 through 2024, as Plaintiff fails to set forth any alleged error on the part of the Magistrate Judge.[151]  Defendants claim that, as the Magistrate Judge noted, Plaintiff had the burden to demonstrate how the wholesale production of financial information was relevant to the *Hargrave* factors and failed to do so.[152]  In response, Plaintiff maintains that there is no justification for the time period imposed by the Magistrate Judge, and asserts that a five-year window, if not the entire existence of each entity-defendant, is reasonable because ownership of Defendants has changed over time.[153]

---

[147] R. Doc. 103-1 at p. 7.
[148] *Id.*
[149] In her Reply brief, Plaintiff suggests a five-year window from 2019 to 2024.  *See* R. Doc. 113 at p. 4.
[150] R. Doc. 103-1 at p. 7.
[151] R. Doc. 110 at p. 7.
[152] *Id.* at p. 8 (*citing* R. Doc. 98 at p. 12).
[153] R. Doc. 113 at p. 4.

The Court finds that Plaintiff has failed to demonstrate that the Magistrate Judge abused her discretion in ordering Defendants to produce financial documents for the years 2022 through 2024. The death of Plaintiff's daughter, which is the impetus for this lawsuit, occurred in 2023. Plaintiff fails to cite any legal authority to support her position that the Magistrate Judge erred or abused her discretion by not ordering the production of financial documents for the five-year period of 2019 to 2024 or 2020 to 2025, or for the entire existence of each defendant-entity. While several courts in this Circuit have determined that a temporal scope of ten years is reasonable in the context of jurisdictional discovery in cases involving alter ego claims,[154] other courts have imposed temporal limitations ranging from four to ten years for the production of tax returns in the context of lost wage and lost earning capacity claims.[155] With these variations, Plaintiff has failed to show that the

---

[154] *Neal Technologies, Inc. v. Innovative Performance Research, LLC*, Civ. A. No. 4:16-CV-00746, 2017 WL 590298, at *2 (E.D. Tex. Feb. 14, 2017) (Mazzant, J.) ("The Court determines that Plaintiff should be entitled to jurisdictional discovery dating back to 2007 for both Defendants. Plaintiff's motion to compel is aimed at gathering evidence from 2007 to establish whether the Court could exercise personal jurisdiction over the Defendants. This request is based on more than a hunch that discovery might yield jurisdictionally relevant facts."); *Monroe's Estate v. Bottle Rock Power Corp.*, Civ. A. No. 03-2682, 2004 WL 737463, at *9 (E.D. La. Apr. 2, 2004) (Knowles, M.J.) ("Unquestionably, the plaintiffs should be accorded the opportunity to conduct discovery over a sufficiently lengthy period of time so as to determine whether defendants contacts with Louisiana are sufficient for personal jurisdiction purposes . . . . Ten years, while not generous, is sufficient and not reasonably subject to serious dispute."). *See United States v. Emergency Staffing Solutions, Inc.*, Civ. A. No. 3:19-cv-01238-E, 2024 WL 4920769, at *2 (N.D. Tex. June 20, 2024) (Rutherford, M.J.) (in a case involving an alter ego claim but not jurisdictional discovery, the court "granted a motion for protective order filed by Defendants and limited the temporal scope of permissible discovery to 'January 1, 2015 through the present,' unless otherwise agreed by the parties in writing or ordered by the court.").

[155] *See Campos v. Zurich Am. Ins. Co.*, Civ. A. No. 2:21-CV-3923, 2022 WL 3647722, at *3–4 (W.D. La. Aug. 24, 2022) (ordering the production of tax returns for the prior four years for a lost wage claim); *Equal Emp. Opportunity Comm'n v. Columbia Sussex Corp.*, Civ. A. No. 07-701-JJB-DLD, 2009 WL 10679322, at *4 (M.D. La. Aug. 3, 2009) (ordering the production of tax returns for four years for a claim for lost past and future wages); *Butler v. Exxon Mobil Refining and Supply Co.*, Civ. A. No. 07-386-C-M2, 2008 WL 4059867, at *3 (M.D. La. Aug. 28, 2008) (ordering the production of tax returns for four year period for claims of past and future wages and lost earning capacity); *Thai v. Miller Truck Lines, Inc.*, Civ. A. No. 05-1958, 2006 WL 2349605, at *2 (W.D. La. Aug. 11, 2006) (ordering the

Magistrate Judge abused her discretion in ordering Defendants to produce

financial documents for the time period of 2022 to 2024.[156]

## IV.    CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Plaintiffs' Motion to Review

Magistrate Judge's Order and Objections, filed by Kathleen Moller,[157] is **DENIED.**

New Orleans, Louisiana, December 3, 2025.

**WENDY B. VITTER**
**United States District Judge**

---

production of tax returns for the last ten years based upon claims for loss of earning capacity and lost future wages); *Nguyen v. Amer. Commercial Lines, LLC*, Civ. A. No. 11-1799 c/w 11-2705, 2024 WL 2958589, at *1 & 5 (E.D. La. June 12, 2024) (ordering the production of tax returns for two years in an oil spill case).

[156] The Court notes that Louisiana federal courts that have compelled the discovery of financial information for purposes of punitive damages have limited the temporal scope of said documents to three years. *See Thibodeaux v. T.H. Marine Supplies, LLC*, Civ. A. No. 21-443-BAJ-SDJ, 2023 WL 218935, at *4 (M.D. La. Jan. 17, 2023) (Johnson, M.J.) (citing authority).

[157] R. Doc. 103.