**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **KATHLEEN MOLLER,** | * | |
| **Plaintiff,** | * | |
| | * | |
| **v.** | * | **CIVIL ACTION NO. 2:24-cv-228-WBV-DPC** |
| | * | |
| **MARTIAN SALES, INC. ET AL.,** | * | **THE HONORABLE WENDY B. VITTER** |
| **Defendants.** | * | |
| | * | **MAGISTRATE DONNA PHILLIPS** |
| | * | **CURRAULT** |
| | * | |
| | * | |
| | * | |

**MEMORANDUM IN SUPPORT OF DEFENDANT JOPEN, LLC'S MOTION TO DISMISS WITH PREJUDICE**

Pursuant to Federal Rule of Civil Procedure 37 and this Court's inherent authority, Defendant JOpen, LLC ("Defendant") moves the Court for an order dismissing Plaintiff Kathleen Moller's ("Plaintiff") claims against Defendant because Plaintiff failed to produce, and intentionally concealed the existence of, material test results of the actual product at issue in her products liability lawsuit ("Product Test Results"). Defendant asks the Court for an award of attorneys' fees for Plaintiff's discovery misconduct, and for any other sanctions that the Court deems appropriate.

**INTRODUCTION**

Defendant asks that the Court dismiss with prejudice Plaintiff's claims against Defendant for Plaintiff's egregious discovery misconduct in failing to disclose, and indeed *affirmatively concealing*, the Product Test Results that Plaintiff sought and obtained during discovery in this products liability matter. Plaintiff ordered and received Product Test Results of O.P.M.S. Silver kratom leaf products allegedly found inside a bag with other alcohol, pills and other supplements,

near Harmony Moller's room where she died. The O.P.M.S. Silver kratom leaf products are the core products at issue in Plaintiff's products liability lawsuit. Plaintiff failed to produce the Product Test Results, failed to supplement discovery responses to disclose these test results, and then affirmatively misrepresented to Defendant's counsel that Plaintiff never tested the O.P.M.S. products found near Harmony's room.

While Defendant seeks an extreme sanction, no lesser sanction is adequate here considering the willfulness of the concealment and the late stage of litigation. For nearly one year, Plaintiff had test results of the O.P.M.S. kratom products found near Harmony Moller when she died – the very products Plaintiff alleges caused Harmony Moller's death, yet never disclosed to Defendant the existence or results of those tests in this matter.[1] Plaintiff deliberately and actively concealed these Product Test Results, stating in writing to Defendant's counsel that Plaintiff had never done testing on the O.P.M.S. products found near Harmony Moller when she died, knowing full well this statement was false.

The timing underscores the gravity of Plaintiff's concealment. This matter was originally scheduled for trial in April 2026, re-scheduled to September 2026, and now re-scheduled again for April 2027. The concealed Product Test Results are dated January 28, 2026. Plaintiff deposed Defendant's expert on kratom testing and pharmacology, Dr. Christopher McCurdy on the same day. Defendant then deposed Plaintiff's expert, Dr. Christopher Williams, a pharmacologist, on February 9, 2026. Plaintiff then deposed Defendant's expert, Dr. Edward Boyer, a medical toxicologist with significant clinical experience, research studies, and publications relating to

---

[1] Notably, Plaintiff has still not disclosed these test results in this matter. Defendant is only aware of them through production in an unrelated matter in which Plaintiff's counsel and Defendant's counsel are counsel of record.

kratom, on February 17, 2026. Plaintiff's concealment of the test results prevented Defendant from reviewing them, providing them to its experts, and questioning Plaintiff's experts on them.

In addition to dismissal, Defendant asks the Court to award Defendant payment of reasonable expenses, including attorneys' fees, caused by the failure, and impose other appropriate sanctions, "including any of the orders listed in Rule 37(b)(2)(A)(i)—(vi)." Rule 37(c)(1)(C).

## BACKGROUND

Harmony Moller died on February 6, 2023. Dkt. 100 at ¶ 30. Photos taken by the St. Tammany Parish Sheriff's Office on the day of Harmony's death show two O.P.M.S. kratom packages found in a bag in a room adjacent to Harmony's bedroom. Dkt. 269-12, 269-23. Plaintiff threw away substances that were in and around Harmony's room on the day that she died, including many pharmaceuticals and illegal drugs, but she selectively preserved these two O.P.M.S. kratom packages. *See generally* Dkt. 269-1. Plaintiff gave her lawyers these two O.P.M.S. kratom packages, who "have maintained exclusive custody over the product in this case that was found in Harmony Moller's residence[.]" Ex. A, Excerpts of K. Moller Dep. 192:13–23; 203:4–14 (Plaintiff gave the O.P.M.S. kratom packages directly to her lawyers engaged in this lawsuit); *see also* Ex. B, Wagar Letter (letter from Plaintiff's counsel dated July 28, 2026 stating that counsel has "maintained exclusive custody over the product in this case that was found in Harmony Moller's residence[.]").

Defendant has recently become aware that Plaintiff had sought and obtained testing for the O.P.M.S. "Green Vein Maeng Da Kratom, Silver – 4 oz Powder" (the "Powder Product") and O.P.M.S. "Green Vein Maeng Da Kratom, Silver – 30 capsules" (the "Capsule Product," and together with the Powder Product, the "Products") allegedly found in Harmony Moller's possession at the time of her death, and which are the subject of this litigation. The Product Test

Results, dated January 28, 2026, were completed by the UCSF Clinical Toxicology and Environmental Biomonitoring Laboratory (the "UCSF Lab"), and signed by Ross Ellison as Staff Research Associate and Roy Gerona as Principal Investigator, and are attached hereto as Exhibit B.

Based on the Product Test Results, it appears that the Products were either sent to or received by the UCSF Lab on October 24, 2025 (the Powder Product), and October 28, 2025 (the Capsule Product). The Product Test Results further state that the Products were submitted on October 30, 2025, and the report was completed on January 28, 2026. The Product Test Results tested for, among other things, the levels of Mitragynine, 7-Hydroxy Mitragynine, and Mitragynine Pseudoindoxyl in the Products.

JOpen recently discovered the Product Test Results in documents from that lab produced by Plaintiff's counsel in an unrelated matter. These Product Test Results have never been produced or disclosed in this case despite the following document requests (the "Document Requests"):

- In Defendant JOpen, LLC's First Set of Requests for Production of Documents to Plaintiff, dated November 22, 2024, Request No. 37 seeks "All Documents or physical evidence of any kind obtained or created or relating to any inspection, examination, or testing of the kratom product You contend caused the Incident." In response to Request No. 37, on January 2, 2025, Plaintiff stated, "The decedent ingested the Kratom product that caused her death in this case. The Coroner's Report and toxicology report produced in her Disclosures are the only documents known to Plaintiff responsive to this Request." Ex. C. Plaintiff supplemented her response to Request No. 37 on September 9, 2025, but made no change to her

response. *See* Ex. D. Plaintiff has not further supplemented her response to Request No. 37.

- In Defendant JOpen, LLC's First Set of Requests for Production of Documents to Plaintiff, dated November 22, 2024, Request No. 28 seeks "All Documents related to the kratom product You contend caused the Incident." In response to Request No. 28, on January 2, 2025, Plaintiff stated, "Plaintiff has no documents responsive to this Request beyond what she produced in connection with her Disclosures in this case." Ex. C. Plaintiff supplemented her response to Request No. 28 on September 9, 2025, but made no change to her response. *See* Ex. D. Plaintiff has not further supplemented her response to Request No. 28.

On July 28, 2026, six months after fact discovery had closed in this matter, Plaintiff's counsel sent a letter to Defendant's counsel stating as follows:, "We have maintained exclusive custody over the product in this case that was found in Harmony Moller's residence and **no testing of this specific product for [mitragynine pseudoindoxyl] or for any purpose has been performed to date**." Ex. B (emphasis added).

## LEGAL STANDARD

Federal Rule of Civil Procedure 26(e)(1)(A) states, "A party who [. . .] has responded to an interrogatory, request for production, or request for admission—must supplement or correct its disclosure or response [. . .] in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing[.]"

Federal Rule of Civil Procedure 37(c) then provides that 37(c) states, "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard: (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure; (B) may inform the jury of the party's failure; and (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)–(vi)." Notably, "[a] party need not violate a court order before the court can act under Rule 37 to remedy the party's violations of its discovery obligations." *In re Katrina Canal Breaches Consol. Litig.*, No. 05-4182, 2008 WL 4401970, at *9 (E.D. La. Sept. 22, 2008).

In addition to sanctions available under the Federal Rules of Civil Procedure, courts have inherent authority to impose sanctions for litigation and discovery misconduct. Indeed, while sanctions are generally rooted in the Federal Rules, "'federal courts enjoy a zone of implied power incident to their judicial duty,' and that this inherent power is 'governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs.'" *F.D.I.C. v. Maxxam, Inc.*, 523 F.3d 566, 590 (5th Cir. 2008) (footnote omitted) (citation omitted); *see also Carroll v. Jaques Admiralty L. Firm, P.C.*, 110 F.3d 290, 292 (5th Cir. 1997) ("When a party's deplorable conduct is not effectively sanctionable pursuant to an existing rule or statute, it is appropriate for a district court to rely on its inherent power to impose sanctions."); *Ben E. Keith Co. v. Dining All., Inc.*, 80 F.4th 695, 699 (5th Cir. 2023) (affirming dismissal with prejudice of claims as a sanction for willful abuse of the judicial process).

## ARGUMENT

Plaintiff's claims against Defendant should be dismissed with prejudice as a result of Plaintiff's failure to supplement its responses to the Discovery Requests to disclose the Product Test Results, and affirmative concealment of, the Product Test Results. "Rule 37(c)(1)(C) grants a court authority to dismiss a plaintiff's case for failure to disclose evidence as required by Rule 26(a) or (e) unless the failure to disclose is substantially justified or harmless." *Silverberg v. Boyd Tunica, Inc.*, No. 2:09-CV-00119-WAP-DA, 2010 WL 6243327, at *3 (N.D. Miss. July 16, 2010), *report and recommendation adopted*, No. 2:09CV119-P-S, 2011 WL 1042342 (N.D. Miss. Mar. 22, 2011).

When determining if a party's failure to disclose is substantially justified or harmless, courts consider the following factors: "(1) [the party's] explanation for its failure to disclose the evidence, (2) the importance of the evidence, (3) the potential prejudice to [the opposing party] in allowing the evidence, and (4) the availability of a continuance." *CQ, Inc. v. TXU Min. Co., L.P.*, 565 F.3d 268, 280 (5th Cir. 2009).

Plaintiff's failure to supplement her responses to the Discovery Requests here to disclose the Product Test Results was neither justified nor harmless. First, Plaintiff has not provided any explanation for its failure to disclose the Product Test Results here despite affirmative discovery requests seeking all testing of the Products. Second, the Product Test Results are critically important in this matter – they test the Products that were near Harmony Moller at the time she died, which Plaintiff alleges causes Harmony's death. Third, if the Product Test Results are allowed into evidence, Defendant would be severely prejudiced, as it was denied the opportunity during discovery to review the Product Test Results, provide them to its experts, and have the benefit of the Product Test Results to prepare for trial. And fourth, while a continuance of trial is

available, trial has already been rescheduled twice, and is now reset for April of 2027, and going back to re-do discovery with the benefit of the Product Test Results would be a lengthy and costly endeavor.

As a result of Plaintiff's failure to disclose, Defendant seeks dismissal of Plaintiff's claims under Rule 37(c)(1)(C). In this request, Defendant recognizes that dismissal is "a sanction of last resort, applicable only in extreme circumstances." *Thomas v. United States*, 531 F.2d 746, 749 (5th Cir. 1976). However, such sanction is warranted here considering the arguments made in Defendant's pending motion for spoliation and considering Rule 37's goal of deterrence.

**A. Plaintiff has no explanation for her failure to disclose the Product Test Results.**

Despite discovery requests seeking all testing of Defendant's Products, *see* Ex. C, D, Plaintiff has not disclosed the existence of the Product Test Results and has not provided any explanation for such failure to disclose. Nor could she, as the Product Test Results have been in Plaintiff's possession since January 28, 2026, and she produced the Product Test Results in a wholly unrelated matter.

**B. The Product Test Results are critically important in this products liability wrongful death lawsuit.**

Second, courts look to the importance of the evidence. There can be no dispute that the Product Test Results are critical evidence. In bringing a product liability claim against Defendant, Plaintiff has directly put at issue the harmfulness, or lack thereof, of Defendant's Products. *See, e.g.*, *Van Winkle v. Rogers*, 82 F.4th 370, 375–77 (5th Cir. 2023) (noting that in a manufacturing defect claim against a manufacturer under the Louisiana Products Liability Act for damage caused by a tire, the pieces of the tire, which had been destroyed, were "crucial evidence"); *Consol. Aluminum Corp. v. Alcoa, Inc.*, 244 F.R.D. 335, 344 (M.D. La. 2006) (in providing an example of an "extreme" case of spoliation, the court pointed to destruction of "the very automobile that was

the subject of the products liability action"). However, in concealing these critical Product Test Results, Plaintiff's counsel has decided to play by its own rules. But it is axiomatic that "[l]awyers and litigants who decide that they will play by rules of their own invention will find that the game cannot be won." *United States v. Golden Elevator, Inc.*, 27 F.3d 301, 302 (7th Cir. 1994) (citation omitted).

**C. Defendant would be substantially prejudiced if the Product Test Results were allowed into evidence.**

Third, allowing the Product Test Results into evidence at this late stage of litigation would substantially prejudice Defendant. Fact and expert discovery have long-since closed. The Product Test Results were not reviewed by Defendant or its experts, Defendant's experts did not consider the Product Test Results in preparing their expert reports, Defendant was deprived of the opportunity to question Plaintiff's experts on the Product Test Results, and Defendant's experts were deprived of the opportunity to testify regarding the Product Test Results. Allowing the Product Test Results into evidence without Defendant having the benefit of conducting discovery on them would be substantially prejudicial, particularly considering that Plaintiff has been in possession of the Product Test Results since before the close of discovery in this matter.

**D. A third continuance of trial as a result of Plaintiff's bad faith and egregious failure to disclose is not feasible.**

Lastly, courts consider the availability of a continuance. Trial in this matter was initially scheduled for April 2026, then was re-scheduled to September 2026, and has now been re-scheduled again for April 2027. At the status conference held by the Court on August 20, 2026, the Court signaled to the parties that trial will be going forward in April of 2027 because of the two continuances. At this late stage of litigation, it would be extremely prejudicial to ask the

parties to turn back time and re-do discovery with the inclusion of the Product Test Results solely because of Plaintiff's willful and egregious non-disclosure.

**E. No lesser sanction is appropriate here considering Plaintiff's spoliation of evidence and the deterrent value of Rule 37.**

In seeking a dismissal of Plaintiff's claims against Defendant, Defendant acknowledges the harsh nature of the sanction. However, when concealment of the Product Test Results is viewed in conjunction with Defendant's pending Motion for Spoliation of Evidence (the "Spoliation Motion"), *see* Dkt. 269, 269-1, and Plaintiff's counsel's numerous pending lawsuits against Defendant across the country, this prejudice is compounded.

In the Spoliation Motion, which is currently pending before the Court, Defendant argues, among other things, that on the day of Harmony Moller's death, Plaintiff destroyed numerous drugs, supplements, and other products that could have caused or contributed to Harmony's death that were in Harmony's room at the time that she died (the "Spoliated Evidence"). Dkt. 269-1, at 1–2; 4–6 (detailing the unidentified substances seen in crime scene photos in Harmony's room that Plaintiff discarded). Defendant argues in the Spoliation Motion that "[i]f Plaintiff had not destroyed the Spoliated Evidence, there are many ways that Defendant could have used the evidence to present a defense." Dkt. 269-1, at 19. For example, "the Spoliated Evidence could have contained kratom products manufactured by someone other than Defendant[]. Plaintiff's spoliation of unknown and unpackaged ground substances with a similar appearance to kratom prevents Defendant from knowing whether other kratom products (alternative sources of mitragynine) were among the substances in Harmony's possession." Dkt. 269-1, at 19.

It is now clear, between Plaintiff's spoliation of any other potential source of Harmony's cause of death, and Plaintiff's concealment of the Product Test Results, that Plaintiff has completely obstructed Defendant's ability to present a defense to Plaintiff's claims. This is a

products liability case, where Plaintiff has put directly at issue whether Defendant's products caused Harmony Moller's death. But, not only has Plaintiff prevented Defendant from "ruling out the Spoliated Evidence as potential causes or contributors of Harmony's death," Plaintiff has now tested Defendant's products that she selectively preserved from the crime scene, which are the very products she alleges caused Harmony Moller's death, and has actively concealed those Product Test Results from Defendant. Dkt. 269-1, at 20. There can be no dispute that Defendant has been severely prejudiced by Plaintiff's misconduct in this litigation.

In addition, dismissal of Plaintiff's claims against Defendant is the only appropriate sanction here for purposes of deterrence. "In the Fifth Circuit, courts must consider whether the sanction furthers Rule 37's important goal of punishing misbehaving parties and deterring similar conduct in the future." *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, No. 14-2722, 2020 WL 5411736, at *2 (E.D. La. Sept. 8, 2020). Plaintiff's counsel has filed numerous products liability lawsuits across the country against Defendant relating to its O.P.M.S. products. And it is only through one of those unrelated lawsuits that Defendant became aware of the Product Test Results. Monetary sanctions would not deter Plaintiff's counsel from engaging in this same misconduct in other cases, since they know they could proceed to trial and judgment while knowing that Defendant is presenting a defense without full and proper use of material evidence.

## **CONCLUSION**

Defendant respectfully requests that this Court grant its Motion to Dismiss Under Federal Rule of Civil Procedure 37 and under the Court's inherent authority based on Plaintiff's failure to supplement its responses to the Discovery Requests and disclose Product Test Results that are critically relevant in this matter, and based on Plaintiff's active concealment of the Product Test

Results. In addition, Defendant asks the Court for an award of attorneys' fees for Plaintiff's discovery misconduct and for other sanctions that the Court deems appropriate.

Dated this 5th day of November, 2026.

Respectfully Submitted

By: */s/ Gwendolyn C. Payton*
**Gwendolyn C. Payton** *(pro hac vice)*
**Hayley R. Ambler**
Louisiana State Bar No. 25848

**KILPATRICK TOWNSEND & STOCKTON LLP**
1420 Fifth Ave., Suite 3700
Seattle, Washington 98101
Telephone: (206) 497-9600
Facsimile: (206) 299-0414
Email: hambler@ktslaw.com
Email: gpayton@ktslaw.com

**Maeghan E. Whitehead** (admitted *pro hac vice)*
**KILPATRICK TOWNSEND & STOCKTON LLP**
2001 Ross Avenue, Suite 4400
Dallas, Texas 75201
(214) 922-7138
(214) 279-4456
mewhitehead@ktslaw.com

**COUNSEL FOR DEFENDANT**

## CERTIFICATE OF SERVICE

This is to certify that on the 5th day of November, 2026, a copy of the foregoing document was filed with the Clerk of Court and served on all counsel of record via the Court's ECF System.

*/s/ Gwendolyn C. Payton*
Gwendolyn C. Payton